C. Brooks Cutter, Esq. (SBN 121407)
John R. Parker, Esq. (SBN 257761)
**CUTTER LAW, P.C.**
401 Watt Avenue
Sacramento, California 95864
Telephone: (916) 290-9400
Facsimile:  (916) 588-9330
bcutter@cutterlaw.com
jparker@cutterlaw.com

Tina Mehr, Esq. (SBN 275659)
**VISION LEGAL, INC.**
4712 E. 2ND Street, Suite 840
Long Beach, California 90803
Telephone:    (877) 870-9953
Facsimile:     (877) 348-8509
tmehr@visionlegalinc.com

Stanley D. Saltzman, Esq. (SBN 90058)
Adam M. Tamburelli, Esq. (SBN 301902)
**MARLIN & SALTZMAN, LLP**
29800 Agoura Road, Suite 210
Agoura Hills, California 91301
Telephone: (818) 991-8080
Fax: (818) 991-8081
ssaltzman@marlinsaltzman.com
atamburelli@marlinsaltzman.com

William Hansult, Esq. (SBN 200915)
**LAW OFFICES OF W. HANSULT**
1399 Ramona Avenue, # C
Grover Beach, California 93433
Telephone: (805) 489-1448
hansultlaw@aol.com

*Attorneys for Plaintiffs and the Putative Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| DARCEY SHARP, MARY LUDOLPH-ALIAGA, PENELOPE MUELLER, JAY WERNER, DIANE CABRERA, MEG LARSON, GARY OPAS, and JOANNE PARKER, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>PURITAN'S PRIDE, INC., a New York Corporation; THE NATURE'S BOUNTY CO. f/k/a NBTY, INC., a Delaware Corporation; and DOES 1 through 10 inclusive,<br><br>        Defendants. | No. 16-cv-6717-JD, consolidated with No. 17-cv-2536-JD<br><br>**FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>1.   Violation of California Consumers Legal Remedies Act (Civil Code §§ 1750, *et seq.*);<br><br>2.   Violation of California False Advertising Law (Bus. & Prof. Code §§ 17500, *et seq.*);<br><br>3.   Violation of California Unfair Competition (Bus. & Prof. Code §§ 17200, *et seq.*);<br><br>4.   Violation of New York Deceptive Acts and Practices Act (N.Y. Gen. Bus. Law §§ 349 and 350); and<br><br>5.   Unjust Enrichment.<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Darcey Sharp, Mary Ludolph-Aliaga, Penelope Mueller, Jay Werner, Diane Cabrera, Meg Larson, Gary Opas, and JoAnne Parker ("Plaintiffs"), by and through their undersigned counsel, bring this action, on behalf of themselves in their individual capacity and a Nationwide Class of all other similarly situated consumers, against Defendants Puritan's Pride, Inc., and The Nature's Bounty Co. (f/k/a NBTY, Inc.) ("Defendants"), who engage in retail sales via internet, mail order and telephone throughout all fifty United States, upon information and belief, except as to their own actions, the investigation of their counsel, and the facts that are a matter of public record, allege as follows:

## NATURE OF THE ACTION

1.      This is a class action brought by Plaintiffs on behalf of a putative class and subclasses ("Class" or "Classes"), as more fully defined below, of similarly situated consumers nationwide and in California and New York, seeking to redress the pervasive pattern of deceptive, false, misleading, and otherwise improper advertising, sales and marketing practices that Defendants have engaged in and continue to engage in with regard to their Puritan's Pride branded vitamin, mineral and health supplement products ("Products").

2.      As set forth below, Defendants' schemes or artifices to deceive and mislead Plaintiffs and other members of the Class have consisted of systemic and continuing practices of disseminating false and misleading product price information through, *inter alia*, the Puritan's Pride interactive website (www.puritan.com) and mail order catalogs distributed uniformly and simultaneously throughout all fifty (50) United States.   This extensive and comprehensive nationwide marketing campaign is intended to induce, and did induce, unsuspecting consumers, including Plaintiffs and other members of the Class, into purchasing, at a premium price, millions of dollars' worth of Defendants' Products, which are all manufactured, distributed marketed, advertised and/or sold directly by Defendants.

3.      Defendants prey upon consumers by promising that, among other things, consumers will obtain one or more free Puritan's Pride Products of same item and size, as a gift, if consumers buy a Puritan's Pride branded Product at regular price.  This price is promulgated in the following ways: Buy 1-Get 1/or 2 Free; and/or: Buy 2-Get 3/or 4 Free (hereafter "BOGO").

4.      Defendants further induce consumers with false, deceptive and misleading claims that their BOGO promotions are only available for a limited time or during special times of the year.  However, there has been no reasonably substantial period of time – in at least the preceding six (6) years – when Defendants were not utilizing a BOGO promotion to sell Puritan's Pride branded Products.

5.      Defendants' BOGO promotions are false and misleading because the consumer is not actually receiving anything free.  For example, a typical advertisement might offer a bottle of 120 vitamins for $32.99 and offer "2 free bottles" with the purchase of the single bottle.  This offer suggests that the true, regular price of the vitamins is $32.99 for 120 pills, or $0.27 per pill.  Thus, the consumer is led to believe that she is getting $65.98 additional worth of free product for buying the single bottle.  The truth is that Puritan's Pride has hardly ever sold a single bottle of pills for that regular $32.99 price.  It has consistently sold the vitamins under a "two free" offer.  Accordingly, the genuine "regular" price is 360 pills for $32.99 – $0.09 cents a pill – because that is the predominant way that Puritan's Pride sells it.  Therefore, Plaintiffs and consumers are not getting anything free at all.  An accurate BOGO offer based upon Puritan's Pride's historical "regular" pricing would be to offer the bottle of 120 pills for $10.99, with two bottles free.  With that offer, the consumer would actually be getting free pills after buying 120 pills at the price that Puritan's Pride regularly sells the product for—which is how BOGO offers are supposed to be made to be legal under state and federal law.

6.      Defendants knew or should have known that their BOGO price marketing campaign was false, deceptive, fraudulent and misleading because the practice of marketing free Products is highly regulated by Federal Regulations, which are widely published and distributed, to among other places, retailers and retail associations.  Federal law regulates this practice under the general false advertising statutes (15 U.S.C. §§ 52 and 55) but Federal Regulation 16 C.F.R. § 251.1, provides detailed descriptions, explanation and guidance.  Specifically:

> [W]hen the purchaser is told that an article is Free to him if another article is purchased, **the word Free indicates that he is paying nothing for that article and no more than the regular price for the other.** Thus, a purchaser **has a right to believe that the merchant will not directly and immediately recover, in whole or**

1

2

**in part, the cost of the free merchandise or service by marking up the price of the article which must be purchased, by the substitution of inferior merchandise or service, or otherwise**.

3

16 C.F.R. § 251.1(b)(1) (emphasis added).

4

5

6

7

7.     Moreover, Defendants' use of these fictitious "regular" prices on their Products contravenes 16 C.F.R. § 233.3, which prohibits the use of "list or suggested retail prices [that] do not in fact correspond to prices at which a substantial number of sales of the article in question are made."  16 C.F.R. § 233.3 (a); *see also generally* 16 C.F.R. §§ 233, *et seq.*

8

9

10

11

12

13

8.     Following the filing of the initial Complaint in this suit, Defendants changed their BOGO advertising campaign to read "single unit price" in lieu of "regular price" because they know that their BOGO Product "regular price" was and is false and misleading.  However, this change does not cure the problem or make it an accurate BOGO offer.  Moreover, it simply demonstrates that Defendants need to utilize the false promise of Free Products to sell their Products.

14

15

16

17

18

19

20

9.     The BOGO price is further deceptive or has a reasonable likelihood to deceive consumers because Defendants fail to disclose that the BOGO offers are not limited or special offers, but instead, they pressure consumers to make expedited purchases with false and deceptive claims that the BOGO offer is a limited offer or special offer.  Defendants' claims that these BOGO prices are limited offers made during only special times of year runs afoul of 16 C.F.R. § 233.5, which provides that advertisers "should not . . . make a 'limited' offer which, in fact, is not limited."  *Id.*

21

22

23

24

25

26

27

10.     Because of such deceptive practices and conduct, Defendants have been able to:  (1) sell more of their Puritan's Pride branded Products than they otherwise would have and achieve substantial market share and sales in the United States; (2) charge and get substantial premium for these Products over readily available and much lower priced sources; and (3) reap profits on Puritan's Pride branded Products where reasonable consumers have been induced into buying them because of a false perception that they are getting a great deal of "free" Products as gifts with their purchases, which are only available for a limited time or during special times of the year.

28

11.     Reasonable consumers, including Plaintiffs and the Class relied and continue to rely

on Defendants' misleading promise of Free Products when they purchase one of Defendants' Products at BOGO price because reasonable consumers must and do rely on companies such as Defendants to honestly and accurately disclose all other material terms of a BOGO offer.

12.     Defendants' deceptive acts and practices and omissions as set forth herein are material in that they relate to matters which are important to consumers – *i.e.*, Free price – and thus, likely to affect, and did affect, the purchasing decisions and/or conduct of consumers, including Plaintiffs and the Class, regarding Defendants' Products.   Indeed, the FTC Act and regulations promulgated pursuant thereto are clear that the promise of Free Products is material information that consumers rely upon.   Specifically, section 251.1(a)(2) cautions that: "Because the purchasing public continually searches for the best buy, and regards the offer of Free merchandise or service to be a special bargain, all such offers must be made with extreme care so as to avoid any possibility that consumers will be misled or deceived." 16 C.F.R. § 251.1(a)(2).

13.     Because Plaintiffs and the Class relied on Defendants' false, deceptive, and misleading BOGO price advertising campaign, they suffered an injury in fact and a loss of money and/or property with each purchase of Defendants' Product(s) by paying a higher price for Defendants' Products in order to avail themselves of the deceptive BOGO offer, and purchased more of the Products than they otherwise would have had they known that the BOGO offer was deceptive.

14.     Defendants deceived and misled Plaintiffs and the Class into purchasing their Products at premium prices over other lower-priced alternatives, because Plaintiffs and the Class believed they would receive premium, high-end Products for Free, or as gifts with their purchase.

15.     Defendants further deceived and misled Plaintiffs and the consumer Class, and continue to deceive and mislead consumers, by representing that the BOGO is a special or limited offer when, in reality, the BOGO offer is Defendants' predominant and primary sales mechanism.

16.     Because of Defendants' false, deceptive, and misleading BOGO price advertising, Plaintiffs and the Class were and have been induced to purchase and continue to purchase Products and pay an unworthy premium price for them and purchase more than they otherwise would– purchasing decisions that otherwise would not have been made had Plaintiffs and the Class been

1    fully aware of all material terms of Defendants' BOGO offer and the real value of the Free
2    Products.

3         17.    Defendants were in a superior position to know and did know that their BOGO price
4    was misleading, deceptive and false because it is not based on the Products' regular, single item,
5    price.

6         18.    Defendants failed, and continue to fail, to inform consumers of the truth or
7    otherwise inform consumers that they are not getting the Free Products that the BOGO offer
8    promises.  Instead, they are paying more than Defendants' regular, single item, price because the
9    cost of the Free Products are included in the price of Defendants' branded Products sold at BOGO.
10   The Free Products in the BOGO are thus, not truly Free, or worth what Defendants' inflated and
11   artificial "regular price" makes them appear to be worth, *i.e.*, premium and/or high-end.

12        19.    Plaintiffs and putative Class Members all saw and relied on the same deceptive and
13   misleading BOGO price advertising.  Plaintiffs considered the BOGO price to be the most
14   important and material aspect of their purchasing decisions and transactions with Defendants
15   because reasonable consumers find the promise of Free products as gifts to be particularly enticing.

16        20.    Defendants distribute the identical BOGO offer on **all** of their 880+ branded
17   Products, throughout all fifty states, simultaneously on their website, puritan.com, in their mail
18   order catalog, and through telephone orders.

19        21.    Defendants prominently display the BOGO Free Products and their corresponding
20   quantity next to the price that Plaintiffs and the Class pay.  The BOGO price information was, and
21   is, a material and integral component of every transaction because Defendants tether the BOGO to
22   the Product's price.

23        22.    Upon information and belief, there has been no reasonably substantial period in the
24   preceding six (6) years whereby Defendants did not sell their branded Products at BOGO price.
25   For at least the last six years, Defendants have obtained the substantial portion of their sales of the
26   Products through a BOGO price and not from Defendants' regular, single item, price.

27        23.    During any 12-month period within the preceding six (6) years, Defendants have
28   offered more than three of their branded Products at BOGO price in the same geographic and trade

areas.

24.     During any 12-month period within the preceding six (6) years, Defendants have introduced new Product(s) at BOGO price and then failed to discontinue the BOGO offer after a limited time and commence selling the new Product(s) at regular, single item, price.

25.     Plaintiffs want to continue to purchase the brand of vitamins and health supplements that they are accustomed to using, provided that Defendants remedy their misleading and deceptive BOGO deals and false promises of Free Products as gifts with purchase.

26.     The BOGO price is deceptive or has a reasonable likelihood to deceive consumers because it fails to reveal that the cost of the Free Products is built into the price of the Products that Plaintiffs and the Class must purchase to avail themselves of the BOGO price.

27.     The BOGO price is deceptive or has a reasonable likelihood to deceive consumers because Defendants fails to disclose the inferior value of the purportedly Free Products, or otherwise disclose that the Free Products are not worth as much as they advertise them to be.

28.     Because of such deceptive practices and conduct, Defendants have been able to force Plaintiffs and the Class to purchase far more Products than they need.

29.     Because of such deceptive practices and conduct, Defendants have been able to push off to consumers their branded Products that would otherwise expire and become worthless.

30.     As a result of Defendants' pervasive pattern of deceptive, false and otherwise improper BOGO advertising, sales, and marketing practices, and through other actions and inactions complained of herein, Defendants violated the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA"); the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et. seq.* ("FAL"); California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"); New York's Deceptive Acts and Practices Act, N.Y. GBL §§ 349 and 350; and were unjustly enriched.

## JURISDICTION

31.     Original jurisdiction of this Court exists by virtue of 28 U.S.C. § 1332(d)(2) and the Class Action Fairness Act ("CAFA").  28 U.S.C. § 1711, *et. seq*.  At least one member of the Plaintiff Class is a citizen of a State other than that of the Defendants, there are more than 100

putative Class members, and the amount in controversy exceeds $5,000,000.

32.    For the Plaintiff Subclasses, the Court has original jurisdiction under CAFA and/or supplemental jurisdiction under 28 U.S.C. § 1367.

33.    Venue is proper under 28 U.S.C. § 1391 because Defendants have continuous and systematic contacts with this District, including actively doing business in this District; Defendants are otherwise subject to personal jurisdiction in this judicial District; and/or because Defendants committed tortious acts within this District.

34.    **Intra-District Assignment**:  This action was reassigned from the Eureka Division, pursuant to Civil L.R. 3-2.

# PARTIES

*Plaintiffs*

35.    Plaintiff Darcey Sharp is disabled and an individual consumer.  During the Class period, Plaintiff Sharp purchased several Products directly from Defendants for her personal use. She made these purchases based on "buy one, get one" ("BOGO") price promotions used by Defendants to induce Plaintiff and members of the proposed class to purchase Defendants' Products. Plaintiff Sharp purchased generic vitamins, health and beauty supplements from Defendants, including but not limited to: Vitamin E, Hyaluronic Acid, Retinol and Garcinia Cambogia.  In Plaintiff Sharp's view, there was nothing unique or special about the Puritan's Pride branded Products that she purchased from Defendants other than Defendants' BOGO price promotion on these Products.  Plaintiff Sharp's purchases took place at various times during the Class period, with the last purchases occurring on or about October of 2016.  For example, on or about December 2, 2015, Plaintiff Sharp saw an advertisement in Defendants' mail order catalog offering one bottle of Puritan's Pride branded Vitamin E pills for $9.99 with two additional bottle of the same Product for free or as gifts with her purchase of the single bottle, purportedly for a limited time only.  Plaintiff Sharp purchased Defendants' branded Vitamin E from Defendants because she believed based on Defendants' BOGO price that she would receive two additional bottles of the same Vitamin E, each worth $9.99, for free, or as gifts, with her purchase.  When Defendants shipped the Vitamin E to Plaintiff Sharp, they included a receipt which provided, inter

alia, a unique customer number for Plaintiff Sharp; a unique order number; a unique Item Number for the Vitamin E; and the quantity of Vitamin E bottles shipped to Plaintiff Sharp in that transaction.  All of Plaintiff Sharp's transactions were completed in New York.

36.     Plaintiff Mary Ludolph-Aliaga is an individual consumer.  During the Class period, Plaintiff Ludolph-Aliaga purchased several Products directly from Defendants for her personal use. She made these purchases based on "buy one, get one" ("BOGO") price promotions used by Defendants to induce Plaintiff and members of the proposed class to purchase Defendants' Products.  Plaintiff Ludolph-Aliaga purchased generic vitamins, health and beauty supplements from Defendants, including but not limited to: Co-Q 10; Lutein; Ultra-Woman 50-Plus Multi-Vitamin; Omega-3 Fish Oil; Vitamin D3; Glucosamine Chondroitin; and Raspberry Ketones – all of which were purchased based on BOGO price promotions.  In Plaintiff Ludolph-Aliaga's view, there was nothing unique or special about the Puritan's Pride branded Products that she purchased from Defendants other than Defendants' BOGO price promotion on these Products.  Plaintiff Ludolph-Aliaga's purchases took place at various times during the Class period, with the last purchases occurring on or about May of 2015.  For example, on or about July 10, 2014, Plaintiff Ludolph-Aliaga went to the Puritan's Pride interactive website (www.puritan.com) and saw an advertisement offering two bottles of Puritan's Pride brand Co Q 10 pills for $47.96 (or $23.98 each) with three additional bottles of the same Co Q 10 for free, or as gifts with her purchase. Plaintiff Ludolph-Aliaga purchased two of Defendant's branded Co Q 10 because she believed based on Defendants' BOGO price that she was receiving three additional bottles of Co Q 10, each worth $23.98, for free or as gifts with her purchase.  Similarly, on July 10, 2014, Plaintiff Ludolph-Aliaga saw an advertisement on the Puritan's Pride interactive website (www.puritan.com) offering one bottle of Puritan's Pride branded Women's Multi-Vitamin for $19.24 with an additional bottle of the same multi-vitamin for free or as a gift with purchase.  Plaintiff Ludolph-Aliaga purchased Defendants' branded women's multi-vitamin for $19.24 because she believed, based on Defendants' BOGO price, that she was receiving an additional bottle of the same multi-vitamin, worth $19.24, for free or as a gift with her purchase.  When Defendants shipped the Products to Plaintiff Ludolph-Aliaga, they included a receipt which provided, *inter alia*, a unique customer

number for Plaintiff Ludolph-Aliaga; a unique order number; a unique Item Number for each Product purchased; and the quantity of Products shipped to Plaintiff.  Additionally, because Plaintiff Ludolph-Aliaga made these purchases using her PayPal account, PayPal sent Plaintiff Ludolph-Aliaga its own receipt, showing two bottles of Co Q 10 for $23.98 each and the additional three bottles of Co Q 10 for $0.00.  Similarly, the PayPal receipt listed the first bottle of Women's Multi-Vitamin for $19.24 and the additional bottle of the same Product for $0.00.  Thus, Plaintiff Ludolph-Aliaga's belief was reinforced that she was receiving a special deal of Products for free, or as gifts with her purchase of Defendants' Products and that the BOGO deals were special and only offered during special times of the year.  The following year, on or about May 26, 2015, Plaintiff Ludolph-Aliaga went to the Puritan's Pride interactive website (www.puritan.com) and saw an advertisement offering one bottle of Puritan's Pride branded Vitamin D3 for $13.99 that included two additional bottles of the same Vitamin D3 for free, or as gifts with her purchase, , purportedly for a limited time only.  Plaintiff Ludolph-Aliaga purchased Defendants' branded Vitamin D3 from Defendants for $13.99 because she believed, based on Defendants' BOGO price, that she would receive two additional bottles of the Vitamin D3, each worth $13.99, for free or as gifts with her purchase. All of Plaintiff Ludolph-Aliaga's transactions were completed in New York.

37.     Plaintiff Penelope Mueller is an individual consumer.  During the Class period, Plaintiff Mueller purchased several Products directly from Defendants for her personal use.  She made these purchases based on "buy one, get one" ("BOGO") price promotions used by Defendants to induce Plaintiff and members of the proposed class to purchase Defendants' Products.  Plaintiff Mueller purchased generic vitamins, health and beauty supplements from Defendants, including but not limited to: Hyaluronic Acid and CLA 1000 with Coconut Oil.  In Plaintiff Mueller's view, there was nothing unique or special about the Puritan's Pride branded Products that she purchased from Defendants other than Defendants' BOGO price promotion on these Products.  Plaintiff Mueller's purchases took place at various times during the Class period, with the last purchases occurring in or about June of 2016.  For example, on May 24, 2016, Plaintiff Mueller saw an advertisement in Defendants' mail order catalog offering one bottle of Puritan's Pride branded Hyaluronic Acid for $7.99 with two additional bottles of the same Product

for free or as gifts with her purchase, purportedly for a limited time only. Plaintiff Mueller purchased Defendants' branded Hyaluronic Acid for $7.99 because she believed, based on Defendants' BOGO price, that she was receiving two additional bottles of Hyaluronic Acid, each worth $7.99, for free or as gifts with her purchase. When Defendants shipped the Products to Plaintiff Mueller, they included a receipt which provided, *inter alia*, a unique customer number for Plaintiff Mueller; a unique order number; a unique Item Number for each Product purchased; and the quantity of Products shipped. All of Plaintiff Mueller's transactions were completed in New York.

38.    Plaintiff Jay Werner is an individual consumer. During the Class period, Plaintiff Werner purchased several Products directly from Defendants for his personal use. He made these purchases based on "buy one, get one" ("BOGO") price promotions used by Defendants to induce Plaintiff and members of the proposed class to purchase Defendants' Products. Plaintiff Werner purchased generic vitamins and health supplements from Defendants including but not limited to: Fiber, Glucosamine Chondroitin and L-Lysine. Plaintiff Werner's purchases took place at various times during the Class period, with the last purchases occurring on or about August 3, 2015. At that time, Plaintiff Werner went to the Puritan's Pride interactive website (www.puritan.com) and saw an advertisement offering two (2) bottles of Puritan's Pride branded L-Lysine for $55.95 (or $27.97 each) with three (3) additional bottles of the same Product for free, or as gifts with his purchase, purportedly for a limited time only. Plaintiff Werner purchased two bottles of L-Lysine for $27.97 each because he believed, based on Defendant's BOGO price, that he was receiving a special deal of three additional bottles of L-Lysine, each worth $27.97, for free, or as gifts, with his purchase. The BOGO deal was the major motivating reason for Plaintiff Werner's purchase of Defendants' Products. When Defendants shipped the L-Lysine to Plaintiff Werner, they included a receipt which provided inter alia a unique customer number for Plaintiff Werner; a unique order number; a unique Item Number for the L-Lysine purchased; and the specific quantity of L-Lysine shipped. All of Plaintiff Werner's transactions were completed in New York.

39.    Plaintiff Meg Larson is a citizen of California and an individual consumer. During the Class Period, Plaintiff Larson purchased Products from the Puritan's Pride website under a "buy

one get one free" or "buy one get two free" ("BOGO") promotion on multiple occasions. These Products included, but were not limited to, Garcinia Cambogia, Resveratrol, L-Arginine, Zinc, Calcium, Biotin, Probiotic Acidophilus, Vitamin B-12, L-Lysine, Lutein, Vitamin D3, and Glucosamine. She initially learned of Defendants' BOGO offer via word of mouth, and became interested in Defendants' Products based solely on the BOGO offer. Before making any of her purchases, she saw Defendants' BOGO offer advertised in a catalog, and she made all of her purchases after seeing and based upon on Defendants' BOGO offers, which were purportedly limited time offers, online and in catalogs. For example, in or about May, 2015, Plaintiff Larson saw L-Lysine and Lutein advertised on Defendants' website under a "buy one, get two free," "limited time" promotion, and Plaintiff purchased those Products in reliance on Defendants' representation that she would be getting two bottles of each Product for free or as gifts with her purchase. Plaintiff Larson's purchases took place at various times during the Class period and before, with the last purchase occurring in September, 2016. When Defendants shipped the Products to Plaintiff Larson, they included a receipt, which provided, *inter alia*, a unique customer number for her; a unique order number; a unique Item Number for each Product purchased; and the quantity of Products shipped. All of Plaintiff Larson's transactions were completed in New York.

40.     Plaintiff Diane Cabrera is a citizen of California and an individual consumer. During the Class Period, Plaintiff Cabrera purchased Products from the Puritan's Pride website on multiple occasions. Plaintiff initially saw Defendants' BOGO offers while performing a Google search for vitamins, and became interested in Defendants' Products based solely on the BOGO offers. She searched for similar offers from other manufacturers and/or retailers but could not find any. Plaintiff Cabrera made all of her purchases after seeing and based upon Defendants' BOGO offers, which were purportedly limited time offers, online. On December 17, 2015, Plaintiff Cabrera purchased Coconut Oil for Skin & Hair pursuant to Defendants' "buy one get two free," "limited time" promotion. On May 19, 2016, she purchased Grapefruit 100% Pure Essential Oil under a "buy one get one free," "limited time" promotion. Plaintiff purchased all of her Products in reliance on Defendants' representation that she would be getting free Products, or additional Products as a gift, with her purchase. When Defendants shipped the Products to Plaintiff Cabrera,

they included a receipt, which provided, *inter alia*, a unique customer number for her; a unique order number; a unique Item Number for each Product purchased; and the quantity of Products shipped. All of Plaintiff Cabrera's transactions were completed in New York.

41.     Plaintiff Gary Opas is a citizen of New York and an individual consumer. During the Class Period and before, Plaintiff Opas purchased Products from the Puritan's Pride catalog and website under a "buy one get one free" or "buy one get two free" ("BOGO") promotion, which were purportedly limited time offers, on numerous occasions. The Products purchased by Plaintiff Opas included, but were not limited to, L-Argenine, Saw Palmetto Extract, Pumpkin Seed Oil, Alfalfa, Horny Goat Weed, and Flaxseed Oil. Before making any of his purchases, he saw Defendants' BOGO offer advertised online on a website listing discounts on various items, and became interested in Defendants' Products based solely on the BOGO offers. He made all of his purchases after seeing and solely based upon Defendants' BOGO offer offers online and in catalogs. Plaintiff Opas' last purchase occurred in June, 2014, wherein he purchased a Product after seeing it advertised as "buy one get one free," "limited time" offer in Defendants' catalog, and he made the purchase based on Defendants' representation that he would receive one Product free or as a gift with his purchase. When Defendants shipped the Products to Plaintiff Opas, they included a receipt, which provided, *inter alia*, his unique customer number; a unique order number; a unique Item Number for each Product purchased; and the quantity of Products shipped. All of Plaintiff Opas' transactions were completed in New York and the Products were shipped to him in New York.

42.     Plaintiff JoAnne Parker is a citizen of New York and an individual consumer. During the Class Period and before, Plaintiff Parker purchased Products from the Puritan's Pride website under a "buy one get one free" or "buy one get two free" promotion, which were purportedly limited time offers, on numerous occasions. These Products included, but were not limited to, Rose in Sweet Almond Oil Blend, Jasmine in Sweet Almond Oil Blend, Tea Tree Oil, Apple Cider Vinegar, and Ester-C 24 Hour Immune Support. Before making any of her purchases, she saw Defendants' BOGO offers advertised in a catalog, and became interested in Defendants' Products based solely on the BOGO offers. She made all of her purchases after seeing and solely

based upon Defendants' BOGO offer offers online and in catalogs. For example, in December, 2016, Plaintiff Parker purchased Ester-C 24 Hour Immune Support after seeing it advertised as a "buy one get two free," "limited time" offer on Defendants' website, and she purchased Rose in Sweet Almond Oil Blend after seeing it advertised as a "buy one get one free," "limited time" offer on Defendants' website. She made her purchases in reliance upon Defendants' representation that she would receive one or two Products for free or as a gift with her purchase. When Defendants shipped the Products to Plaintiff Parker, they included a receipt, which provided, *inter alia*, her unique customer number; a unique order number; a unique Item Number for each Product purchased; and the quantity of Products shipped. All of Plaintiff Parker's transactions were completed in New York and the products were shipped to her in New York.

43.     Immediately prior to purchasing the Products, Plaintiffs saw and relied upon Defendants' false and misleading marketing and advertising campaign alleged herein. But for Defendants' misrepresentations that they were receiving Free Products and that the offer was for a limited time only, Plaintiffs would not have purchased the Products for the price listed in the BOGO offer.

***Defendants***

44.     Defendant NBTY Inc. ("NBTY") is an international company with average net sales of approximately $3.2 billion per year and was recently ranked Forbes' 129th richest company. NBTY is a global manufacturer, marketer, distributor and retailer of vitamins, nutritional supplements and sports & active nutrition products.  NBTY is an existing Delaware corporation, with its corporate headquarters at 2100 Smithtown Ave., Ronkonkoma, New York, which is also Defendant's principal place of business and nerve center.  From this nerve center, NBTY creates and disseminates the allegedly deceptive advertising that forms the basis of this suit.  NBTY "direct[s], control[s] and coordinate[s]" its "major business decisions, including decisions regarding advertising, marketing and sale" of the subject Products from this nerve center in New York.

45.     NBTY manufactures and sells internationally, wholesale and retail, products.  In addition to its manufacturing and wholesale/retail sales, NBTY conducts "direct response/e-

commerce" sales of mostly their own branded products via their subsidiary Puritan's Pride and carried under the Puritan's Pride brand name.

46.     Defendant Puritan's Pride is a subsidiary of NBTY, and is engaged in internet and catalogue "direct-to-consumer" sales throughout the United States and internationally, including in California and New York.  Defendant Puritan's Pride is registered as a New York domestic corporation based on Long Island, New York and incorporated in New York with a DOS # of 251798.  Its corporate headquarters are located at 2100 Smithtown Avenue, Ronkonkoma, New York, which is also Defendant's principal place of business and its nerve center of operations.  From this nerve center, Defendant creates and disseminates the allegedly deceptive BOGO advertising at issue.  Further, Defendant's "major business decisions, including decisions regarding advertising, marketing and sale" of the subject Products are made from New York.  Defendant processes the consumer transactions that are at issue in New York.  Consumers send their payments to New York regardless of the manner of purchase, whether by mail, phone or internet.  Defendant ships the Products directly to consumers nationwide from its distribution center in Long Island, New York.

47.     NBTY reported that its Puritan's Pride direct-to-consumer capabilities include fulfilling 20,000 internet orders per day.  NBTY also reported that increased competition led Puritan's Pride to "increased use of promotions in order to maintain sales levels."  In the fiscal year ending in September, 2015, NBTY's reported "net sales" revenue was $3.23 billion.

48.     Puritan's Pride also conducts business internationally, including in China.  For example, on February 16, 2016, the internet-based e-commerce magazine, *Internet Retailer* reported that, in October of 2014, Puritan's Pride opened a web store on Tmall Global, a special section of the online shopping portal for foreign brands that do not operate physical stores.  It was further reported that Puritan's Pride's daily sales average, on this web portal alone, totaled more than $30,000 per day; and that these sales were attributable to Puritan's Pride's use of generously discounted sales tactics.

49.     Upon information and belief, Defendant Puritan's Pride is not a "general merchandise retailer" as defined by California law.

50.     Defendants ship all of their sales directly to the consumer from Defendants' distribution center on Long Island, N.Y., and Puritan's Pride does business, sells the Products, and ships to all 50 States.

51.     The true names and capacities whether individual, corporate, associate or otherwise of Defendant DOES 1 through 10, inclusive, are unknown to Plaintiffs at this time.  Plaintiffs will amend this Complaint to show their true names and capacities once they are ascertained.  Plaintiffs are informed and believe, and based thereon allege, that each of said fictitious defendants are responsible in some manner for the acts and occurrences set forth herein, and that the injuries and damages alleged herein were and are the direct and proximate result of the actions of these defendants.  Plaintiffs make all allegations contained in this Complaint against Defendants, and each of them, including DOES 1 through 10, inclusive.

52.     The use of the term "Defendant" or "Defendants" in any of the allegations in this Complaint, unless specifically alleged otherwise, is intended to include and charge, both jointly and severally, not only the Defendants identified in this Complaint, but also all Defendants designated as DOES 1 through 10, inclusive, as though the term "Defendants" was followed in each and every instance throughout this Complaint with the phrase "and each of them jointly and severally," including all named Defendants and Defendants included herein and sued under the fictitious names of DOES 1 through 10, inclusive.

53.     Plaintiffs are informed and believe, and based thereon allege, that Defendants, at all times herein mentioned, were the partners, joint venturers, subsidiaries, successors in interest, managing agent, merged entities, agents, alter egos, part of a jointly owned, managed, and/or operated business enterprise, and/or employees of each other Defendant and in doing the acts, omissions, and things alleged herein were acting as such and within the scope of their authority as such agents and employees and with the permission and consent of all other Defendants.  Plaintiffs are informed and believe, and based thereon allege, that Defendants have, and at all times herein mentioned had, a joint economic and business interest, goal and purpose in the Puritan's Pride branded line of products that are the subject of this lawsuit.

//

**FACTUAL ALLEGATIONS**

54.     As the economic downturn in the United States continues to loom over the lives of average Americans, people are ever increasingly searching and waiting for sales and hunting for discounts before purchasing the most basic of life's necessities, such as vitamins, minerals and health supplements, which directly affect their health and well-being.  Often, in today's economy, people are forced to consider their pocket books first and their health second.  Under these circumstances and in light of these dueling pressures, it is more than reasonable for average consumers to rely on advertisements such as those that are promulgated by Defendants that promise Free products when deciding which products to purchase.

55.     Defendants conduct extensive research regarding consumers' buying habits and thus, know the enticing impact that BOGO offers had, and has, on Plaintiffs' and other reasonable consumers' purchasing decisions.  Defendants also know that their customers need their Products for their health and wellbeing and are thus, in a vulnerable and dependent position.

56.     Defendants' BOGO pricing scheme takes advantage of Plaintiffs' and putative Class Members' vulnerable position by exploiting their health concerns and deceptively marketing their Products with false promises of Free Products as gifts with purchase.

57.     Defendants manufacture and directly market Products to consumers.  Defendants sold and continue to sell the Products by U.S. Mail through catalogs, which are sent from New York throughout the United States, including to California and New York.

58.     During all relevant times herein, the same Products listed in Defendants' mail order catalog were simultaneously sold online at the same BOGO price through Defendants' interactive website (www.puritan.com) and by telephone order.

59.     Defendants identify their Products by unique Item Numbers, which remain the same from the Products' introduction throughout the life of the Product, whether sold online or via mail order catalog.  Consumers use the Item Numbers to purchase Products and Defendants use these Item Numbers to track and ship the Products.  A consumer can take an Item Number from the catalog and use it to make the exact same BOGO purchase online as in the mail order catalog.

60.     Defendants create and uniformly disseminate the unlawful BOGO price advertising

from their nerve center in New York throughout the United States.  Neither the Products nor the BOGO price representation differs amongst states.

61.     Defendants offer this deceptive, misleading, and false BOGO price on all of their Puritan's Pride branded Products.  While Defendants sell other brands of vitamins and minerals on their website and in their catalog, these products are NOT the subject of this suit – as these products were rarely, if ever, sold at BOGO price, prior to the filing of the instant lawsuit.

62.     Defendants create and distribute price advertising, including the BOGO offers, from their nerve center in New York.  Defendants ship their Products directly to consumers from their warehouse distribution center in Long Island, New York, whether the orders are received from catalog, internet, or by phone.

63.     Regardless of where consumers reside or are located, or whether they make their purchase through the puritan.com website, phone, or by mail, they must send payment to New York.  Defendants' interactive website and their catalog both list the same location for consumers to mail payment for Product(s) as Oakdale, New York.

64.     Defendants record, compile, and maintain the details of every Product purchase transaction, including customer's name, contact information, the exact item(s) purchased, Item Number, quantity, price, and address for shipping the Product(s).

65.     Defendants also collect and maintain consumers' contact information for conducting directed marketing activity, including mailing the catalog and sending targeted emails, which are all done directly by Defendants and not through any third-party.

66.     Defendants continue to disseminate the BOGO price advertising through their interactive website and mail order catalog, in addition to flyers and targeted emails.

67.     Defendants' deceptive and misleading BOGO price representation is the centerpiece of Defendants' nationwide advertising campaign and the fuel that drives their daily internet sales tallies.

68.     Defendants prominently display the BOGO offers when consumers click on specific Products on the internet and the BOGO is tethered to the prices offered on the Products whether Products are listed online or in the catalog.

69.     Examples of the subject BOGO advertising are provided below:

 

  

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28







FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

70.     Defendants knew or should have known that they were advertising the Products fraudulently because the BOGO price is and was the regular and normal way that Defendants advertise and sell their Products.

71.     Defendants knew, or should have known that by selling the Products through a BOGO price advertising campaign, they have had the ability to grab a larger market share than their competitors.

72.     As Defendants' profits continue to grow from this highly misleading BOGO advertising scheme, it is average consumers who fall unknowing victim since it is the lure of getting Free Products that caused them to buy Products from Defendants in the first place.  But consumers are not getting the Free Products they thought they were getting.  To the contrary, they are suffering pecuniary injury with each purchase because they are overpaying for single Products and not receiving any Products for Free, and are purchasing more Products than they otherwise would.

73.     To this day, Defendants have made no effort to clear up Plaintiffs' and Class Members' misconceptions about obtaining Free Products of equal value with purchase of Products at a BOGO price.  Instead, it appears Defendants intend to not only continue, but increase their use of this misleading BOGO price advertising and marketing campaign.  This is evidenced by Defendants' use of the same BOGO offers internationally, including in Asia.

74.     While many consumers throughout the United States have complained, and are complaining daily, including through internet and social media, regarding Defendants' BOGO pricing practices, countless more remain unaware that they are falling prey daily.  This is a result of the complexity of Defendants' deception.

75.     Defendants also entice consumers with false, deceptive, and misleading representations that the BOGO price is only available for a limited time or during special times of the year.  Defendants list purported expiration dates for the BOGO and/or advertise the Free BOGO Products alongside claims such as "limited time," "last chance" or "hurry" to pressure consumers to make expedited purchases by falsely representing that consumers can only obtain Free Products if they act quickly.  As the BOGO offer ends however, Defendants extend or replace the BOGO

offer with another BOGO offer shortly thereafter.

76.    Defendants have engaged in the BOGO advertising program for at least 1 year and up to 6 years or more, in which they have obtained the substantial majority of the sales of their Products from this highly deceptive and misleading BOGO price advertising campaign and not by selling single Products at their advertised "regular price."

77.    Defendants knew or should have known that their BOGO pricing scheme was false advertising, deceptive, fraudulent, and misleading because the practice of marketing "free" products is highly regulated by 16 C.F.R. § 251.1, which states, in relevant part:

a.    "**General**.
    (1) The offer of Free merchandise or service is a promotional device frequently used to attract customers.  Providing such merchandise or service with the purchase of some other article or service has often been found to be a useful and valuable marketing tool.

    (2) **Because the purchasing public continually searches for the best buy**, and regards the offer of Free merchandise or service to be a special bargain, **all such offers must be made with extreme care** so as to avoid any possibility that consumers will be misled or deceived. Representative of the language frequently used in such offers are Free, Buy 1-Get 1 Free, 2-for-1 Sale, 50% off with purchase of Two, 1 Sale, etc. (Related representations that raise many of the same questions include Cents-Off, Half-Price Sale, 1/2 Off, etc. See the Commission's Fair Packaging and Labeling Regulation Regarding Cents-Off and Guides Against Deceptive Pricing.)

b.    **Meaning of Free**.
    (1) The public understands that, except in the case of introductory offers in connection with the sale of a product or service . . . an offer of Free merchandise or service is based upon a regular price for the merchandise or service which must be purchased by consumers in order to avail themselves of that which is represented to be Free. In other words, when the purchaser is told that an article is Free to him if another article is purchased, **the word Free indicates that he is paying nothing for that article and <u>no more than the regular price for the other</u>.** Thus, a purchaser **has a right to believe that the merchant will not directly <u>and immediately recover, in whole or in part, the cost of the free</u> <u>merchandise or service by marking up the price of the article which</u> <u>must be purchased, by the substitution of inferior merchandise or</u> <u>service, or otherwise.</u>**

    (2) The term regular when used with the term price, means the price, in the same quantity, quality and with the same service, at which the seller or advertiser of the product or service has openly and actively sold the product or service in the geographic market or trade area in which he is

making a Free or similar offer in the most recent and regular course of business, for a reasonably substantial period of time, *i.e.*, a 30-day period. For consumer products or services which fluctuate in price, the regular price shall be the lowest price at which any substantial sales were made during the aforesaid 30-day period. Except in the case of introductory offers, **if no substantial sales were made, in fact, at the regular price, a Free or similar offer would not be proper**.

c. **Disclosure of conditions**. When making Free or similar offers all the terms, conditions and obligations upon which receipt and retention of the Free item are contingent should be set forth clearly and conspicuously at the outset of the offer so as to **leave no reasonable probability that the terms of the offer might be misunderstood**. Stated differently, all of the terms, conditions and obligations should appear in close conjunction with the offer of Free merchandise or service. For example, disclosure of the terms of the offer set forth in a footnote of an advertisement to which reference is made by an asterisk or other symbol placed next to the offer, is not regarded as making disclosure at the outset.
. . .

d. **Introductory offers**.
(1) No Free offer should be made in connection with the introduction of a new product or service offered for sale at a specified price unless the offeror expects, in good faith, to **discontinue the offer after a limited time and to commence selling the product . . . separately, at the same price at which it was promoted with the Free offer**.
(2) In such offers, no representation may be made that the price is for one item and that the other is Free unless the offeror expects, in good faith, to discontinue the offer after a limited time and to commence selling the product or service promoted, separately, at the same price at which it was promoted with a Free offer.

e. **Frequency of offers**. So that a Free offer will be special and meaningful, a single size of a product or a single kind of service **should not be advertised with a Free offer in a trade area for more than 6 months in any 12-month period.   At least 30 days should elapse before another such offer is promoted in the same trade area.  <u>No more than three such offers should be made in the same area in any 12-month period</u>. In such period, the offeror's sale in that area of the product in the size promoted with a Free offer should not exceed 50 percent of the total volume of his sales of the product, in the same size, in the area.**

f. **Similar terms**. Offers of Free merchandise or services which may be deceptive for failure to meet the provisions of this section may not be corrected by the substitution of such similar words and terms as gift, given without charge, bonus, or other words or terms which tend to convey the impression to the consuming public that an article of merchandise or service is Free."

16 C.F.R. § 251.1 (emphases added); *see also generally* 16 C.F.R. §§ 233, *et seq.*

78.    As succinctly stated by New York's Attorney General Eric Schneiderman, "a

permanent sale is no sale at all."  Concerning Defendants' BOGO price advertising program, as alleged herein, Defendants knew or should have known that their highly misleading BOGO advertising violated numerous false advertising statutes throughout the United States but continue this deceptive and aggressive advertising program to this day despite these laws.

79.     As further indicia that Defendants knew or should have known that their widespread BOGO advertising program is and was deceptive and fraudulent, the Defendants' State of incorporation, location of their headquarters, and principal place of business are all New York, which has very similar advertising laws to those of California (Cal. Bus. & Prof. Code § 17537) and the Federal Regulation cited above.  *See* Sections 349 and 350 of New York's Consumer Protection Act, and Article 22-A of the New York General Business Law.  Furthermore, the New York State Attorney General, brought a lawsuit against New York-based retailer, Michael's, for this very same type of advertising that Defendants are accused of herein, which resulted in a $1.8 million settlement that gained significant publicity.  Recently, the New York Attorney General settled a similar suit with the retailer Hobby Lobby for also engaging in similar fraudulent price advertising and that suit also received tremendous publicity.

80.     These facts further illustrate that Defendants knew or should have known that the BOGO pricing practice they have used to market and sell their Products was deceptive and likely to mislead reasonably consumers, but despite this knowledge, they continued to engage in the exact same course of conduct, both domestically and internationally.

81.     The State of California specifically prohibits this practice, pursuant to Business & Professions Code §§ 17200 (UCL) and 17500 (FAL) and generally regulates it under the Consumers Legal Remedies Act.  Business & Professions Code section 17537, subpart (a), states, "It is unlawful for any person to use the term "prize" or "gift" or other similar term [such as Free, *see* 16 C.F.R. §§ 251.1 and 233.4] in any manner that would be untrue or misleading, including, but not limited to, the manner made unlawful in subdivision (b) or (c)."  Subpart (c) states, "It is unlawful to notify any person by any means that he or she will receive a gift and that as a condition of receiving the gift he or she must pay any money, or purchase . . . any goods . . . if any one or more of the following conditions exist: . . . (4) The majority of the gift offeror's sales . . . within the

preceding year . . . of the type of goods . . . which must be purchased . . . in order to obtain the gift item was made in conjunction with the offer of a gift."  Bus. & Prof. Code § 17537.

82.     Notwithstanding these facts, Defendants have taken no steps to clarify consumer misconceptions.  Defendants have sat silently while consumers purchased these fraudulently advertised products and continue to sit silently today as a high percentage of their sales are attributable to the misleading and deceptive BOGO price advertising at issue herein.

**CLASS ACTION ALLEGATIONS**

83.     Plaintiffs bring this class action pursuant to Fed. R. Civ. P. 23 in their representative capacity on behalf of themselves and a Nationwide Class and Sub-Classes as may be appropriate, of other similarly situated consumers.  Subject to additional information obtained through further investigation and/or discovery, the foregoing definition of the Classes may be expanded or narrowed.  The putative Classes are defined as follows:

> **Nationwide Class**:  All individual consumers who purchased Defendants' Products pursuant to a BOGO price, directly from Defendants, and whose transaction was processed by Defendants in New York, within the applicable statutory limitations period, including the period following the filing of the date of this action.
>
> **California Subclass**:   All individual consumer residents of California who purchased Defendants' Products pursuant to a BOGO price, directly from Defendants, within the applicable statutory limitations period, including the period following the filing of the date of this action.
>
> **New York Subclass**:   All individual consumer residents of New York who purchased Defendants' Products pursuant to a BOGO price, directly from Defendants, within the applicable statutory limitations period, including the period following the filing of the date of this action.

84.     Excluded from the Classes are:  (1) Defendants, Defendants' subsidiaries, affiliates, officers, directors, assigns and successors, and any entity in which Defendants have a controlling interest; (2) the Judicial officer presiding over this matter and his or her immediate family; (3) judicial staff; (4) jurors; (5) anyone who purchased a Product solely for the purpose of resale; (6) federal, state or local governmental entities; and (7) anyone asserting claims for personal injury. Plaintiffs reserve the right to modify the Class and Subclass definitions as further investigation and/or discovery so warrant.

85.     Plaintiffs propose that this case should be maintained as a class action under Fed. R.

Civ. P. 23 because it meets the requirements of Fed. R. Civ. P. 23(a) and also satisfies Fed. R. Civ. P. 23(b)(3).   Plaintiffs also believe this case could be certified under Fed. R. Civ. P. 23(b)(1), 23(b)(2), and 23(c)(4).   Without prejudice to raising alternative arguments for certification under either Fed. R. Civ. P. 23(b)(1), 23(b)(2) and 23(c)(4), the following facts, amongst others, demonstrate that this case is entitled to be maintained under Fed. R. Civ. P. 23(a) and 23(b)(3).

86.   **Numerosity**:  The Class is so numerous that joinder of all members is impractical. The total membership of the Class is presently unknown to Plaintiffs at this time; however, it is estimated that there are more than one thousand (1,000) individuals in the Class.  The identity of such membership is readily ascertainable via inspection of Defendants' books and records or other approved methods.  Class members may be notified of the pendency of this action by U.S. or electronic mail, internet postings, social media and/or publication.

87.   **Commonality**:  Common questions of law and fact exist as to all members of the Classes.  These common questions predominate over any questions affecting only individual Class Members.  These common legal and factual questions include, but are not limited to:

a) whether Defendants misrepresented (or omitted) material facts in connection with the promotion, marketing, advertising, packaging, labeling, and sale of the Products;

b) whether Defendants' practices are deceptive or likely to deceive reasonable consumers;

c) whether Defendants' conduct is unethical, oppressive, unscrupulous, and/or substantially injurious to consumers;

d) whether Defendants knowingly advertised the Products with intent not to sell them as advertised;

e) whether Defendants knowingly represented that a transaction confers or involves rights, remedies, or obligations which it does not have or involve;

f) whether Defendants' acts and practices in connection with the promotion, marketing, advertising, packaging, labeling, distribution, and sale of the Products violated the laws alleged herein;

g) whether Plaintiffs and Class are entitled to injunctive and other equitable relief;

h)   whether Defendants were unjustly enriched by their conduct; and

i)   whether Plaintiffs and the Class have sustained monetary loss and the proper measure of that loss.

88.    **Typicality**:  Plaintiffs' claims are typical of the claims of the other members of the Class because, amongst other things, Plaintiffs and all Class members were comparably injured through Defendants' misconduct at issue herein.  As alleged herein, Plaintiffs, like the members of the Class, purchased Products after exposure to the same material misrepresentations and/or omissions in Defendants' BOGO price advertising scheme.   Plaintiffs' claims are thereby representative of and co-extensive with the claims of each class.

89.    **Adequacy**:  Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class.  Plaintiffs have no interests that are antagonistic to or in conflict with the interests of other putative Class Members and are subject to no unique defenses.  Plaintiffs are similarly situated in interest to all members of the putative Class and are committed to the vigorous prosecution of this action and have retained competent counsel, experienced in complex class action litigation.   Moreover, putative Class Counsel are experienced consumer class action litigators who have brought and successfully resolved and/or tried numerous consumer class actions on behalf of California and nation-wide classes in state and federal courts.

90.    **Predominance**:  Defendants have acted, and/or refused to act, on grounds generally applicable to the Classes. The common questions of law set forth above are numerous and substantial and stem from Defendants' practices applicable to each individual Class Member. As such, these common questions predominate over individual questions concerning each individual Class member's

91.    **Superiority**: A class action is superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all members is impracticable.  The injury suffered by each individual Class Member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' deceptive conduct.   It would be virtually impossible for members of the Classes individually to redress effectively the wrongs done to them.  Class action treatment will allow those

1   similarly situated persons to litigate their claims in the manner that is most efficient and

2   economical for those parties and the judicial system.

3        92.    **Injunctive Relief Appropriate**: Injunctive relief under Rule 23(b) is necessary and

4   appropriate to require Defendants to: (a) discontinue advertising, marketing, packaging and

5   otherwise representing that they are giving consumers free Products as gifts with their purchase; (b)

6   undertake an immediate public information campaign to inform members of the putative Classes as

7   to their prior practices; and (c) to correct any erroneous impression consumers may have derived

8   concerning the value of the BOGO offer, including without limitation, the placement of corrective

9   advertising and providing written notice to the public.

### FIRST CAUSE OF ACTION

10
11
**Violation of Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.***
**(Asserted on Behalf of the California Subclass)**

12       93.    Plaintiffs hereby incorporate all preceding and succeeding paragraphs as though

13   fully set forth herein.

14       94.    The Consumers Legal Remedies Act, Civil Code §§ 1750, *et seq.* (hereafter

15   "CLRA"), was designed and enacted to protect consumers from unfair and deceptive business

16   practices.  To this end, the CLRA sets forth a list of unfair and deceptive acts and practices in Civil

17   Code § 1770.

18       95.    Plaintiffs have standing to pursue these claims because they have suffered injury in

19   fact and a loss of money and/or property as a result of the wrongful conduct alleged herein.

20   Plaintiffs would not have purchased the Product or paid as much for it, if they had known the truth.

21       96.    Plaintiffs suffered injury in fact and a loss of money and property with each

22   purchase because they overpaid for Defendants' Products and received Products of inferior value

23   than that advertised by Defendants – because the cost of the Free Products is built into the price

24   that consumers must pay to avail themselves of the BOGO and the "regular" price is fictitious.

25       97.    Plaintiffs suffered injury in fact and a loss of money and property with each

26   purchase because they lost the opportunity to purchase and consume products that were not tied to

27   false and deceptive promises of Free Products as gifts with purchase.

28       98.    The CLRA applies to Defendants' conduct and actions described herein because

Defendants and each of them is a "person" within the meaning of California Civil Code §§ 1761(c) and 1770, and provides "goods" within the meaning of Civil Code §§ 1761(a) and 1770. Purchasers of the Products, including Plaintiffs and Class Members, are "consumers" within the meaning of Civil Code §§ 1761(d) and 1770. Each purchase of the subject Product(s) by Plaintiffs and every Class member constitutes a "transaction" within the meaning of Civil Code §§ 1761(e) and 1770.

99.     The policies, acts, and practices described in this Complaint were intended to result in the sale of Products to consumers.

100.    Defendants made representations and material omissions regarding the nature of Free Products that they knew, or should have known, were deceptive and likely to cause consumers to buy their Products in reliance upon said representations.

101.    Defendants had a duty not to mislead consumers about the BOGO, the regular price of the Products that consumers must purchase to avail themselves of the BOGO, and the value of the Free Products that consumers would receive as part of the BOGO.

102.    Defendants' misrepresentation regarding Free Products of equal value as gifts with purchase was material, in that a reasonable person would have considered it important in deciding whether or not to purchase their Products.

103.     Defendants' concealment, omissions, misrepresentations, and deceptive practices, in violation of the CLRA, were designed to induce Plaintiffs and Class Members to purchase their Products and to conceal the true value of the Products and the Free Products in the BOGO price.

104.    Defendants' acts, practices, representations, omissions, and courses of conduct with respect to the marketing, advertising, promotion, and sale of their Products at BOGO price violate the CLRA in that, among other things: Defendants' active concealment of material facts violates § 1770(a)(9) because Defendants knowingly advertised goods with intent not to sell them as advertised; violated and continues to violate § 1770(a)(13) because Defendants knowingly make false and misleading statements of fact concerning reasons for, existence of, or amounts of price reductions; and Defendants' active concealment of material facts violates § 1770(a)(14) because Defendants knowingly represented that a transaction confers or involves rights, remedies, or

1    obligations which it does not have or involve.

2         105.    Defendants' acts and practices, undertaken in transactions intended to result and

3    which did result in the purchase of their Products by consumers, violate Civil Code § 1770 and

4    caused harm to Plaintiffs and Class and California Subclass Members who would not have

5    purchased (or paid as much for) the Products had they known the truth about the BOGO price.

6         106.    Defendants' BOGO price is deceptive and misleading because it leads reasonable

7    consumers, including Plaintiffs and Class Members to believe that they had a right to receive Free

8    Products of equal value when they purchased a Product at advertised regular price.

9         107.    Defendants' BOGO price advertising is misleading because Defendants did not

10   intend to give away the Free Products of equal value to the Product(s) purchased at BOGO price.

11        108.    Defendants' BOGO price advertising is misleading because it is not based on

12   Defendants' regular price for the Products.

13        109.    Defendants' BOGO price advertising is misleading because the BOGO price is not a

14   special or limited offer but rather, is the predominant way that Defendants sell their Products.

15        110.    Defendants intended to do the act that was deceptive, namely to market, advertise

16   and sell their Products at BOGO price.

17        111.    To this day, Defendants continue to engage in this conduct and expand its use.

18        112.    In accordance with Civil Code § 1780(a), Plaintiffs and the Class and California

19   Subclass seek injunctive and equitable relief for violations of the CLRA, including restitution and

20   disgorgement.

21        113.    Venue is proper pursuant to Civil Code § 1780(c) because Defendants do business in

22   the county where this action was originally filed.  *See* Mehr Declaration, *infra*.

23        114.    On October 20, 2016, Plaintiffs mailed Defendants a notice of their deceptive acts

24   and practices, and a demand in accordance with Civil Code §§ 1782(a) and (d).  Plaintiffs further

25   informed Defendants that their conduct affects senior citizens and/or disabled persons, pursuant to

26   Civil Code § 3345 (b).  To date, Defendants have neither responded nor ceased their harmful

27   conduct despite knowing the harmful impact their BOGO price advertising has on vulnerable

28   consumers who need their Products to maintain their health.

115.    Defendants knew or should have known the demographic composition of their customers because they conduct significant market research and pay substantial sums for data and information precisely for the purposes of creating and implementing the advertising and pricing practices complained of herein.

116.    Plaintiff Sharp is disabled, pursuant to Civil Code § 1761(g).  In addition to the remedies sought herein, Plaintiff Sharp prays for an award of $5,000, pursuant to Civil Code § 1780(b)(1), for herself and all others similarly situated who are disabled under § 1761(g), where the trier of fact has made the appropriate findings, pursuant to § 1780(b)(2).

117.    Plaintiffs and the Class further request actual damages, punitive damages, treble damages, statutory damages, costs, attorneys' fees and such other relief as the Court deems necessary and proper to deter and punish Defendants' conduct.

**SECOND CAUSE OF ACTION**
**False Advertising**
**in Violation of Bus. & Prof. Code §§ 17500, *et seq.***
**(Asserted on Behalf of the California Subclass)**

118.    Plaintiffs hereby incorporate all preceding and succeeding paragraphs as though fully set forth herein.

119.    By committing the acts alleged in this Complaint, Defendants have violated Bus. & Prof. Code § 17500, *et seq.*  Plaintiffs have standing to pursue these claims because, *inter alia*, they have suffered injury in fact and a loss of money and/or property as a result of the wrongful conduct alleged herein.  Plaintiffs would not have purchased the Product(s) or paid as much for them if they had known the truth.  Plaintiffs did not receive the value they expected for the price they paid because they did not actually receive any "free" Products with their purchases.

120.    Defendants' engaged in a widespread and extensive advertising campaign wherein the term "free" was used as a term similar to "prize" or gift" in a manner that is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.  Bus. & Prof. Code §§ 17537(a) and (c)(4).

121.    As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered injury in fact because, *inter alia*:  (a) Plaintiffs and Class were induced to purchase Products they

would not have otherwise purchased had they known the true "regular" price of the Products they had to purchase to avail themselves of the BOGO price; (b) Plaintiffs and Class were induced to pay substantially more for Products than they would have paid had they known the truth regarding the value of the Free Products in the BOGO; and/or (c) Plaintiff and the Class were induced to purchase the Products because of Defendants' false claims that the BOGO price was a special or limited time offer.

122.    Pursuant to Bus. & Prof. Code §§ 17535 and 17537, Plaintiffs and the Class seek an order of the Court enjoining Defendants from continuing to make and disseminate illegal, misleading and/or untrue statements in their pricing practices and to order Defendants to disclose such misrepresentations and inform the public accordingly.  Plaintiffs, the Class and the public will be irreparably harmed if such an order is not granted.

123.    Pursuant to Bus. & Prof. Code §§ 17203, 17535 & 17537, Plaintiffs and the Class seek restitution and/or disgorgement under Bus. & Prof. Code § 17500, *et seq.*

124.    Plaintiffs and the Class also seek an order requiring Defendants to pay actual damages and statutory treble damages, pursuant to Bus. & Prof. Code § 17537.4; attorneys' fees pursuant to Bus. & Prof. Code § 17537.4; and/or Civ. Code § 1021.5.

**THIRD CAUSE OF ACTION**
**Unlawful, Unfair and/or Fraudulent Business Practices**
**in Violation of Bus. & Prof. Code §§ 17200, *et seq.***
**(Asserted on Behalf of the California Subclass)**

125.    Plaintiffs hereby incorporate all preceding and succeeding paragraphs as though fully set forth herein.

126.    California Bus. & Prof. Code § 17200 prohibits acts of unfair competition, which include any "unlawful, unfair or fraudulent business practice."  The conduct described herein is ongoing and constitutes unfair, unlawful, fraudulent business acts and practices within the meaning of Bus. & Prof. Code § 17200.

127.    Plaintiffs have standing to pursue these claims because, *inter alia*, they have suffered injury in fact and a loss of money and/or property as a result of the wrongful conduct alleged herein.  Plaintiffs would not have purchased the Product(s) and/or paid as much for them if

1   they had known the truth.  Plaintiffs did not receive the value they expected for the price they paid

2   because did not actually receive any "free" Products with their purchases.

3       128.    Defendants' conduct is unlawful because it is in violation of Bus. & Prof. Code §§

4   17200, 17500, 17533.8 and 17537, the CLRA, and Section 5 of the Federal Trade Commission Act,

5   in addition to potentially other statutory violations that will be added.

6       129.    By committing the acts alleged in this Complaint, Defendants have engaged in

7   unfair business practices, in violation of the Unfair Practices Act, Bus. & Prof. Code §§ 17200, *et*

8   *seq.*  Defendants' conduct is unfair because, amongst other things, it is immoral, unethical,

9   oppressive, unscrupulous or substantially injurious to consumers and/or any utility of such

10  practices is outweighed by the harm caused to consumers, including to Plaintiffs, the Class and the

11  public.  There are less harmful alternatives available to Defendants to sell Products.

12      130.    By committing the acts alleged in this Complaint, Defendants have engaged in

13  fraudulent business practices, in violation of the Unfair Practices Act, Bus. & Prof. Code §§ 17200,

14  *et seq.*  Defendants' practices constitute fraudulent business practices because, amongst other

15  things, they are likely to deceive reasonable consumers, including Plaintiffs and the Class, and

16  Defendants failed to disclose material facts.

17      131.    Reasonable consumers had no way of knowing that Defendants were engaging in

18  false, deceptive, misleading advertising, and therefore could not have reasonably avoided the

19  injuries they suffered.

20      132.    Defendants' wrongful conduct complained of herein is ongoing and part of a

21  generalized pattern or course of conduct repeated on thousands of occasions daily.  Defendants'

22  representations and omissions were made with knowledge or reckless disregard of the laws of

23  California prohibiting false and misleading statements and advertising, as well as the reasonable

24  expectations of public consumers.

25      133.    Pursuant to California Business and Professions Code § 17203, Plaintiffs and the

26  consumers that they seek to represent are therefore entitled to:  (a) an order requiring Defendants to

27  cease the acts of unfair competition alleged herein; (b) restitution and/or disgorgement; (c) interest;

28  and (d) attorneys' fees and costs pursuant to Cal. Code Civ. P. § 1021.5.

**FOURTH CAUSE OF ACTION**
**Violation of New York Deceptive Acts and Practices Act**
**(Asserted on Behalf of the New York Subclass and the Nationwide Class)**

134.     Plaintiffs hereby incorporate all preceding and succeeding paragraphs as though fully set forth herein.

135.     This is a nationwide claim, or, alternatively, a claim on behalf of the New York Subclass, for relief under the New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law ("GBL") §§ 349 and 350.

136.     Under the GBL, section 349 states that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York] are hereby declared unlawful."  GBL § 349.  Furthermore, section 350 reads that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing or any service in this state is hereby declared unlawful."  GBL § 350.

137.     Through their deceptive acts and practices (including omissions), Defendants have harmed the public at large, including Plaintiffs and the Class, and such deceptive acts and practices were conducted through trade or commerce, and are still ongoing.

138.     Defendants' acts and practices, as alleged herein, are and were consumer-orientated in that Defendants are in the business of manufacturing, distributing, marketing and selling their Products to reasonable consumers, including Plaintiffs and putative Class Members.

139.     Defendants' deceptive acts, practices, and omissions as set forth in this Complaint are material in that they relate to matters which are important to consumers or are likely to affect the purchasing decisions or conduct of reasonable consumers, including Plaintiffs and the Class, regarding Defendants' products.

140.     As set forth herein, Defendants engaged in deceptive or materially misleading acts or practices by, *inter alia*: (1) advertising Free Products in a way to mislead consumers to choose their Products, or (2) choose these Products over the products of their competitors, (3) fixing the regular price of their Products to include the price of purportedly Free products, (4) providing Free Products of inferior value than that advertised; and/or (5) claiming that the BOGO price is a limited or special deal when in fact it is the predominant way that Defendants sell their Products.

141.   Resident and non-resident Plaintiffs have standing to pursue these claims because they have suffered injury in fact and a loss of money and/or property as a result of the deceptive conduct alleged herein.  Moreover, Plaintiffs' transactions, like those of all other putative Class Members, which form the basis for the underlying suit, were all completed in New York.

142.   In *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 746 N.Y.S.2d 858, 774 N.E.2d 1190 (2002), the New York Court of Appeals interpreted the language in GBL § 349 as "evinc[ing] a legislative intent to address commercial misconduct occurring within New York." *Id.* Thus, a territorial test is embedded in GBL § 349: to state a claim under the statute, "the deception of a consumer must occur in New York." *Id.*  In *Cruz,* the Second Circuit Court of Appeals held that this territorial test is satisfied if the deceptive transaction occurred in New York, thus allowing out-of-state plaintiffs to sue under the statute. *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 123 (2d Cir. 2013).

143.   Defendants' conduct complained of herein involves allegedly deceptive transactions that occurred in New York and implicate the interests of New York.  Defendants have admitted in Court documents that their nerve center of operations is located in New York.  From this nerve center, Defendants directed, controlled, and coordinated the allegedly false, misleading and deceptive advertising and sale of Products at BOGO price.  Further, all Plaintiffs were required to send payment to New York and their transactions were completed in New York.  Moreover, Defendants' warehouse distribution center is located in Long Island, New York, from where Defendants ship the Products to Plaintiffs and Class Members, nationwide.  Thus, all deceptive BOGO purchase transactions fall within the territorial reach of section 349 and suffice to give an out-of-state victim who engaged in the transaction statutory standing to sue under section 349.

144.   Defendants' acts or omissions as well as their failure to use reasonable care in this matter as alleged in this Complaint violate the provisions of the New York Deceptive Acts and Practices Act.  Thus, Defendants' advertising is false pursuant to GBL § 350.

145.   Defendants' false and deceptive acts and practices set forth herein are and were likely and reasonably foreseeable to mislead Plaintiffs and the Class and the public, acting reasonably in their reliance on Defendants' acts and practices, and to their detriment.

146.     Plaintiffs and Class members have suffered actual damages as a result of Defendants' violations of GBL §§ 349 and 350 and are entitled to relief including, but not limited to, statutory damages, actual damages, costs, attorneys' fees, and injunctive relief; in addition to all other relief as the Court may deem necessary and proper.

## FIFTH CAUSE OF ACTION
### Unjust Enrichment
### (Asserted on Behalf of the Nationwide Class and all Subclasses)

147.     Plaintiffs hereby incorporate all preceding and succeeding paragraphs as though fully set forth herein.

148.     Plaintiffs bring this claim in the alternative and on a quasi-contract basis.

149.     Plaintiffs and the Classes conferred a tangible economic benefit upon Defendants by purchasing their Products.

150.     Defendants had an appreciation or knowledge of the benefit conferred by Plaintiffs and the members of the Class.

151.     Plaintiffs and Class Members would have expected remuneration from Defendants at the time this benefit was conferred had they known that they overpaid for Defendants' Products, that their purchases did not genuinely contain additional Products of equal value for Free, or that the BOGO price promotion was not a special or limited offer.

152.     As a direct and proximate result of Defendants' misconduct as set forth above, Defendants have been unjustly enriched at the expense of Plaintiffs and the Class Members.

153.     It would be inequitable for Defendants to retain the benefits obtained by their wrongful conduct in the marketing and selling of these Products.

154.     Plaintiffs, on behalf of themselves and Class members, seek restitution from Defendants and/or an order of disgorgement from the Court, in addition to any other relief that the Court may deem just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all other similarly situated individuals, pray for judgment as follows:

A.  Certification of the Class and/or Classes under Fed. R. Civ. P. 23, and appointment of

Plaintiffs as representatives of the Class and/or Classes, and their counsel as Class Counsel;

B.  Declaration that Defendants' conduct is deceptive and/or has a likelihood to deceive consumers and/or harm the general public;

C.  A temporary, preliminary and/or permanent order for injunctive relief requiring Defendants to:  (1) discontinue advertising, marketing, and otherwise representing that consumers will receive Free Products; (2) undertake an immediate public information campaign to inform consumers, the general public, and members of the putative Class and/or Classes about Defendants' prior practices; and (3) to correct any erroneous impression consumers or the general public may have derived regarding the value of the Products provided in Defendants' BOGO price, including without limitation, the placement of corrective advertising and providing written notice to the public;

D.  An order requiring imposition of a constructive trust and/or disgorgement of Defendants' ill-gotten gains and to pay restitution to Plaintiffs and all members of the Classes and to restore to Plaintiffs and members of the Class and/or Classes all funds acquired by means of any act or practice declared by this Court to be unlawful, fraudulent or unfair business act or practice, a violation of law, statutes or regulations, or constituting unfair competition or false advertising;

E.  Distribution of any money recovered on behalf of members of the Class and/or Classes via fluid recovery or *cy pres* recovery, where necessary and as applicable, to prevent Defendants from retaining the benefits of their wrongful conduct;

F.  Compensatory and other damages for economic and non-economic damages identified herein, including all damages allowed by governing statutes;

G.  Statutory and pre-judgment and post-judgment interest on any amounts;

H.  Reasonable attorneys' fees as may be allowable under applicable law;

I.  Costs of this suit; and

J.  Such other and further relief as the Court may deem just and proper.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully Submitted,

Dated: January 15, 2018       **CUTTER LAW, P.C.**


By: */s/ C. Brooks Cutter*
    C. Brooks Cutter, Esq.
    John R. Parker, Esq.
Counsel for Plaintiffs and the Putative Class


Dated: January 15, 2018       **VISION LEGAL, INC.**


By: */s/ Tina Mehr*
    Tina Mehr, Esq.
Counsel for Plaintiffs and the Putative Class


Dated: January 15, 2018       **MARLIN & SALTZMAN, LLP**


By: */s/ Stanley D. Saltzman*
    Stanley D. Saltzman, Esq.
    Adam Tamburelli, Esq.
Counsel for Plaintiffs and the Putative Class


Dated: January 15, 2018       **LAW OFFICES OF W. HANSULT**


By: */s/ William Hansult*
    William Hansult, Esq.
Counsel for Plaintiffs and the Putative Class

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury with respect to all issues so triable.

Respectfully Submitted,

Dated: January 15, 2018                 **CUTTER LAW, P.C.**


By: */s/ C. Brooks Cutter*
    C. Brooks Cutter, Esq.
    John R. Parker, Esq.
Counsel for Plaintiffs and the Proposed Class


Dated: January 15, 2018                 **VISION LEGAL, INC.**


By: */s/ Tina Mehr*
    Tina Mehr, Esq.
Counsel for Plaintiffs and the Proposed Class


Dated: January 15, 2018                 **MARLIN & SALTZMAN, LLP**


By: */s/ Stanley D. Saltzman*
    Stanley D. Saltzman, Esq.
    Adam Tamburelli, Esq.
Counsel for Plaintiffs and the Proposed Class


Dated: January 15, 2018                 **LAW OFFICES OF W. HANSULT**


By: */s/ William Hansult*
    William Hansult, Esq.
Counsel for Plaintiffs and the Putative Class

**DECLARATION OF C. BROOKS CUTTER
PURSUANT TO CALIFORNIA CIVIL CODE § 1780(d)**

I, C. Brooks Cutter, declare as follows:

1.      I am a partner at Cutter Law P.C., counsel for Plaintiffs and the putative Class in the above-entitled action.  I am admitted to practice law in California and before this Court, and am a member in good standing of the State Bar of California.

2.      This declaration is made pursuant to California Civil Code § 1780 (d).

3.      I make this Declaration based on my review of documents and publicly available resources as well as upon personal knowledge, and if called upon to do so, I could and would competently testify thereto.

4.      Defendants conduct business in the County of Mendocino.


I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed on January 15, 2018 in Sacramento, California.


*/s/ C. Brooks Cutter*
C. Brooks Cutter

1

2

### CERTIFICATE OF SERVICE

3

4      I hereby certify that on January 15, 2018, I caused a copy of the foregoing document to be

5   filed electronically via the Court's electronic filing system. Those attorneys who are registered with

6   the Court's electronic filing system may access these filings through the Court's system, and notice

    of these filings will be sent to these parties by operation of the Court's electronic filing system.

7

8                                    */s/ Adam M. Tamburelli*

                                      Adam M. Tamburelli

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CERTIFICATE OF SERVICE