UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARCEY L. SHARPE, et al., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PURITAN'S PRIDE, INC., et al.,<br><br>Defendants. | Case No.16-cv-06717-JD<br><br>**ORDER RE MOTION TO DISMISS FIRST AMENDED CONSOLIDATED COMPLAINT**<br><br>Re: Dkt. No. 89 |

In this putative consumer class action, named plaintiffs Darcey Sharp and seven other individuals allege that defendants Puritan's Pride, Inc. and its parent entity, The Nature's Bounty Co. (together, "Puritan's Pride"), used misleading "buy one/get one free" promotionals and other deceptive marketing pitches to induce sales of vitamins and health supplements. Plaintiffs are residents of New York and California, and seek to represent classes within those states under their consumer protection laws. They also seek to represent a nationwide class under New York law.

Puritan's Pride moves to dismiss the first amended consolidated complaint under Federal Rule of Civil Procedure ("FRCP") 12(b)(6) for failure to state plausible claims. It also challenges personal jurisdiction in this Court for the New York law claim under FRCP 12(b)(1) and (2). The motions are granted and denied in part.

**BACKGROUND**

Puritan's Pride is a well-known supplier of vitamins and health supplements to consumers across the United States through online and mail-order channels. Plaintiffs allege that its sales practices featured misleading statements about discounted pricing and special offers. For example, plaintiffs say that Puritan's Pride regularly deployed "BOGO" promotionals -- "Buy One Get One (or more) Free" -- with the message that consumers were getting a bargain over "regular" prices. *See, e.g.*, Dkt. No. 88 ¶¶ 3-9. These promotionals involved advertisements featuring

statements such as "up to 60% off" and "get 2 free when you buy 1." *Id.* ¶ 69. Plaintiffs also say that Puritan's Pride portrayed the BOGO promotionals and other discounts as special offers available only for limited time periods. *Id.*; *see also* ¶¶ 9, 75.

The gravamen of the amended complaint is that the discounted price statements were false and deceptive. Plaintiffs allege that there was no regular price to discount because "there has been no reasonably substantial period of time" when Puritan's Pride sold products at anything other than BOGO and limited-offer prices. *Id.* ¶ 4. The misleading statements induced consumers to buy vitamins and supplements from Puritan's Pride on the basis of cost savings that were illusory. *Id.* ¶¶ 11, 16.

The amended complaint follows the dismissal of the prior complaint for various pleading shortfalls under FRCP 8 and 9(b). Dkt. No. 85. It alleges claims under the California Consumers Legal Remedies Act ("CLRA"), False Advertising Law ("FAL"), the Unfair Competition Law ("UCL"), the New York General Business Law, and unjust enrichment. Jurisdiction arises under the Class Action Fairness Act, 28 U.S.C. § 1332(d). Dkt. No. 34.

## DISCUSSION

### I. THE CALIFORNIA CLAIMS

The amended complaint plausibly alleges claims for violations of the CLRA, FAL and UCL. Plaintiffs have added a number of factual allegations that satisfy the elements of the California consumer statutes they invoke. *See* CLRA, Cal. Civ. Code § 1770(a)(13) ("false or misleading statements of fact concerning reasons for, or existence of, price reductions"); FAL, Cal. Bus. & Prof. Code § 17537(a); UCL, Cal. Bus. & Prof. Code § 17200 (premised on violations of FAL and other statutes). Our circuit has upheld similar claims for allegations of misleading discounts and price reductions. *See, e.g.*, *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1103-05 (9th Cir. 2013) (sustaining CLRA, FAL and UCL claims for false representations of marked-down and sale prices); *see also Rubenstein v. Neiman Marcus Group LLC*, 687 Fed. App'x 564, 566-67 (9th Cir. 2017) (unpublished opinion). Puritan's Pride's contentions that the statements were not, in fact, deceptive are properly tested at the merits stage and not in the FRCP 12(b)(6) context. *See Brickman v. Fitbit, Inc.*, No. 15-CV-02077-JD, 2016 WL 3844327, at *3 (N.D. Cal. July 15,

2016) (citing *Williams v. Gerber Products Co.*, 552 F.3d 934, 938-39 (9th Cir. 2008)).

Puritan's Pride's contention that the amended complaint fails to properly allege harm for the California claims is not well taken. Puritan's Pride says that plaintiffs are limited under the consumer laws to restitutionary recovery in the form of a "price/value differential," which the amended complaint did not allege. Dkt. No. 89 at 6. It presents this argument as going to plaintiffs' "entitlement to monetary relief" and not to their standing to sue. Dkt. No. 91 at 3.

An express allegation of a price/valuation differential is not the *sine qua non* of an actionable CLRA, FAL or UCL claim. Plaintiffs allege a perfectly plausible injury in the form of losing money by being duped into buying products they otherwise would not have purchased but for the deceptive conduct. *See* Dkt. No. 88 ¶¶ 13-16, 28. Our circuit has determined that these allegations are enough to state harm under the CLRA, FAL and UCL. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 965-66 (9th Cir. 2018). A time may come when plaintiffs might need to put a finer point on the quantification of their loss, which very well might entail a price/value analysis. *See In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 131 (2009). But for pleading purposes under FRCP 12(b)(6), they have adequately alleged injury.

## II. THE NEW YORK CLAIM

Puritan's Pride's main argument with respect to the New York claim is that it is not properly before the Court. The fourth cause of action is brought under Sections 349 and 350 of the New York General Business Law ("GBL"). Section 349(a) prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." Section 350 states that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful." Plaintiffs allege the GBL claim on behalf of a putative class of New York residents, and a nationwide class of consumers "whose transaction was processed by Defendants in New York." Dkt. No. 88 ¶¶ 83, 135.

Puritan's Pride argues in effect that the GBL stops at the New York state border and that purchases made outside the state are beyond its purview. Consequently, it says that the GBL cannot be applied to a nationwide class and a "national" claim under the GBL should be

3

dismissed. For the named plaintiffs who made purchases in New York, it argues that the Court lacks specific personal jurisdiction for the GBL claim. Dkt. No. 89 at 10-14.

On the question of the territorial reach of the GBL, the New York Court of Appeals has construed the plain words of "in this state" in the GBL to mean that "the transaction in which the consumer is deceived must occur in New York." *Goshen v. Mutual Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 (2002).[1] Simply "'hatching a scheme' or originating a marketing campaign in New York" is not enough for the GBL to apply. *Id.* That is because "the phrase 'deceptive acts or practices' under the statute is not the mere invention of a scheme or marketing strategy, but the actual misrepresentation or omission to a consumer." *Id*. at 325. "Thus, to qualify as a prohibited act under the statute, the deception of a consumer must occur in New York." *Id*. (citing legislative history that the GBL is intended to apply to "intrastate transactions in New York").

Under these principles, the Court of Appeals rejected a GBL claim for a plaintiff who bought an insurance policy in Florida. The plaintiff alleged that the insurer misrepresented the policy's potential dividends in a scheme "conceived and orchestrated in New York" by a New York company. *Id*. But even though the plaintiff bought the policy on the basis of marketing materials disseminated from New York, he agreed to the transaction in Florida, and so was not "deceived in New York" as required to state a GBL claim. *Id*. at 326. By the same token, the Court of Appeals sustained the GBL claims for the plaintiffs who had purchased policies within New York. *Id*.

In sum, *Goshen* stands for the proposition that "the actual misrepresentation or omission to a consumer" occurs in the place where the consumer accesses and acts upon the deception. Plaintiffs do not seriously dispute this reading of the decision. Instead, they seek to sidestep *Goshen* by relying heavily on a Second Circuit opinion that they say permits the GBL to "apply extraterritorially." Dkt. No. 90 at 11. In *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115 (2d Cir. 2013), the Second Circuit sustained a claim under the GBL by a Virginia resident who alleged he had been defrauded in an online currency trading scheme that originated in New York.

---

[1] The court's analysis applies equally to Section 349 and Section 350. *Goshen*, 98 N.Y.2d at 324 n.1.

4

Recognizing that it was "a somewhat close call" under *Goshen*, the circuit decided that the Virginia plaintiff could pursue a GBL claim if "some part of the underlying transaction" occurred in New York. *Id*. at 123-24 (quotation omitted). The court found sufficient transactional ties to New York in the parties' contractual agreement, which specified New York law and New York courts for all disputes, and in the fact that funds were handled in the defendant's New York office. *Id*.

Plaintiffs say their purchases were similarly handled in New York and so the same conclusion should be reached here, but that contention is subject to considerable doubt. To start, even taking *Cruz* at face value, its facts are distinguishable. Plaintiffs do not point to any of the contractual agreements tying the parties to New York which the court in *Cruz* relied on in substantial measure. That in itself takes this case a step or two away from *Cruz*.

The bigger problem for plaintiffs is that *Cruz* is difficult to square with *Goshen*. It is the Court of Appeals' interpretation of New York law that binds this Court, not the Second Circuit's. *Goshen* was clear in holding that the deception must occur within New York. The case turned on the fact that the plaintiff received and relied upon the marketing materials for the insurance policy in Florida, and was deceived into buying it there. The fact that the deceptive materials originated in and were disseminated from New York was not enough to state a GBL claim.

So too, here. *Goshen* teaches that the deception occurs in the locale where the consumer was deceived into making a purchase. Consumers who bought Puritan's Pride supplements outside of New York necessarily received and read the company's marketing representations in their home states, and were misled into ordering its products there. The Court of Appeals expressly rejected the theory that the GBL applies to deceptive statements that merely emanated from New York; it is the place where the consumer viewed and acted on them that matters. The fact that some data processing and other back office functions were performed in New York for the transaction is of no moment. At most, those functions simply fulfilled a purchase that was made on the basis of a deception that occurred outside the state.

*Cruz* is particularly doubtful in that it invites exactly the kind of broad extraterritorial application of the GBL that *Goshen* condemned. Imposing liability under the GBL simply

5

because an online transaction was hosted or processed in New York "would lead to an unwarranted expansive reading of the statute, contrary to legislative intent, and potentially leading to the nationwide, if not global application of General Business Law § 349." *Goshen*, 98 N.Y.2d at 325. The Court of Appeals expressly rejected that result, both as a matter of the plain language of the GBL, and because it would wrongly displace the power of other states to enforce their own consumer protection laws. *Id.*; *see also Cline v. TouchTunes Music Corp.*, 211 F. Supp. 3d 628, 634 (S.D.N.Y. 2016) (noting "significant tension" between *Cruz* and *Goshen* on extraterritoriality of GBL). *Cruz* might be read to suggest that use of the internet is a factor, but that makes no analytical difference under *Goshen*. How the deceptive materials emanate from New York is not the issue. What counts is where the consumer was deceived into buying.

Consequently, plaintiffs cannot state a claim under the GBL for purchases made outside of New York. The GBL claim is limited to individuals who bought Puritan's Pride products within New York. *Goshen*, 98 N.Y.2d at 326; *see also In re Capacitors Antitrust Litig.*, No. 17-md-02801-JD, 2018 WL 4558265, at *3 (N.D. Cal. Sept. 20, 2018) (limiting GBL claim related to price-fixing to purchases made in New York); *Mouzon v. Radiancy, Inc.*, 85 F. Supp. 3d 361, 377 (D.D.C. 2015).

The next question is whether such a claim can be litigated in this Court. Puritan's Pride presents the question under FRCP 12(b)(2) and appears to contend that there is no basis in personal jurisdiction for the Court to entertain the GBL claim because it turns entirely on events and law in New York, with no connection to California or this district. Puritan's Pride seeks dismissal on jurisdiction grounds. The parties focus only on specific personal jurisdiction and not general jurisdiction. Dkt. No. 89 at 11-12; Dkt. No. 90 at 9-11.

Puritan's Pride's argument was not entirely precise. It discussed specific personal jurisdiction in terms of plaintiffs and their claims. *See, e.g.*, Dkt. No. 89 at 11. The proper focus, however, is on the defendant and its connection to the forum, regardless of what contacts the plaintiff might have there. *Walden v. Fiore*, 571 U.S. 277, 284 (2014). This is "case-linked" jurisdiction, and it looks to whether the defendant undertook an activity or occurrence in the forum state "and is therefore subject to the State's regulation." *Id.* at 284 n.6 (internal quotation

6

omitted). It is the defendant's "suit-related conduct" that "must create a substantial connection with the forum State." *Id*. at 284.

The Supreme Court reiterated these settled principles in *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*, 137 S. Ct. 1773 (2017) ("*BMS*"), the case to which the parties give most of their attention. The suit must arise out of or relate to the defendant's contacts "with the *forum*" for specific personal jurisdiction to arise. *BMS*, 137 S.Ct. at 1780 (internal quotation omitted) (emphasis in original). Without that connection, "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id*. at 1781.

These principles are enough in themselves to conclude that specific personal jurisdiction does not exist in this Court for the GBL claim against Puritan's Pride. Plaintiffs themselves squarely placed the key events in New York by alleging that both defendants are headquartered in New York and that each named plaintiff's "transactions were completed in New York." Dkt. No. 88 ¶¶ 35-46. They do not allege any conduct by defendants in California related to the GBL claim, nor could they in light of the GBL's territorial limits. In short, plaintiffs fail to allege any suit-related contacts in this forum with respect to the GBL claim. Plaintiffs' request for jurisdiction-related discovery is denied for this reason and because no discovery would change their own fact allegations.

Plaintiffs' only response to the jurisdiction challenge is to say that *BMS* does not apply to federal class actions. Dkt. No. 90 at 9-10. That is not germane to the question at hand. Puritan's Pride challenges personal jurisdiction with respect to the named plaintiffs, and not for absent members of a putative class. Requiring each named plaintiff to establish specific personal jurisdiction over defendants in this Court is the proper approach under *BMS* and its precedents. *BMS*, 137 S.Ct. at 1782-83; *see also In re Morning Song Bird Food Litig.*, No. 12-CV-01592-JAH, 2018 WL 1382746, at *2 (S.D. Cal. Mar. 19, 2018). In any event, the territorial scope of the GBL makes the class-action point effectively irrelevant because there is no national class in play and a putative New York class would necessarily consist of class members who bought products in New York and were harmed by the conduct of New York defendants.

Plaintiffs offer no other argument to establish specific personal jurisdiction, which was their burden to show. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). They make no effort, for example, the demonstrate the propriety of jurisdiction under the purposeful direction tests applicable to the type of torts alleged here. *See Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017); *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004); *Erickson v. Nebraska Mach. Co.*, No. 15-CV-01147-JD, 2015 WL 4089849, at *4 (N.D. Cal. July 6, 2015). Nor do they address the traditional concepts of minimum contacts and fair play in determining personal jurisdiction. *Schwarzenegger*, 374 F.3d at 800-01 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Because plaintiffs effectively abandoned these issues, they need not be analyzed here.

### III. UNJUST ENRICHMENT

In light of the GBL conclusions, the Court construes the fifth cause of action in the amended complaint to be for unjust enrichment under California law. It is dismissed because unjust enrichment is a remedy and not a freestanding claim. *In re Capacitors Antitrust Litig.*, 106 F. Supp. 3d 1051, 1074 (N.D. Cal. 2015). Plaintiffs are certainly free to seek the remedy at the appropriate stage of the case.

### CONCLUSION

The fourth cause of action under the GBL is dismissed without prejudice. While plaintiffs may not pursue the GBL claim here, they are not barred by this order from raising it in a New York or other appropriate court. The unjust enrichment claim is dismissed. The motion is denied in all other respects.

**IT IS SO ORDERED.**

Dated: January 14, 2019

JAMES DONATO
United States District Judge