ARNOLD & PORTER KAYE SCHOLER LLP
James F. Speyer (SBN 133114)
james.speyer@arnoldporter.com
E. Alex Beroukhim (SBN 220722)
alex.beroukhim@arnoldporter.com
777 South Figueroa Street, Forty-Fourth Floor
Los Angeles, California 90017-5844
Telephone:    213.243.4000
Fax:              213.243.4199

Attorneys for Defendants
PURITAN'S PRIDE, INC. and
THE NATURE'S BOUNTY CO.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION

| | |
|---|---|
| DARCEY SHARP, MARY LUDOLPH-ALIAGA, PENELOPE MUELLER, JAY WERNER, DIANE CABRERA, MEG LARSON, GARY OPAS, and JOANNE PARKER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>PURITAN'S PRIDE, INC., a New York Corporation; THE NATURE'S BOUNTY CO. (f/k/a NBTY, INC.), a Delaware Corporation; and DOES 1 through 10 inclusive,<br><br>Defendants. | Case No. 16-cv-06717-JD, consolidated with No. 17-cv-2536-JD<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO LIMIT THE EXPERT OPINIONS OF LARRY D. COMPEAU, PH.D.**<br><br>Judge:        Hon. James Donato<br>Ctrm:        11<br>Date:         January 16, 2020<br>Time:         10:00 a.m.<br><br>Action Filed:  October 14, 2016 |

167192284

1

TO THE HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEYS OF

2

RECORD:

3

PLEASE TAKE NOTICE that on January 16, 2020, at 10:00 a.m., or as soon thereafter as

4

counsel may be heard, in Courtroom 11 on the 19th Floor of the United States District Court for

5

the Northern District of California, San Francisco Courthouse, located at 450 Golden Gate

6

Avenue, San Francisco, California 94102, the Honorable James Donato presiding, Defendants

7

Puritan's Pride, Inc. and The Nature's Bounty Co. (together, "Defendants") will and hereby do

8

move the Court, pursuant to the United States Supreme Court's decision in *Daubert v. Merrell*

9

*Dow Pharms., Inc.*, 509 U.S. 579 (1993) and Rule 702 of the Federal Rules of Evidence, for an

10

order excluding the expert report and testimony of Plaintiffs' proffered expert witness, Larry D.

11

Compeau, Ph.D.  Defendants respectfully request that the Court strike Heading IV.C. and

12

Paragraphs 7, 31 (fourth sentence), 32 (last sentence), 33 (second sentence), 35 (last sentence), 38,

13

39 (third and fourth sentence), 41 (first sentence), 42, 44 (first sentence), 46.3, 46.4, 46.5, and

14

46.6.

15

This Motion is based on this Notice, the accompanying Memorandum of Points and

16

Authorities, the exhibits included with Defendants' Opposition to the Motion for Class

17

Certification, and all pleadings, papers and other documentary materials in the Court's file for this

18

action, those matters of which this Court may or must take judicial notice, and such other matters

19

as the Court may consider.

20

21

Dated:  December 12, 2019                         ARNOLD & PORTER KAYE SCHOLER LLP

22

23

By:   /s/ James F. Speyer
          James F. Speyer

24

          E. Alex Beroukhim
          Attorneys for Defendants

25

          PURITAN'S PRIDE, INC. and
          THE NATURE'S BOUNTY CO.

26

27

28

1

**<u>TABLE OF CONTENTS</u>**

2

**Page**

3

Introduction..................................................................................................................... 1

4

Argument ........................................................................................................................ 6

5

     A.     Experts May Not Opine About Corporate Intent ............................................. 6

6

     B.     Compeau Is Unqualified To Testify Regarding Causation And Deception
                And His Testimony On These Topics Is Unhelpful On The Issues............................ 7

7

               1.     Compeau Is Not Qualified To Offer Testimony On The Legal Issue

8

                        Of Causation ...................................................................... 8

9

               2.     Compeau's Testimony Is Not Helpful To The Inquiry Of Whether
                        PP's Alleged Conduct Is "Deceptive" Under California Law ........................ 9

10

     C.     PP's Prices are Not "False" Even Under Compeau's Own Definition.................... 11

11

     D.     There Is No Basis For Compeau's Opinion  About How Consumers Will
                Understand PP's Reference Price ........................................................... 12

12

Conclusion .................................................................................................................... 12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS NOTICE OF MOTION AND MOTION TO EXCLUDE AND/OR LIMIT
THE EXPERT OPINIONS OF LARRY D. COMPEAU, PH.D.

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Aguilar v. International Longshoremen's Union Local No. 10*,
966 F.2d 443 (9th Cir. 1992) ...........................................................................8

*Berry v. City of Detroit*,
25 F.3d 1342 (6th Cir. 1994) ..........................................................................7

*Daubert v. Merrell Dow Pharm.*,
43 F.3d 1311 (9th Cir. 1995) (*Daubert II*)................................................6, 9

*Daubert v. Merrell Dow Pharm.*,
509 U.S. 579 (1993)..........................................................................6, 7, 8, 9

*Fail-Safe, L.L.C. v. A.O. Smith Corp.*,
744 F. Supp. 2d. 870 (E.D. Wis. 2010)........................................................12

*Jinro Am., Inc. v. Secure Invs., Inc.*,
266 F.3d 993 (9th Cir. 2001) ..........................................................................7

*Kaui Scuba Ctr., Inc. v. Padi Ams., Inc.*,
2011 WL 2711177 (C.D. Cal. July 13, 2011) ..............................................10

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999)......................................................................................6, 7

*Liebsack v. U.S.*,
731 F.3d 850 (9th Cir. 2013) ....................................................................7, 12

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*,
523 F.3d 1051 (9th Cir. 2008) ........................................................................8

*Nelson v. Matrixx Initiatives*,
2012 WL 3627399 (N.D. Cal. Aug. 21, 2012) ............................................12

*Oculu, LLC v. Oculus VR, Inc.*,
2015 WL 3619204 (C.D. Cal. June 8, 2015) .................................................8

*Prest v. Jermstad*,
2009 WL 3634114 (S.D. Cal. Oct. 30, 2009) .................................................7

*Rodriguez v. County of Los Angeles*,
96 F. Supp. 3d 1012 (C.D. Cal. 2014) ............................................................8

*Ron Tonkin Gran Turismo, Inc. v. Fiat Distribs., Inc.*,
637 F.2d 1376 (9th Cir. 1981) ......................................................................11

DEFENDANTS NOTICE OF MOTION AND MOTION TO LIMIT
THE EXPERT OPINIONS OF LARRY D. COMPEAU, PH.D.

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
  996 F. Supp. 2d 942 (S.D. Cal. 2014) ............................................................10

*Sperling v. Stein Mart, Inc.*,
  2016 WL 8925347 (C.D. Cal. Jan. 26, 2016) ...............................................10

*Stathakos v. Columbia Sportswear Co.*,
  2017 WL 1957063 (N.D. Cal. May 11, 2017) ...................................... *passim*

*Tech. Licensing Corp. v. Gennum Corp.*,
  2004 WL 1274391 (N.D. Cal. Mar. 26, 2004) .................................................7

*United States v. Pac. Gas & Elec. Co.*,
  2016 WL 1640462 (N.D. Cal. Apr. 26, 2016) .................................................7

*Venture Corp. v. Wherify Wireless, Inc.*,
  2005 WL 5960919 (C.D. Cal. Sept. 23, 2005) ...............................................8

**State Cases**

*People v. Super. Ct.*,
  34 Cal. App. 5th 376 (2019) .........................................................................11

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (2009) ..................................................................................10

**Rules**

Federal Rules of Evidence 403 .............................................................................8

Federal Rules of Evidence 702 ...............................................................6, 7, 8, 9

**Other Authorities**

Abhijit Biswas and Edward Blair, "Contextual Effects of Reference Prices in Retail
  Advertisements," 55 *Journal of Marketing Research*, 1, 10 (1991) ..............9

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Introduction**

Plaintiffs' expert, Larry D. Compeau, Ph.D., has submitted a report in this case that provides improper opinions regarding Defendants' intent and improper legal conclusions.  This report is virtually identical to a report that Compeau submitted in *Stathakos v. Columbia Sportswear Co.*, 2017 WL 1957063, at *5–*6 (N.D. Cal. May 11, 2017).  In *Stathakos*, Judge Gonzalez Rodgers granted a motion to strike these opinions.  *Id.*  By and through this motion, Defendants respectfully request that the Court strike the same Compeau opinions that the court struck in *Stathakos*.

Specifically, Defendants request that the Court strike the following:

(i)         opinions regarding PP's corporate intent (*See* Dkt. No. 137-15, at Heading IV.C. & ¶¶ 7 (all, but second sentence), 32 (last sentence), 35 (last sentence), 38, 39 (fourth sentence), 41 (first sentence), 42, 44 (first sentence), 46.3, 46.4, 46.6);[1]

(ii)        conclusions that BOGO prices "caused"[2] plaintiffs to purchase the products at issue (*id.* ¶¶ 41 (first sentence), 42, 44 (first sentence), 46.3, 46.6); and

(iii)       opinions that such practices are deceptive.  *Id.* ¶¶ 7 (all, but second sentence), 46.6.[3]

These opinions "are outside the scope of [Compeau's] expertise and are, therefore, improper expert opinions."  *Stathakos*, 2017 WL 1957063, at *5–*6 (granting "motion to exclude Dr. Compeau's report to the extent that he opines on corporate intent or reaches legal conclusions outside the scope of his expertise").

In addition, Defendants request that the Court strike Compeau's conclusions that PP's reference prices are "false."  Dkt. No. 137-15, ¶ 46.5.  The facts of this case do not support the conclusion he reaches even under his own definition.  Defendants further request that the Court strike Compeau's conclusion that "[w]ithout any explanation to the contrary, reasonable consumers

---

[1] Page numbers reference internal page numbers of each exhibit and docket.

[2] *Stathakos*, 2017 WL 1957063, at *5.

[3] While not included in the *Stathakos* order, Defendants request that the Court also strike Paragraphs 31 (fourth sentence) and 39 (third sentence) of the Compeau Report because they are substantially similar to Paragraph 46.6, the analog of a Paragraph 53(6) that the court struck in *Stathakos*.  2017 WL 1957063, at *6.

will understand the reference price to be an actual price the item would normally sell at but for the

current BOGO offer and thus, a deal or discount is being offered" (*id.* ¶ 33 (second sentence))

because that opinion is completely unsupported.

### Background

As reflected below, Compeau's Report here is virtually identical to the Report he submitted

in *Stathakos*.  *Compare* Dkt. No. 137-15, *with* Beroukhim Dec. ISO Class Cert. ("Beroukhim

Class Cert. Dec.") Ex. 7.  The table below illustrates the similarity between the opinions that the

*Stathakos* court struck, and the opinions that PP requests that the Court strike:

| *Stathakos* Order (2017 WL 1957063, at *6) | *Stathakos* Compeau Report (Beroukhim Class Cert. Dec., Ex. 7) | PP Compeau Report Equivalent (Dkt. No. 137-15) |
|---|---|---|
| Paragraph 6 | Based on the documents and testimony provided to me, I conclude that Columbia uses Reference Prices to affect consumers' responses through the use of discounts by offering items for sale at a price lower than the stated Reference Price. I further conclude that the Reference Prices appearing on price tags for outlet exclusive SMUS are not bona-fide because the outlet exclusive items were never sold anywhere at those Reference Prices. Because the Reference Prices are not bona fide, they are deceptive.  ¶ 6. | Based on my experience in this field, my research, review of the information provided and the reference price literature, I conclude that Puritan's Pride use of reference prices in a discount off a higher reference price format and in the form of BOGO offers affects consumers' responses. . . .  Thus, I further conclude that the offers made by Puritan's Pride are not bona-fide because according to Plaintiff's counsel, rarely does Puritan's Pride ever sell those items at the individual price presented for a single item. Because the reference prices are not bona fide, they are deceptive from a consumer's point of view and according the FTC. The net effect is that Puritan's Pride external reference prices lack veracity and because consumers rely on them to judge the value of the deal, they are deceived.  ¶ 7 (all, but second sentence). |
| Paragraph 29 (last sentence) | There can be no doubt that Columbia is providing this Reference Price to enhance consumers' perceptions of the deal, suggest a significant savings, and induce the purchase.  ¶ 29 (last sentence). | There can be no doubt that Puritan's Pride is providing this reference price to enhance consumers' perceptions of the deal, suggest a significant savings, and induce the purchase. ¶ 32 (last sentence). |
| Paragraph 42 (last sentence) | Columbia uses Reference Prices to suggest to consumers that they are | Puritan's Pride uses reference prices in both formats to suggest to |

- 2 -

| | | |
|---|---|---|
| | saving money and getting a deal. ¶ 42 (last sentence). | consumers that they are saving money and getting a deal.  ¶ 35 (last sentence). |
| Heading 4.C | Columbia purposely affects consumers' behaviors through the use of Reference Prices.  Heading C. | Puritan's Pride purposely affects consumers' behaviors through the use of reference prices and BOGO offers.  Heading IV.C. |
| Paragraph 44 | I have examined documents and materials provided to me by counsel (See Exhibit 2). As explained in detail above, my review of these materials leads me to conclude that Columbia clearly knows about, understands, and exploits the universal effects of Reference Prices on consumers' responses to these offers as demonstrated with their pricing strategies and tactics. These Reference Prices are used to suggest to consumers that they are getting a deal in order to make consumers more likely to make the purchase. ¶ 44. | I have examined documents and materials provided to me by counsel (See Exhibit 2) as well as the Puritan's Pride website. As explained in detail above, my review of these materials leads me to conclude that Puritan's Pride clearly knows about, understands, and exploits the universal effects of reference prices on consumers' responses to these offers as demonstrated with their pricing strategies and tactics and internal research. These reference prices are used to suggest to consumers that they are getting a deal in order to make consumers more likely to make the purchase.  ¶ 38. |
| Paragraph 45 (last sentence) | The evidence supporting Columbia's pervasive use of false Reference Prices on its outlet exclusive items supports the conclusion that Columbia not only uses Reference Prices, but relies on the use of Reference Prices as a critical part of their everyday standard marketing practices.  ¶ 45 (last sentence). | The evidence supporting Puritan's Pride's pervasive use of false reference prices and the results of their own research supports the conclusion that Puritan's Pride not only uses reference prices, but relies on the use of reference prices as a critical part of their everyday standard marketing practices centered on BOGO offers.  ¶ 39 (fourth sentence). |
| Paragraph 47 (first sentence) | Columbia's heavy reliance on the use of price discounts demonstrates that they understand the universal effects of Reference Prices.  ¶ 47 (first sentence). | Puritan's Pride's heavy reliance on the use of price discounts and BOGO offers demonstrates that they understand the universal effects of reference prices. ¶ 41 (first sentence). |
| Paragraph 48 | The evidence that Columbia uses external Reference Prices to positively influence and impact consumers' purchase decisions process is substantial. It is my opinion that Columbia must be fully aware of, and relies on the impact of these reference pricing tactics to sell their products.  ¶ 48. | The evidence that Puritan's Pride uses external reference prices and BOGO offers to positively influence and impact consumers' purchase decisions process is substantial. It is my opinion that Puritan's Pride must be fully aware of, and relies on the impact of these reference pricing tactics to sell their products as also |

- 3 -

| | | explicated in their own research results.  ¶ 42. |
|---|---|---|
| Paragraph 50 (first sentence) | A careful review of the Columbia materials and documents provided to me show clear evidence that Columbia is not only aware of the effects of their use of Reference Prices on consumers' responses, but indeed, heavily relies on these effects to sell their products to consumers. ¶ 50 (first sentence). | A careful review of the Puritan's Pride catalogs, website, results of research reported in "Puritan's Pride Customer Experience Research" dated September 2017 and iModerate PowerPoint dated September 2017, show clear evidence that Puritan's Pride is not only aware of the effects of their use of reference prices on consumers' responses, but indeed, heavily relies on these reference price effects both through discounted "regular" prices and in the form of BOGO offers to sell their products to consumers.  ¶ 44 (first sentence). |
| Paragraph 53(3) | Columbia knows that its outlet consumers are motivated by the appearance of a discount and rely on these Reference Prices to make purchase decisions, (¶ 53(3)) | Puritan's Pride knows that its consumers are motivated by the appearance of a discount and rely on these reference prices, particularly the BOGO offers to make purchase decisions, (¶ 46.3) |
| Paragraph 53(4) | Columbia deliberately uses Reference Prices on its outlet exclusive items to induce consumers to make a purchase, (¶ 53(3)) | Puritan's Pride deliberately uses reference prices to induce consumers to make a purchase, (¶ 46.4) |
| Paragraph 53(6) | Columbia's Reference Pricing scheme is deceptive to consumers and induces consumers into purchasing Columbia outlet exclusive products that, absent the deceptive, they otherwise would not have bought.  ¶ 53(6). | Puritan's Pride's reference pricing scheme in the form of continuous discounts off "regular" prices and BOGO offers is deceptive to consumers and induces consumers into purchasing Puritan's Pride products that, absent the deception, they most likely otherwise would not have purchased.  ¶ 46.6. |

In addition to recycling opinions that have already been stricken in this district, Compeau's opinions are improper because they are not tailored to the facts of this case.  Compeau admits:  (1) that "it is unlikely that all consumers evaluate or interpret price comparisons the same" (Beroukhim Class Cert. Dec.; Ex. 1 at 44:17–21); (2) that "effectiveness of BOGO promotions will differ depending upon the type of product involved" yet concedes that he "didn't actually do any study on the effectiveness of BOGO promotions on vitamins and supplements"  (*Id.* at 48:24–49:6); and (3) that "there are likely Puritan's Pride consumers who are highly skeptical . . . of the

- 4 -

reference prices in BOGO ads," but concedes that he does not "know what percentage of Puritan's Pride customers are like that." *Id.* at 53:24–54:7.

Notwithstanding his admissions that consumer behavior varies depending on the consumer, the language used in the advertising, and the types of products involved, Compeau has admitted that he:

- Did not speak to any PP customers. *Id.* at 21:4–6.

- Did no research on PP shoppers. *Id.* at 32:24–33:2.

- Did not take into account demographic information regarding PP consumers. *Id.* at 33:11–13.

- Did not take into account how many PP customers are repeat customers. *Id.* at 33:14–16.

- Did not know how experienced or knowledgeable PP shoppers are. *Id.* at 34:8–34:12.

- Did not know whether the ads on PP's website were the same as the ones he viewed to reach his conclusions. *Id.* at 20:22–21:3.

- Did not read any plaintiffs' deposition. *Id.* at 8:3–6, 21:9–11.

- Did not talk to or interview a single plaintiff. *Id.* at 8:7–9.

- Did not know that three out of the four plaintiffs were unable to state under oath that the alleged misrepresentations caused them to make their purchases. *Id.* at 21:25–22:4; *see also* Beroukhim Class Cert. Dec.; Ex. 4 at 78:22–79:9; *id.* Ex. 5 at 130:10–131:20; *id.* Ex. 6 at 68:11–25.

- Did not do, and has never done, any academic research on BOGO advertisements. *Id.* at 11:10–12.

- Did not conduct a study to determine whether proposed class members were misled (even though he did so in another similar false price advertising action). *Id.* at 26:20–28:6.

- Did not study how consumers interpret the "Buy One" price—(what Dr. Compeau refers to as the "implicit" reference price). *Id.* at 26:20–28:6, 55:12–23.

1

## Legal Standard

2    Federal Rule of Evidence 702 states that opinions based on "scientific, technical, or other

3    specialized knowledge" may be admitted if they will "assist the trier of fact to understand the

4    evidence or to determine a fact in issue."  Such testimony may be admitted if "(1) [it] is based on

5    sufficient facts or data, (2) [it] is the product of reliable principles and methods, and (3) the

6    witness has applied the principles and methods reliably to the facts of this case."  Fed. R. Evid.

7    702.

8    The Court has a duty to ensure that expert testimony is both relevant and reliable.  *Kumho*

9    *Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (citing *Daubert v. Merrell Dow Pharm.*, 509

10   U.S. 579, 589 (1993).  To this end, the Court must "determine whether the testimony has a

11   'reliable basis in the knowledge and experience of [the relevant] discipline.'"  *Id*. at 149 (citing

12   *Daubert*, 509 U.S. at 592) (bracketed words in original).  The Court has a gatekeeping

13   responsibility "to make certain that an expert, whether basing testimony upon professional studies

14   or personal experience, employs in the courtroom the same level of intellectual rigor that

15   characterizes the practice of an expert in the relevant field."  *Id*. at 152.

16   An expert's testimony is reliable only if "the reasoning or methodology underlying the

17   testimony is scientifically valid."  *Daubert*, 509 U.S. at 592.  Courts should "analyze not what the

18   experts say, but what basis they have for saying it," focusing on the "reliability of the

19   methodology."  *Daubert v. Merrell Dow Pharm.*, 43 F.3d 1311, 1316–19 n.11 (9th Cir. 1995) (on

20   remand) (*Daubert II*).  The party proffering the evidence "must explain the expert's methodology

21   and demonstrate in some objectively verifiable way that the expert has both chosen a reliable . . .

22   method and followed it faithfully."  *Id.* at 1319 n.11.

23   ## Argument

24   ### A.     Experts May Not Opine About Corporate Intent

25    Compeau offers opinions regarding PP's knowledge, strategy, state of mind, and intent

26   based on his review of certain discovery (Dkt. No. 137-15, at Heading IV.C. & ¶¶ 7 (all, but

27   second sentence), 32 (last sentence), 35 (last sentence), 38, 39 (fourth sentence), 41 (first

28   sentence), 42, 44 (first sentence), 46.3, 46.4, 46.6), but he has no personal knowledge of these

facts.  None of this is admissible expert testimony.  *Stathakos*, 2017 WL 1957063, at \*5–\*6

(excluding the same opinions Compeau offers here); *United States v. Pac. Gas & Elec. Co.*, 2016

WL 1640462, at \*2 (N.D. Cal. Apr. 26, 2016) (improper for expert to rehash otherwise admissible

evidence about which he has no personal knowledge); *id.* at \*2–\*3 (expert witness may not opine

about "corporate intent").

### B. Compeau Is Unqualified To Testify Regarding Causation And Deception And His Testimony On These Topics Is Unhelpful On The Issues

As noted above, Rule 702 requires that the trial court make an initial determination as to

whether the proposed expert qualifies as an expert—*i.e.*, whether the expert has the requisite

"knowledge, skill, experience, training, or education" to render an opinion.  Fed. R. Evid. 702.

When making a preliminary finding of an expert's qualifications, a court must examine the

qualifications not "in the abstract, but whether those qualifications provide a foundation for a

witness to answer a specific question." *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir.

1994); *Liebsack v. U.S.*, 731 F.3d 850, 857 (9th Cir. 2013) ("'possessing requisite credentials

alone is not enough to render expert testimony admissible'") (quoting *Fuesting v. Zimmer, Inc.*,

421 F.3d 528, 535 (7th Cir. 2005)); *Prest v. Jermstad*, 2009 WL 3634114, at \*4, \*10 (S.D. Cal.

Oct. 30, 2009).  Care must be taken to assure that a proffered witness truly qualifies as an expert

because his or her statements—which are based on hearsay information rather than first-hand

knowledge—are likely to carry special weight with a fact finder. *Jinro Am., Inc. v. Secure Invs.,*

*Inc.*, 266 F.3d 993, 1004 (9th Cir. 2001).

If the court determines a witness is qualified, it then must determine whether the *Daubert*

"gatekeeping" requirements are satisfied, *i.e.*, "whether the expert is proposing to testify to (1)

scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue."

*Daubert*, 509 U.S. at 592.  While *Daubert* dealt with scientific testimony, this "gatekeeping"

requirement has been held to apply to all expert testimony. *See*, *e.g.*, *Kumho Tire Co.*, 526 U.S. at

141; *Tech. Licensing Corp. v. Gennum Corp.*, 2004 WL 1274391, at \*1 (N.D. Cal. Mar. 26, 2004).

As with cases involving scientific testimony, the trial court must determine that a non-scientific

expert's testimony is "properly grounded, well-reasoned, and not speculative."  Fed. R. Evid. 702

- 7 -

DEFENDANTS NOTICE OF MOTION AND MOTION TO LIMIT
THE EXPERT OPINIONS OF LARRY D. COMPEAU, PH.D.

Advisory Comm.'s Note, 2000 Amend.; *Venture Corp. v. Wherify Wireless, Inc.*, 2005 WL 5960919, at *1 (C.D. Cal. Sept. 23, 2005).

### 1.    *Compeau Is Not Qualified To Offer Testimony On The Legal Issue Of Causation*

Plaintiffs attempt to answer the specific question of causation between PP's alleged pricing practices and consumer purchasing decisions by relying on Compeau.  *See* Dkt. No. 137-15, at ¶¶ 41 (first sentence), 42, 44 (first sentence), 46.3, 46.6.  He is not qualified to answer this question, however, because in this context causation is a *legal* question that determines PP's ultimate liability, and not within the scope of his expert testimony.  *See Stathakos*, 2017 WL 1957063, at *5–*6 (excluding the same opinions Compeau offers here); *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058–59 (9th Cir. 2008) ("an expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law" because, in effect, it would be equivalent to a jury instruction regarding how it should decide key question of liability); *Aguilar v. International Longshoremen's Union Local No. 10*, 966 F.2d 443, 447 (9th Cir. 1992) (trial court did not err in excluding expert testimony as to matters of law for the court's determination); *Rodriguez v. County of Los Angeles*, 96 F. Supp. 3d 1012, 1027 (C.D. Cal. 2014) (striking expert's analysis of law because legal opinions provided by expert in declaration are not properly considered expert testimony under *Daubert*); *see also* Dkt. No. 137-15, at 14–24.

Moreover, Compeau himself admits he does not understand the human psychology of what causes consumers to make purchasing decisions.[4]  Rather, he bases his conclusions on the *correlation* found in the studies he reviewed (Dkt. No. 137-15, ¶¶ 20–30), which is of course not a sound methodology for determining *causation*.  *See Oculu, LLC v. Oculus VR, Inc.*, 2015 WL 3619204, at *21 (C.D. Cal. June 8, 2015) ("Lacking any factual basis beyond mere correlation, [the expert]'s opinion on causation is speculative as well as misleading and unhelpful to this Court and to the jury. . .  Accordingly, [the expert]'s opinion is properly excluded under Federal Rules of Evidence 702 and 403.").  Indeed, studies referenced by Compeau contradict his conclusions

---

[4] Compeau concedes "that there are in fact hundreds or even thousands of factors that may come into play in connection with buying decision."  Beroukhim Class Cert. Dec., Ex. 1 at 39:13–16.

1   outright.  *See, e.g.*, Dkt. No. 137-15, ¶ 41 (citing, Abhijit Biswas and Edward Blair, "Contextual

2   Effects of Reference Prices in Retail Advertisements," 55 *Journal of Marketing Research*, 1, 10

3   (1991) (Beroukhim Class Cert. Dec., Ex. 8 ) ("Researchers have been able to demonstrate positive

4   effects of reference prices on perceived saving, *but more often than not they have not been able to*

5   *find any effect of reference prices on shopping intention.*") (emphasis added).

6          What's more, Compeau's testimony undercuts his conclusion regarding causation because

7   he admits that he does not know what percentage of consumers are deceived.  Beroukhim Class

8   Cert. Dec., Ex. 1 at 22:25–23:5 ("Q: Do you know what percentage of Puritan's Pride customers

9   would buy the products if they had not seen a BOGO offer? [Objections] A:  No.").  Plaintiffs

10  must prove that PP's pricing practices caused them and the class to make a purchase.  But,

11  Compeau concedes he has no opinion on the degree to which this is true.  *Id.*  His opinion is thus

12  unhelpful to determining the ultimate issue of whether consumer behavior can be established on a

13  classwide basis, and therefore is irrelevant.

14          ***2.        Compeau's Testimony Is Not Helpful To The Inquiry Of Whether PP's***

15          ***Alleged Conduct Is "Deceptive" Under California Law***

16          Rule 702's "fit" or "helpfulness" standard requires "a valid . . . connection to the pertinent

17  inquiry as a precondition to admissibility."  *Daubert*, 509 U.S. at 592.  Compeau's testimony is

18  also introduced on the "pertinent inquiry" of deception (*see* Dkt. No. 137-15,  ¶¶ 7 (all, but second

19  sentence), 31 (fourth sentence), 39 (third sentence), 46.6), but his testimony fails to make a "valid

20  . . . connection" to that inquiry because it is based on an incorrect understanding of what legally

21  constitutes "deceptive" representations.[5]

22          More specifically, "[i]n assessing whether the proffered expert testimony 'will assist the

23  trier of fact' in resolving this issue, we must look to the governing substantive standard," which is

24  a substantive issue supplied by California law.  *Daubert II*, 43 F.3d at 1320.  Under California's

25  UCL and FAL, conduct may be "misleading" or "deceptive" if it is "likely to deceive the public."

26

27  [5] Compeau is unqualified to offer expert opinions as to whether conduct is legally deceptive for
    the same reasons he is unqualified to offer opinions as to legal causation as discussed in Section
28  B.1, *supra*.

*Kaui Scuba Ctr., Inc. v. Padi Ams., Inc.*, 2011 WL 2711177, at *9 (C.D. Cal. July 13, 2011); *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 989 (S.D. Cal. 2014) (under UCL and FAL, "conduct is deemed deceptive or misleading if the conduct is likely to deceive a reasonable consumer."). "The phrase 'likely to deceive' 'indicates that the ad is such that it is *probable* that a *significant portion* of the general consuming public *or of targeted consumers*, acting reasonably in the circumstances, could be misled.'" *Sperling v. Stein Mart, Inc.*, 2016 WL 8925347, at *7 (C.D. Cal. Jan. 26, 2016) (emphasis added).

Here, Compeau has admitted that "there are likely Puritan's Pride consumers who are highly skeptical . . . of the reference prices in BOGO ads." Beroukhim Class Cert. Dec. Ex. 1, at 53:24–54:2. He further concedes he does not "know what percentage of Puritan's Pride customers are like that." *Id.* at 54:5–7. What's more, three out of four of the named plaintiffs testified "I don't know" when asked at their depositions whether they would have bought the products absent the alleged deception. Beroukhim Class Cert. Dec., Ex. 4 at 78:22–79:9; *id.* Ex. 5 at 130:10– 131:20; *id.* Ex. 6 at 68:11–25. Yet he insists that PP's offers are "deceptive to consumers and induce[] consumers into purchasing Puritan's Pride products that, absent the deception, they most likely otherwise would not have purchased." Dkt. No. 137-15 at ¶ 46.6. He has no basis for these conclusions.

Compeau's understanding of "deception" is thus far afield from the correct legal standard, *i.e.*, if a "significant portion" of consumers "would probably" be misled. California law is clear that no UCL or FAL claim lies based merely on some possible interpretation by one or even a few consumers. *See In re Sony Gaming Networks*, 996 F. Supp. 2d at 967–68. Accordingly, Compeau's analysis of whether PP's price advertising is deceptive is wrong and unhelpful because it is not evidence of the relevant factual issue of what most PP consumers are likely to believe. *Stathakos*, 2017 WL 1957063, at *5–*6 (excluding the same opinions Compeau offers here).

1

2

### C.       PP's Prices are Not "False" Even Under Compeau's Own Definition

3        Compeau concludes that PP's prices are "false."  Dkt. No. 137-15, ¶ 46.5.  But that

4   contradicts his own definition of falsity.  He states that, "[i]n order for a reference price to be

5   valid[,] it should either reflect the actual price at which the item is regularly sold in the

6   marketplace, a price at which the seller has actually sold a majority of units, or a price at which

7   the seller has offered the item for sale for a majority of the time."[6]  *Id.* ¶ 34.  Under Compeau's

8   own definition, a reference price is "valid" if it is the price at which the item is regularly sold in

9   the marketplace or if it is a price at which the seller has offered the item for sale for a majority of

10  the time.

11       Using this definition, Compeau cannot conclude that PP's reference prices are false.  *First*,

12  Compeau has no basis to dispute that PP's "Regular" prices are not the price at which the item is

13  regularly sold in the marketplace because he admits he has not done a market analysis to

14  determine the price at which the items are regularly sold.  Beroukhim Class Cert. Dec., Ex. 1 at

15  32:19–23.  Indeed, plaintiffs admit that there is nothing "unique or special about the Puritan's

16  Pride branded Products."  Dkt. No. 88, ¶¶ 35, 36, 37.  Thus, there is no reason why a market

17  analysis could not be performed.  And, as stated by the California Court of Appeal, the market

18  price of an item requires an inquiry into the price at which the same or comparable items are sold

19  in the locality.[7]  *People v. Super. Ct.*, 34 Cal. App. 5th 376, 394 (2019).

20       *Second*, the undisputed record shows that PP has offered all PP branded products for sale at

21  the "Regular" price every day since March 7, 2013.  Hanson Dec. ¶ 17.  Thus, Compeau has no

22

---

23  [6] The "actual price at which the item is regularly sold in the marketplace" must refer to the market
    price of the item.  Otherwise, the clause would have said "a price at which the seller actually
24  sold," making it redundant with the third clause.

25  [7] Plaintiffs may argue that a market analysis is not possible because only PP sells PP branded
    products.  This is irrelevant and false.  As noted above, it is irrelevant because there is nothing
26  "unique or special about the Puritan's Pride branded Products."  Dkt. No. 88, ¶¶ 35, 36, 37.  Thus,
    comparable items could be substituted.  *See Ron Tonkin Gran Turismo, Inc. v. Fiat Distribs., Inc.*,
27  637 F.2d 1376, 1387 (9th Cir. 1981) (rejecting argument that the relevant product market was only
    Fiat cars, as opposed to cars in general, because there was "vigorous interbrand competition"
28  among car brands).  Further, as a matter of undisputed fact, PP products are not exclusively sold
    by PP.  They are sold by eBay, Amazon, and other online retailers.  Dkt. No. 137, at 4 n.3.

DEFENDANTS NOTICE OF MOTION AND MOTION TO LIMIT
THE EXPERT OPINIONS OF LARRY D. COMPEAU, PH.D.

1   basis for concluding that PP has not "offered the item for sale for a majority of the time."  Dkt.

2   No. 137-15, ¶ 34.

3        Compeau's conclusions are thus inconsistent with his own methodology, and should be

4   excluded.  *See Nelson v. Matrixx Initiatives*, 2012 WL 3627399, at \*10 (N.D. Cal. Aug. 21, 2012),

5   *aff'd sub nom.* 592 F. App'x 591 (9th Cir. 2015) (expert's "deviat[ion] from his own methodology

6   . . . goes to the core of the reliability of [his] opinion and the sufficiency of facts and data

7   underlying his opinion.").

8       **D.    There Is No Basis For Compeau's Opinion**

9                **About How Consumers Will Understand PP's Reference Price**

10        Compeau asserts that, "reasonable consumers will understand the reference price to be an

11   actual price the item would normally sell at but for the current BOGO offer and thus, a deal or

12   discount is being offered."  Dkt. No. 137-15, ¶ 33.  But he cites no authority for this assertion.

13   Presumably, he bases it on his "credentials," but this is improper.  *See Liebsack v. U.S.*, 731 F.3d

14   850, 857 (9th Cir. 2013) ("'possessing requisite credentials alone is not enough to render expert

15   testimony admissible'") (quoting *Fuesting v. Zimmer, Inc.*, 421 F.3d 528, 535 (7th Cir. 2005));

16   *Fail-Safe, L.L.C. v. A.O. Smith Corp.*, 744 F. Supp. 2d. 870, 888 (E.D. Wis. 2010) ("The court

17   cannot simply take an expert's word for a specific proposition.").  Moreover, this opinion is

18   inconsistent with his own research finding that consumers interpret semantic cues, like "Single

19   Unit" and "Regular" prices, in different ways (Beroukhim Class Cert. Dec., Ex. 9 at 185–86) and

20   with his testimony that consumers' interpretation of semantic cues is "'kind of all over the place.'"

21   *Id.* Ex. 1 at 37:2–11.  Therefore, the Court should also strike this opinion.

**Conclusion**

22        For the foregoing reasons, Defendants respectfully requests that the Court strike Heading

23   IV.C. and Paragraphs 7, 31 (fourth sentence), 32 (last sentence), 33 (second sentence), 35 (last

24   sentence), 38, 39 (third and fourth sentence), 41 (first sentence), 42, 44 (first sentence), 46.3, 46.4,

25   46.5, and 46.6.

26

27

28

1

Dated:  December 12, 2019

ARNOLD & PORTER KAYE SCHOLER LLP

2

3

By:   /s/ James F. Speyer
       James F. Speyer
       E. Alex Beroukhim
       Attorneys for Defendants
       PURITAN'S PRIDE, INC. and
       THE NATURE'S BOUNTY CO.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 13 -