UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARCEY L. SHARPE, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>PURITAN'S PRIDE, INC., et al.,<br><br>　　　　　Defendants. | Case No. 3:16-cv-06717-JD<br><br>**ORDER RE PARTIAL SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 136 |

　　　　This putative consumer class action challenges defendant Puritan's Pride's use of "buy one/get one free" ("BOGO") promotionals to sell vitamins and health supplements. The discounts were presented as available for a limited time only, but plaintiffs allege that the pricing was permanent and that "there has been no reasonably substantial period of time" when Puritan's Pride sold products at anything other than purportedly exceptional prices. Dkt. No. 88 ¶ 4. Plaintiffs allege that they bought defendants' products in reliance on the BOGO promotionals. *Id.* ¶ 16. The operative first amended consolidated complaint ("FACC") states claims for deceptive marketing practices under the California Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), and Consumers Legal Remedies Act ("CLRA"). Dkt. No. 88. The Court dismissed causes of action under the New York General Business Law, and for unjust enrichment. Dkt. No. 112.

　　　　Defendants seek partial summary judgment barring plaintiffs' claims for restitution and damages under the California consumer statutes. Dkt. No. 136. The motion does not challenge the merits of the deceptive practices claims, or contest the availability of injunctive relief should plaintiffs prevail. Defendants argue only that the measure of restitution in this case is limited as a matter of law to the difference between the prices plaintiffs paid under the BOGO promotionals

1  and the value they received. They say plaintiffs' proposed "expected discount" method is not
2  based on this differential, and so restitution is foreclosed as a remedy. Defendants contend that
3  actual damages under the CLRA are barred for similar reasons.

4  The Court heard oral argument on the partial summary judgment motion. Dkt. No. 168.
5  Because the parties are familiar with the facts, they will not be repeated here. Substantial
6  background was provided in the Court's orders on defendants' motion to dismiss, Dkt. No. 112,
7  and plaintiffs' motion to remand, Dkt. No. 34.

## DISCUSSION

### I. SUMMARY JUDGMENT STANDARDS

Parties "may move for summary judgment, identifying each claim or defense -- or the part of each claim or defense -- on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may dispose of less than the entire case and even just portions of a claim or defense. *Smith v. Cal. Dep't of Highway Patrol*, 75 F. Supp. 3d 1173, 1179 (N.D. Cal. 2014). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it could affect the outcome of the suit under the governing law. *Id.* To determine whether a genuine dispute as to any material fact exists, a court must view the evidence in the light most favorable to the non-moving party, and "all justifiable inferences are to be drawn" in that party's favor. *Id.* at 255.

"The Court is sitting in diversity jurisdiction and is guided principally by decisions of the California Supreme Court." *McDonald v. Kiloo ApS*, 385 F. Supp. 3d 1022, 1031 (N.D. Cal. 2019). If there is no pertinent decision, "a federal court must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *Nelson v. City of Irvine*, 143 F.3d 1196, 1206 (9th Cir. 1998) (citation omitted). Where "there is no convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of

2

the state's intermediate appellate courts." *Perez v. Mortg. Elec. Registration Sys., Inc.*, 959 F.3d 334, 338 (9th Cir. 2020) (citations omitted).

## II. REMEDIES UNDER THE CALIFORNIA CONSUMER STATUTES

The expansive scope of the California consumer statutes is well established. The California Legislature used "sweeping language" for the purpose of allowing the courts "to deal with the innumerable 'new schemes which the fertility of man's invention would contrive.'" *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 181 (1999) (citation omitted); *see also Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 320 (2011). The statutes are a type of market regulation and are "intended to preserve fair competition and protect consumers from market distortions." *Kwikset*, 51 Cal. 4th at 331 (citing *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 949 (2002)). Deceptive sales practices harm not only consumers who have been duped into making purchases, but also competing businesses that do not engage in misrepresentations or "dispense with accuracy in favor of deceit." *Id.*

Actions under the UCL and FAL are actions in equity. *Barquis v. Merchants Collection Ass'n*, 7 Cal. 3d 94, 112 (1972). Damages such as those in contract or tort cases are not available, and the remedies "are generally limited to injunctive relief and restitution." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003) (citation omitted); *see also Zhang v. Superior Court*, 57 Cal. 4th 364, 371 (2013). The CLRA provides for restitution as a remedy, and also for legal damages in the form of "actual damages." Cal. Civ. Code § 1780(a)(1), (3).

The California Supreme Court has concluded that "[i]njunctions are 'the primary form of relief available under the UCL to protect consumers from unfair business practices.'" *Kwikset*, 51 Cal. 4th at 337 (citation omitted). Even so, a conduct remedy "is only a partial remedy since it does not correct the consequences of past conduct," namely the losses sustained by consumers misled by deceptive conduct before it is enjoined. *Fletcher v. Sec. Pac. Nat'l Bank,* 23 Cal. 3d 442, 451 (1979) (citation omitted).

Consequently, although restitution is "ancillary" to an injunction, *id.* at 454 (citation omitted), it plays an important role in correcting the harm inflicted by violations. The Court "may make such orders or judgments . . . as may be necessary to restore to any person in interest any

1  money or property, real or personal, which may have been acquired by means of such unfair
2  competition." Cal. Bus. & Prof. Code § 17203 (UCL); *id.* § 17535 (FAL); *see also Zhang*, 57 Cal.
3  4th at 371. California courts have interpreted restitution in the UCL, FAL, and CLRA as
4  providing the same relief under the same standards. *See Colgan v. Leatherman Tool Grp., Inc.*,
5  135 Cal. App. 4th 663, 694 (2006). Consequently, the discussion of restitution here applies
6  equally to all of plaintiffs' claims in the FACC.

7        The discretion to award restitution is bounded by two principles. On one side, equity
8  counsels that "wrongdoers not retain the benefits of their misconduct." *Fletcher*, 23 Cal. 3d
9  at 452. "To permit the [retention of even] a portion of the illicit profits, would impair the full
10 impact of the deterrent force that is essential if adequate enforcement [of the law] is to be
11 achieved." *Id.* at 451 (alteration in original) (citation omitted); *see also In re Tobacco Cases II*,
12 240 Cal. App. 4th 779, 796 (2015). On the other side, a party seeking restitution must generally
13 return any benefit it has received to avoid a windfall that might overcompensate a victim of unfair
14 market practices. *In re Tobacco Cases II*, 240 Cal. App. 4th at 795-96.

15       Restitution "requires both that money or property have been lost by a plaintiff, on the one
16 hand, and that it have been acquired by a defendant, on the other." *Kwikset*, 51 Cal. 4th at 336.
17 There is no mandatory, one-size-fits-all formula for determining what portion of an unfair
18 exchange should be restored to an aggrieved party. That decision is entrusted to "the broad
19 discretion of the trial court." *Zhang*, 57 Cal. 4th at 371.

20 **III.   EXPECTED DISCOUNT AND PRICE/VALUE DIFFERENTIAL**

21       The main dispute here is whether plaintiffs can pursue restitution under an expected
22 discount method, or whether they are limited to an approach based on a price/value differential, as
23 defendants contend. Before reaching that issue, two other theories of recovery that plaintiffs
24 mention can be dismissed in short order. They propose to pursue legal damages under California
25 Business and Professions Code § 17537, which is a provision in the FAL that makes it "unlawful
26 for any person to use the term 'prize' or 'gift' or other similar term in any manner that would be
27 untrue or misleading." *See* Dkt. No. 144 at 11-13. Unlike other violations of the FAL, Cal. Bus.
28 & Prof. Code. § 17535, treble damages are available, *id.* § 17537.4.

4

The problem for plaintiffs is that the plain language of Section 17537 shows it does not apply to this case. *See Silbersher v. Valeant Pharm. Int'l, Inc.*, ___ F. Supp. 3d ___, 2020 WL 2323001, at *7 (N.D. Cal. May 11, 2020) (construction turns on words of statute). Section 17537 applies to advertising schemes where a person is informed that she has won a prize or will receive a gift, but that as a condition of receipt she must "pay any money or purchase or rent any goods or services." Cal. Bus. & Prof. Code § 17537(b), (c). Defendants' BOGO promotionals were not marketed in that manner, or as a "gift" or "prize" in the ordinary meaning of those words. Plaintiffs do not cite any evidence in the record suggesting otherwise. Consequently, they cannot seek damages under this statute.

Plaintiffs' disgorgement theory is equally unavailing. Dkt. No. 144 at 16-18. "There are two types of disgorgement: restitutionary disgorgement, which *focuses on the plaintiff's loss,* and nonrestitutionary disgorgement, which focuses on the defendant's unjust enrichment." *In re Tobacco Cases II*, 240 Cal. App. 4th at 800 (citation omitted) (emphasis in original). Nonrestitutionary disgorgement is not available under the UCL or the other statutes, and cannot be pursued here. *Id*. To the extent plaintiffs propose disgorgement based on their losses, they merely beg the question of restitution generally. Calling it "disgorgement" is just using a different name for the same thing. *See Korea Supply*, 29 Cal. 4th at 1145 ("under the UCL, disgorgement of money obtained through an unfair business practice is an available remedy . . . only to the extent that it constitutes restitution").

The possibility of restitution in this case depends entirely on whether plaintiffs' expected discount approach is viable under California state law. To illustrate plaintiffs' method, take a consumer who paid $21 under a 3-for-1 BOGO promotional for vitamin C that Puritan's Pride said was available for a limited time only. A consumer acting promptly on this apparently fleeting deal would have expected to get two of the three bottles for free. Plaintiffs say the measure of restitution should be 2/3rds of the purchase price of $21, which is $14, based on the expectation that two of the bottles should have cost the consumer nothing. *See* Dkt. No. 144 at 9-10.

Defendants attack this measure as untenable as a matter of law. They rely heavily on the California Court of Appeal decision in *In re Tobacco Cases II* for their position. In that case, the

5

plaintiffs sought restitution under the UCL consisting of a full refund of the purchase price of Marlboro Lights cigarettes, which had been deceptively marketed as being more healthful than other brands.  The court of appeal affirmed the trial court's determination that the tobacco company had misled consumers but that a full refund was not appropriate because it failed to take into account the value consumers received in obtaining the cigarettes.  *See In re Tobacco Cases II*, 240 Cal. App. 4th at 795-97.  The court concluded that a measure that accounted for the difference in the price paid and value obtained would better serve the principles of restitution, and that plaintiffs had failed to present evidence on that measure, or propose a good alternative.  *Id*. at 794-95.

Defendants read *In re Tobacco Cases II* to mean that a "price/value differential" is the only measure of restitution possible here because plaintiffs received some value from the products they bought under the BOGO promotionals.  *See* Dkt. No. 136 at 5-7.  They say restitution cannot be obtained because the expected discount model is not based on that exclusive measure.  *Id.* at 8-9.

Defendants go too far.  *In re Tobacco Cases II* did not conclude that a price/value differential is the sole measure of restitution in consumer cases.  To the contrary, the court of appeal expressly stated that the "difference between the price paid and actual value received is *a* measure of restitution, not the exclusive measure."  *In re Tobacco Cases II*, 240 Cal. App. 4th at 792 (emphasis in original).  Other measures are potentially viable.  *Id*.

The differential method worked well in *In re Tobacco Cases II* because the facts pointed strongly toward a price/value approach.  The evidence in that case established that consumers found value in Marlboro Lights despite the false advertising.  For example, the class representative "continued to purchase them for six years after learning they were no less harmful than Marlboro Reds."  *Id.* at 787.  The record also demonstrated that "most smokers who learned that Marlboro Lights were no healthier than Marlboro Reds believed Marlboro Lights . . . still provided reasonable value for the price they paid."  *Id.* (alteration in original).

This evidence was crucial to the trial court's decision to use a price/value differential measure of restitution.  The fact that the plaintiffs continued to buy the cigarettes, despite knowing that the advertising claims of being healthier were false, demonstrated that they "received value

6

1   from Marlboro Lights apart from the deceptive advertising." *Id*.  By conceding that they had

2   obtained value, the plaintiffs were held to account for it in their restitution request.

3         Similar circumstances drove the restitution discussion in *In re Vioxx Class Cases*, 180 Cal.

4   App. 4th 116 (2009), which *In re Tobacco Cases II* cited extensively.  The trial court there denied

5   class certification in a suit brought to recover "the difference in price between what [plaintiffs]

6   paid for Vioxx and what they would have paid for a safer, equally effective, pain reliever" after a

7   study indicated that Vioxx had cardiovascular risks and was pulled from the market.  *Id.* at 120.

8   The court of appeal concluded that the "difference between what the plaintiff paid and the value of

9   what the plaintiff received is a proper measure of restitution" when there is "evidence of the actual

10  value of what the plaintiff received."  *Id.* at 131 (citing *Cortez v. Purolator Air Filtration Prods.

11  Co.*, 23 Cal. 4th 163, 174 (2000)).  Class certification was denied because there was evidence that

12  "Vioxx was worth more than [the proposed comparator] to *a majority of class members*."  *Id.*

13  at 136 (emphasis in original).  When Vioxx was removed from the market, many customers

14  switched to another COX-2 inhibitor that was similar to Vioxx, and not to a generic nonsteroidal

15  anti-inflammatory drug (NSAID).  *Id.*  Additionally, certain class members "would happily take

16  Vioxx, knowing its risks, if it were back on the market."  *Id.* at 125.

17        The facts in *In re Tobacco Cases II* and *Vioxx* are materially different from the ones here.

18  In those cases, the evidence established that the deceptive advertising did not matter to the

19  plaintiffs because they believed they got value from their purchases despite it.  That element is

20  missing here.  Defendants have not identified any facts indicating that plaintiffs and other

21  consumers saw, or obtained, a specific value in their purchases independent of the misleading

22  BOGO promotionals.  To the contrary, plaintiffs filed declarations stating that they purchased

23  Puritan's Pride products "primarily because" of the BOGO promotionals, which said the sales

24  prices would be available only "for a limited time."  Dkt. No. 137-18 ¶¶ 2, 6; Dkt. No. 137-19

25  ¶¶ 2, 6.

26        This is an important distinction because "UCL and FAL restitution is based on what a

27  purchaser would have paid at the time of purchase had the purchaser received all the information."

28  *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 989 (9th Cir. 2015) (discussing

7

*Kwikset*). In *In re Tobacco Cases II* and *Vioxx*, the plaintiffs chose to buy the products even after they had received all the information about defendants' conduct. That is proof that consumers received something they valued despite misleading advertising. The record does not show the same is true here.

In addition to its strength as unrebutted testimony, plaintiffs' evidence makes sense from a market viewpoint. Puritan's Pride sells commodity-type vitamins and supplements that are available from a myriad of other suppliers. Price competition is a typical strategy to differentiate commodities from competitors and drive sales to consumers. A false representation of a limited-time-only price cut would allow Puritan's Pride to capture sales that would otherwise go to a competitor. *See* Dkt. No. 145-1, Ex. A at ECF pp.15-16 ("As I said, I didn't look elsewhere, because yours said 'buy one, get two free.'"). By the same token, consumers who knew the price discount was illusory would be less likely to buy from Puritan's Pride because the value is in the genuineness of the discount. The discount is the differentiator in the market that attracts a consumer. Fair competition is distorted, and competitors and consumers are harmed, when a deceitful supplier makes false representations about discounts.

Consequently, defendants are not entitled to a judgment that restitution is limited to a price/value differential as a matter of law. Defendants' argument that restitution should be measured against "the fair market value" of their products is also unpersuasive. Dkt. No. 136 at 5-6. The California Supreme Court explained why in *Kwikset*, which involved an issue of UCL standing that provides guidance here. "Nonkosher meat might taste and in every respect be nutritionally identical to kosher meat, but to an observant Jew who keeps kosher, the former would be worthless." *Kwikset*, 51 Cal. 4th at 330. The court rejected the proposition that "if the consumer does not value what he or she received as much as what he or she paid, the marketplace would, and its valuation should be dispositive." *Id.* at 332. The case that defendants cite, *People v. Superior Court* (*J.C. Penney Corp.*), 34 Cal. App. 5th 376, 394 (2019), also does not endorse fair market value as an exclusive measure.

While plaintiffs are not necessarily restricted to a price/value method, they still have "the burden of proving entitlement to an alternative measure of restitution proper under all the

8

circumstances." *In re Tobacco Cases II*, 240 Cal. App. 4th at 792. On the record before the Court, they have not shown that their expected discount proposal is a viable method of measuring restitution. The expected discount approach focuses in a contract-law manner on the benefit of the bargain plaintiffs expected from buying Puritan's Pride products at an apparent discount. That is a far cry from the starting point of restitution, which is the money plaintiffs lost and defendants acquired. For this reason, the California Supreme Court has rejected an "expectancy" measure as a proper basis of restitution. *See Korea Supply*, 29 Cal. 4th at 1148-50. The Ninth Circuit has also said as much in an unpublished opinion. *See Chowning v. Kohl's Dep't Stores, Inc.*, 735 Fed. App'x 924, 926, 926 n.4. (9th Cir. 2018).

Plaintiffs' suggestion that they might be able to establish the fair market value of Puritan's Pride products sometime in the future does not save them. After defendants moved for summary judgment, plaintiffs had the burden of supporting their restitution claims on the record as it stands. Rule 56 does not permit plaintiffs to avoid an adverse judgment on the promise of delivering a better argument later. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000) (burden is on the nonmoving party to "produce evidence to support its claim or defense" in opposition to summary judgment). Vague references to "numerous spreadsheets," Dkt. No. 144 at 20, that could be used to calculate the fair market value of Puritan's Pride products at some point in the future do not meet the Rule 56 requirement to cite "particular parts of materials in the record," Fed. R. Civ. P. 56(c)(1)(A). It is not the Court's responsibility to scour the record for evidence on plaintiffs' behalf. *Winding Creek Solar LLC v. Peevey*, 293 F. Supp. 3d 980, 989 (N.D. Cal. 2017), *aff'd*, 932 F.3d 861 (9th Cir. 2019).

## IV. CLRA DAMAGES ARE NOT LIMITED TO A PRICE/VALUE METHOD

Defendants seek to foreclose actual damages under the CLRA on the same argument that the price/value differential is the exclusive measure available to plaintiffs. Defendants say that California Civil Code § 3343(a), which is a general provision on damages in fraud cases and not part of the CLRA itself, limits CLRA actual damages to "the difference between the actual value

1    of that with which the defrauded person parted and the actual value of that which he received,"
2    which defendants equate to price/value differential.  Dkt. No. 136 at 7-8.

3       This attempt to cabin actual damages to a single formula is again misdirected.  As a matter
4    of statutory construction, the general provisions in Section 3343 do not trump the specific
5    remedies enumerated in the CLRA itself.  The CLRA expressly provides that a class action such
6    as this one "shall be governed exclusively by the provisions of Chapter 4 (commencing with
7    Section 1780)," which is the remedies section.  Cal. Civ. Code § 1752.  Defendants overlook the
8    fact that the CLRA provides for actual damages and restitution as separate remedies.  Cal. Civil
9    Code § 1780(a)(1), (3).  The price/value measure in Section 3343(a) is at heart a restitutionary
10   measure, and imposing it on the CLRA would render the separate enumeration of actual damages
11   and restitution redundant -- a statutory construction error to be avoided.  *See Hooks v. Kitsap*
12   *Tenant Support Servs., Inc.*, 816 F.3d 550, 560 (9th Cir. 2016).  In addition, Section 3343(b)(2)
13   states that the fraud damages provisions are not exclusive and do not deny "to any person having a
14   cause of action for fraud or deceit any legal or equitable remedies to which such person may be
15   entitled."  *See also Kwikset,* 51 Cal. 4th at 334.

16      No specific damages measure is prescribed in the CLRA, and the door is open to any
17   reasonable measure.  Actual damages in Section 1780(a) "generally refers to pecuniary damages,"
18   which is not limited to out-of-pocket losses.  *See Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634,
19   640 (2009).  In addition, the California Legislature has directed that the CLRA "be liberally
20   construed and applied to promote its underlying purposes, which are to protect consumers against
21   unfair and deceptive business practices and to provide efficient and economical procedures to
22   secure such protection."  Cal. Civ. Code § 1760.  This counsels against truncated formulations of
23   damages.  There is no statutory basis to restrict actual damages to out-of-pocket losses,
24   particularly when a benefit-of-the-bargain measure "has been observed to be a more effective
25   deterrent (in that it contemplates an award even when the property received has a value equal to
26   what was given for it.)."  *Stout v. Turney*, 22 Cal. 3d 718, 725 (1978).

27      Defendants' case citations give no reason for a different result.  They rely heavily on the
28   opinion in *Colgan*, which is the only California state court decision they cite, but to little effect.

1    The court of appeal did not hold Section 3343 necessarily governs actual damages under the
2    CLRA because that issue was not presented for decision in the appeal. *Colgan*, 135 Cal. App. 4th
3    at 672. The court simply noted that the trial court had used that approach, which says nothing at
4    all about the use of alternative approaches in other cases. *Id.* at 675. Defendants have not
5    identified a single California state court decision that has endorsed Section 3343 as the exclusive
6    measure of actual damages under the CLRA. Defendants also have not identified a published
7    circuit precedent to that effect.

Although plaintiffs' actual damages claim is not shackled by Section 3343(a), they again have the burden of sponsoring a viable damages method. *Tourgeman v. Nelson & Kennard*, 900 F.3d 1105, 1109 (9th Cir. 2018). This time, the expected discount approach is within bounds because it is, as defendants concede, a "benefit-of-the-bargain" measure. Dkt. No. 136 at 9. This measure aligns well with plaintiffs' liability theory that they were deceived into buying under the BOGO promotionals on the expectation of getting a big discount that was available for a short time only. The benefit-of-the-bargain measure "is concerned with satisfying the expectancy interest of the defrauded plaintiff." *Stout*, 22 Cal. 3d at 725. It aims to put the plaintiff in the position she would have been in if the false representation had been true. *Id.* "[I]t awards the difference in value between what the plaintiff actually received and what he was fraudulently led to believe he would receive." *Id.* That fits this case to a T, and the Ninth Circuit has recognized in other circumstances that the "benefit-of-the-bargain measure of damages is both cognizable under the CLRA and a reasonable basis of computation." *Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811, 818 (9th Cir. 2019)

Defendants' reliance on *Grace v. Apple*, Case No. 17-cv-00551-LHK, 2019 WL 3944988 (N.D. Cal. Aug. 21, 2019), is also misplaced. That case involved restitution under the UCL and not a CLRA claim for actual damages, which is subject to entirely different standards. *See Colgan*, 135 Cal. App. 4th at 695-96.

It is also worth noting that benefit-of-the-bargain damages are typically available in a California fraud-based action, unless an exception like Section 3343 applies. In *Alliance Mortgage Co. v. Rothwell*, 10 Cal. 4th 1226 (1995), the California Supreme Court reviewed the

11

damages available for fraud by a fiduciary. It recognized "[t]here are two measures of damages for fraud: out of pocket and benefit of the bargain." *Id.* at 1240 (citing *Stout*, 22 Cal. 3d at 725). Where Section 3343 did not apply, the plaintiff was not limited to "out-of-pocket" damages. *Id.* at 1240-41. "Because of the extra measure of blameworthiness inhering in fraud, and because in fraud cases we are not concerned about the need for predictability about the cost of contractual relationships, fraud plaintiffs may recover out-of-pocket damages in addition to benefit-of-the-bargain damages." *Lazar v. Superior Court*, 12 Cal. 4th 631, 646 (1996) (internal quotations and citations omitted).

Consequently, defendants are not entitled to bar a claim for actual damages under the CLRA as a matter of law. Whether plaintiffs ultimately establish that they are entitled to such damages is a question reserved for subsequent proceedings.

## CONCLUSION

Summary judgment is granted for defendants on damages under California Business and Professions Code § 17537 and restitution. Summary judgment is denied on actual damages under the CLRA. Because defendants filed for summary judgment before a class was certified, this order binds only the named plaintiffs, and no other putative class members. *See Schwarzschild v. Tse*, 69 F.3d 293, 297 (9th Cir. 1995).

The Court will issue an amended scheduling order.

**IT IS SO ORDERED.**

Dated: June 12, 2020

JAMES DONATO
United States District Judge