Stanley D. Saltzman, Esq. (SBN 90058)
**MARLIN & SALTZMAN, LLP**
29800 Agoura Road, Suite 210
Agoura Hills, California 91301
Telephone: (818) 991-8080
Fax: (818) 991-8081
ssaltzman@marlinsaltzman.com

William Hansult, Esq. (SBN 200915)
**LAW OFFICES OF W. HANSULT**
1399 Ramona Avenue, # C
Grover Beach, California 93433
Telephone: (805) 489-1448
hansultlaw@aol.com

Tina Mehr, Esq. (SBN 275659)
**VISION LEGAL, INC.**
445 S. Figueroa St., 31st Floor
Los Angeles, California 90071
Telephone:    (877) 870-9953
Facsimile:    (877) 348-8509
tmehr@visionlegalinc.com

*Attorneys for Plaintiffs and the Putative Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| DARCEY SHARP, MARY LUDOLPH-ALIAGA, PENELOPE MUELLER, JAY WERNER, DIANE CABRERA, MEG LARSON, GARY OPAS, and JOANNE PARKER, individually and on behalf of all others similarly situated,<br><br>            Plaintiffs,<br><br>        v.<br><br>PURITAN'S PRIDE, INC., a New York Corporation; THE NATURE'S BOUNTY CO. f/k/a NBTY, INC., a Delaware Corporation; and DOES 1 through 10 inclusive,<br><br>            Defendants. | No. 16-cv-6717-JD, consolidated with No. 17-cv-2536-JD<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' REVISED NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>(Filed concurrently with Declarations of Stanley D. Saltzman, William Hansult, Tina Mehr, Mary Ludolph-Aliaga, Penelope Mueller, Meg Larson, and Diane Cabrera, accompanying Exhibits and [Proposed] Order)<br><br>Judge:    Hon. James Donato<br>Date:     March 11, 2021<br>Time:     10:00 a.m.<br>Crtrm:    11<br><br>[Action Filed:   October 14, 2016] |

**TO THE HONORABLE COURT, ALL PARTIES & THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on March 11, 2021, at 10:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Judge James Donato, in Courtroom 11, on the 19th Floor, in the U.S. District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, Plaintiffs will and hereby do move for an Order certifying the following class:

> All individual consumer residents of California who purchased Defendants' Products pursuant to a BOGO price, directly from Defendants, within the applicable statutory limitations period, including the period following the filing of the date of this action.[1,2]

Plaintiffs also request that the Court appoint Plaintiffs Meg Larson, Diane Cabrera, Mary Ludolph-Aliaga, and Penelope Mueller as Class Representatives.

This motion is based upon this Notice of Motion and Motion, Memorandum of Points and Authorities, and the accompanying Declarations in support of Class Certification by Stanley D. Saltzman, William Hansult, Tina Mehr, and Plaintiffs Meg Larson, Diane Cabrera, Mary Ludolph-Aliaga, and Penelope Mueller. This Motion is also based on the pleadings and papers on file in this action and all other matters which the Court may properly consider.

**DATED**: January 26, 2021

**MARLIN & SALTZMAN, LLP**
**LAW OFFICES OF W. HANSULT**
**VISION LEGAL, INC.**

By: ___s/ Stanley D. Saltzman____
      Stanley D. Saltzman, Esq.
      Counsel for Plaintiffs and the Proposed Class

---

[1] Excluded from the Class are: (1) Defendants, Defendants' subsidiaries, affiliates, officers, directors, assigns and successors, and any entity in which Defendants have a controlling interest; (2) the Judicial officer presiding over this matter and his immediate family; (3) judicial staff; (4) jurors; (5) anyone who purchased a Product solely for the purpose of resale; (6) federal, state or local governmental entities; and (7) anyone asserting claims for personal injury. Plaintiffs reserve the right to modify the Class and Subclass definitions as further investigation and/or discovery so warrant.

[2] A previous version of this Motion was filed on November 14, 2019. *See* ECF No. 137. On September 22, 2020, the Court ordered parties to file a new class certification motion reflecting the Court's Summary Judgment Order. *See* ECF No. 185.

# **TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................. 1

II. STATEMENT OF FACTS ................................................................................ 4

    A. Defendants' Uniform and Pervasive False, Deceptive, and Unlawful BOGO Promotions Can Be Shown Through Common Evidence. ...................... 5

    B. Defendants' Sales Data Confirms That No Substantial Sales are Made at Single Item Price but that Substantial Sales of the Nearly All of Defendants' Products are Made at BOGO Price. ............................................................. 8

    C. Plaintiffs Were Victims of Defendants' Deceptive and Unlawful Practices ............... 9

III. THE REQUIREMENTS OF RULE 23(A) ARE SATISFIED .......................... 10

    A. There Is No Dispute that the Class Is Sufficiently Numerous. .................. 10

    B. There are Common Questions of Fact and Law. .................................... 10

    C. Plaintiffs' Claims are Typical of the Class. ........................................... 10

    D. Plaintiffs and Proposed Class Counsel Are Adequate Representatives. ............ 12

IV. THE REQUIREMENTS OF RULE 23(B)(3) ARE SATISFIED ...................... 12

    A. Common Questions Are Well-Established and Predominate. .................. 13

        1. Whether Defendants' BOGO Promotions Are Unlawful Will Predominate. ...................................................................................... 13

        2. Whether Defendants' BOGO Prices Are False, Deceptive or Unfair Will Predominate. ................................................................... 16

        3. Monetary Relief Can Be Calculated on a Class-Wide Basis. ............ 19

            a. The "Price/Value" Calculation Argued By Defendants Is Unavailing. ............................................................................ 21

            b. Plaintiffs' Expected Discount Model. .................................. 21

    B. A Class Action Is Superior to Other Methods of Adjudication. .............. 24

V. THE REQUIREMENTS OF RULE 23(B)(2) ARE SATISFIED .......................... 24

VI. CONCLUSION .............................................................................................. 25

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*Allen v. Hyland's Inc.*,
300 F.R.D. 643 (C.D. Cal. 2014) ...................................................................................19

*Amchem Products, Inc. v. Windsor*,
521 U.S. 591 (1997) ......................................................................................................12

*Barquis v. Merchants Collection Ass'n*,
7 Cal. 3d 94 (1972) .......................................................................................................20

*Brazil v. Dole Packaged Foods, LLC*,
2014 WL 2466559 (N.D. Cal. 2014) .............................................................................24

*Brickman v. Fitbit, Inc.*,
2017 WL 5569827 (N.D. Cal. 2017) .............................................................................10

*Briseno v. ConAgra Foods, Inc.*,
844 F.3d 1121 (9th Cir. 2017) ......................................................................................24

*Brown v. Hain Celestial Grp., Inc.*,
2014 WL 6483216 (N.D. Cal. 2014) .............................................................................19

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
20 Cal. 4th 163 (1999) ...........................................................................................14, 19

*Daniel v. Ford Motor Co.*,
806 F.3d 1217 (9th Cir. 2015) ......................................................................................16

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956 (9th Cir. 2018) ...................................................................................24, 25

*Ebner v. Fresh, Inc.*,
838 F.3d 958 (9th Cir. 2016) ........................................................................................16

*Hadley v. Kellogg Sales Co.*,
324 F.Supp.3d 1084 (N.D. Cal. 2018) ..........................................................................19

*Hanlon v. Chrysler Corporation*,
150 F.3d 1011 (9th Cir. 1998) ......................................................................................12

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992) ........................................................................................11

*Hinojos v. Kohl's Corp.*,
718 F.3d 1098 (9th Cir. 2013) ......................................................................................17

*In re ConAgra Foods, Inc.*,
302 F.R.D. 537 (C.D. Cal. 2014) ..................................................................................24

*In re Facebook Biometric Info. Privacy Litig.*,
326 F.R.D. 535 (N.D. Cal. 2018) ..................................................................................10

*In re Tobacco II Cases*,
46 Cal.4th 319 .................................................................................................................25

*In re Vioxx Class Cases*,
180 Cal. App. 4th 116 (2009) ........................................................................................19

*Just Film, Inc. v. Buono,*
    847 F.3d 1108 (9th Cir. 2017) ...................................................................................11, 12, 24

*Kasky v. Nike, Inc.,*
    27 Cal. 4th 939 (2002) ...........................................................................................................19

*Korea Supply Co. v. Lockheed Martin Corp.,*
    29 Cal. 4th 1134 (2003) .........................................................................................................20

*Kumar v. Salov N. Am. Corp.,*
    2016 WL 3844334 (N.D. Cal. 2016) ...............................................................................17, 18

*Kwikset Corp. v. Superior Court,*
    51 Cal. 4th 310 (2011) ...........................................................................................................19

*Lavie v. Procter & Gamble Co.,*
    105 Cal. App. 4th 496 (2003) ...........................................................................................16, 17

*Linear Technology Corp. v. Applied Materials, Inc.,*
    152 Cal. App. 4th 115 (2007) .................................................................................................14

*Meyer v. Sprint Spectrum L.P.,*
    45 Cal.4th 634 (2009) .............................................................................................................25

*Mullins v. Premier Nutrition Corp.,*
    2016 WL 1535057 (N.D. Cal. 2016) ......................................................................................18

*Nguyen v. Nissan N. Am., Inc.,*
    932 F.3d 811 (9th Cir. 2019) .......................................................................................21, 22, 23

*O'Connor v. Sup. Ct.,*
    177 Cal. App. 3d 1013 (1986) ................................................................................................15

*Paduano v. American Honda Motor Co., Inc.,*
    169 Cal. App. 4th 1453 (2009) ...............................................................................................14

*People ex rel. Mosk v. National Research Co. of California,*
    201 Cal. App. 2d 765 (1962) ..................................................................................................15

*Pettit v. Procter & Gamble Company,*
    2017 WL 3310692 (N.D. Cal. 2017) ......................................................................................12

*Pulaski & Middleman, LLC v. Google, Inc.,*
    802 F.3d 979 (9th Cir. 2015) ..................................................................................................16

*Rubenstein v. Neiman Marcus Grp. LLC,*
    687 F. App'x 564 (9th Cir. 2017) ...........................................................................................14

*Stathakos v. Columbia Sportswear Co.,*
    2017 WL 1957063 (N.D. Cal. 2017) ......................................................................................24

*Stearns v. Ticketmaster Corp.,*
    655 F.3d 1013 (9th Cir. 2011) ................................................................................................17

*Steroid Hormone Prod. Cases,*
    181 Cal. App. 4th 145 (2010) .................................................................................................16

*Stout v. Turney,*
    22 Cal. 3d 718 (1978) .............................................................................................................21

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011) ...........................................................................................................4, 13

*Williams v. Gerber Products Co.,*
    552 F.3d 934 (9th Cir. 2008) ......................................................................................................16

*Zhang v. Superior Court,*
    57 Cal. 4th 364 (2013) .................................................................................................................20

## Statutes

15 U.S.C. § 45(a)(1) .............................................................................................................................14

15 U.S.C. § 52(a) ..................................................................................................................................14

Cal. Bus. & Prof. Code § 17200 ...............................................................................................14, 15, 16

Cal. Bus. & Prof. Code § 17208 ..........................................................................................................4

Cal. Bus. & Prof. Code § 17500 ..........................................................................................................16

Cal. Bus. & Prof. Code § 17537 ..........................................................................................2, 8, 13, 14

Cal. Civ. Code § 1770 ..........................................................................................................................16

Cal. Civ. Code § 1780(a)(1), (3) ...........................................................................................................20

## Rules

Fed. R. Civ. P. 23 .......................................................................................................................... passim

## Regulations

16 C.F.R. § 233.3 ..................................................................................................................................14

16 C.F.R. § 233.3(a) .............................................................................................................................3

16 C.F.R. § 233.5 ..................................................................................................................................15

16 C.F.R. § 251.1(a)(2) .........................................................................................................................1

16 C.F.R. § 251.1(b)(1) .........................................................................................................................8

16 C.F.R. § 251.1(b)(2) .........................................................................................................................14

16 CFR § 251.1 (i) ................................................................................................................................15

16 CFR § 251.1(h) ..............................................................................................................................1, 15

## Other Authorities

WILLIAM STERN, THE RUTTER GROUP, BUS & PROF CODE §§17200 PRACTICE, 3:70 ........................15

## I.    INTRODUCTION

Whether Plaintiffs and the proposed Class can ultimately prevail on the merits in the case at bar depends on answering one common question: are Defendants' perpetual "buy some-quantity get some-quantity free" (aka "BOGO") price advertisement on Puritan's Pride branded Products deceptive, misleading, and/or unlawful under California law?  The incontrovertible evidence shows that the *overwhelming majority* of Defendants' sales of their own self-branded, self-manufactured, and self-advertised Puritan's Pride-branded vitamins, minerals, and health supplements ("Products") have been made via BOGO price, in direct contravention of specific guidance on this precise sales practice by the Federal Trade Commission ("FTC"), which answers the common class certification question with an unqualified "*yes*."

The FTC long ago understood the special lure that Free products with purchase bring for consumers. Hence it cautioned that advertisements offering Free products, contingent on the purchase of another product, *i.e.*, BOGO price advertisements, are ripe for abuse and thus may only be used "with extreme care."  16 C.F.R. § 251.1(a)(2) (Nov. 10, 1971) (emphasis added).

> The public understands that, except in the case of introductory offers . . . an offer of "Free" merchandise . . . is based upon a regular price for the merchandise . . . which must be purchased by consumers in order to avail themselves of that which is represented to be "Free." In other words, when the purchaser is told that an article is "Free" to [her] if another article is purchased, the word "Free" indicates that [she] is paying <u>nothing for that</u> article and <u>no more than the regular price for the other</u>.

*Id.* at (b)(1) (emphasis added).

The FTC also set strict limits on the duration and frequency of Free BOGO price advertisements "[s]o that a 'Free' offer will be special and meaningful[.]"  16 CFR § 251.1(h). Specifically, BOGO prices may only be used rarely.  Furthermore, the FTC warned that "**if no substantial sales were made . . . at the regular price, a Free . . . offer would <u>not</u> be proper.**"  *Id.* at (b)(2) (emphasis added).  Where, as here, a BOGO price is the regular price at which a seller sells its goods, the FTC assumes it is not a genuine BOGO.  In that case, nothing is being given away for Free but instead, the BOGO price includes the price of the "Free" product built in.  Accordingly, the perpetuity of a BOGO price speaks volumes about its deceptive nature.

/ / /

California law is no different. Indeed, California law has long regulated offers of "Free" products, or BOGO offers, as follows:

> It is unlawful to notify any person by any means that he or she will receive a gift and that as a condition of receiving the gift he or she must pay any money, **[if] [t]he majority of the gift offeror's sales or leases within the preceding year**, through the marketing channel in which the gift is offered . . . of the type of goods . . . which must be purchased . . . in order to obtain the gift item **was made in conjunction with the offer of a gift**.

Cal. Bus. & Prof. Code § 17537(c)(4).

Notwithstanding the simple, pragmatic, guidance from the FTC going back over fifty years combined with the mandates of California law prohibiting deceptive advertising, Defendants built a business model that blatantly disregards these clear directives. They sell millions of dollars' worth of Products every year in California, predominantly through the puritans.com website and mail order catalogs through BOGO prices. Indeed, Defendants use little else other than BOGO for seemingly their entire existence. As Defendants' Vice President of Marketing said: "**This business is built on bogos.**" *See* January 5, 2018 email, Ex. A to the Declaration of Stanley D. Saltzman In Support of Class Certification ("Saltzman Decl."). Indeed it is, as sales under BOGO promotions represent approximately **86-93%** of total sales.

Some examples of Defendants' BOGO advertisement in catalogs are as follows:



Examples of Defendants' BOGO offers on the puritans.com website is as follows:

---

In addition to being unlawful, Defendants' BOGO prices are deceptive, misleading, and unfair because consumers are not receiving any Product "Free" with the purchase of another Product. Instead, based on the frequency and duration of the BOGO prices, Defendants build the cost of the "Free" Products into the BOGO prices. This is all the more evident given that they offer BOGO promotions on substantially all of their branded Products, rendering Defendants' claimed "regular price" or "single unit price"[3] for any one of their branded Products wholly fictitious. In fact, Defendants seemingly conceal to consumers that they may buy single bottles of the Products outside of BOGO price by hiding this information in footers, on only certain pages in the catalogs and on a separate, innocuous page on their website: www.puritans.com/singles (which page itself in fact has a BOGO promotion at the top of the page it as of the date of this filing). Tellingly, no substantial sales are made at single unit price at any time during the Class period (or seemingly for Defendants' entire existence).

Moreover, throughout the pendency of this action, Defendants have not even attempted to demonstrate that they are actually giving away "Free" Products with their BOGO prices. At bottom, Defendants have presented no defense to liability because they have no defense to liability. The best that they can do, and really the only thing Defendants have done, is plea that their false advertising breaks the bank. *See* Motion for Reconsideration, ECF No. 180, at 13 (pleading that liability will

---

[3] The same principle applies even when something other than the term "regular" price is used, as here, when Defendants stopped using "Reg. Price" and began using "Single Unit Price" around the time this litigation was initiated. 16 C.F.R. § 233.3(a) (applying same principle to list prices).

result in "a penalty that, given the <u>tens of millions of dollars' worth</u> of products defendants sold in California, could be massive.") (emphasis added). Thus, even Defendants have skipped ahead to arguing damages models because they know there is no avoiding liability. The procedural posture of the case further illustrates that Defendants' only defense to the claims at bar has been that Plaintiffs' cannot proffer a valid damages model, as illustrated by their filing of a baseless motion to "stage discovery" early in the case in order to avoid discovery on the issue of liability, *see* ECF 99, and a motion for summary judgment on the damages issue alone. *See* ECF 107. As discussed hereafter, the Court's ruling on the motion has now provided clear guidance to the Parties as to the damages issues, which the Plaintiffs are following in this motion.

Defendants' BOGO marketing scheme runs afoul of California's Consumers Legal Remedies Act ("CLRA"), and Unfair Competition Law ("UCL"). Certification is appropriate because whether Defendants' perpetual BOGO prices are false, deceptive, and unlawful is a common question that will be determined by reference to an objective, "reasonable consumer" standard and established by common proof for the numerous class of consumers. This common question is "capable of class-wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Finally, because Defendants continue to engage in this misconduct, Plaintiffs can prove entitlement to both monetary relief under the CLRA and injunctive relief under the UCL, on a common basis.

Accordingly, the Court should grant the Motion and certify the putative Class.

## II.     STATEMENT OF FACTS

The Class period in this case is defined as October 14, 2012 through the present. *See* First Amended Complaint ("FAC"), ECF 88, ¶83 (defining the Class to include purchases made within the statutory limitations period, which for the CRLA is three years and for UCL is four years. (Cal. Bus. & Prof. Code § 17208)). Plaintiffs sought detailed sales and marketing information from Defendants for the entire class period in discovery, which Defendants refused to produce. After Plaintiffs sought a Court order compelling them to produce these records, ECF 114, the Court issued an order on March 19, 2019, requiring Defendants to produce sales data for one year only (ultimately

stipulated as 2016). However, the Court stated that the **2016 data alone** would be used to determine if the class should be certified. If certified, then the Court stated that it would order Defendants to produce data for the rest of the class period. *See* Transcript of the March 19, 2019, Hearing, Saltzman Decl. Ex. B, at 10:8-17; 12:2-24.

Therefore, although the common evidence below clearly proves that Defendants' BOGO price advertisements were uniform throughout the Class period, Plaintiffs will focus on the year 2016 when appropriate to provide the most detailed showing of how common evidence can be used to prove Defendants' false, deceptive, and unlawful conduct.

### A. Defendants' Uniform and Pervasive False, Deceptive, and Unlawful BOGO Promotions Can Be Shown Through Common Evidence.

Defendants have offered Products for sale under BOGO prices throughout the entire Class Period. *See* Puritan's Pride, Inc.'s Interrogatory Responses, Saltzman Decl., Ex. C, at 9:8-11; *see also* Transcript of Deposition of Amy Hanson ("Hanson Depo."), Defendants' Fed. R. Civ. P. 30(b)(6) designee, Saltzman Decl. Ex. D, at 16:1-8,19-21; 17:22-18:15, 30:7-10; 52:23-53:11). Throughout this time, Defendants have directly marketed and sold their branded Products to consumers via catalog, email, mail, and through their website www.puritan.com. Defendants do not sell the Products through brick and mortar retailers.[4]

Defendants' catalogs "identify the [BOGO price] promotions for Puritan's Pride branded products that Defendants offered in California during that period and the duration of time during which the promotions were available." Saltzman Decl. Ex. C (Interrogatory Responses), at 16:18-22; *see also* Defendants' Winter 2016 catalog, *id.* at Ex. E. These BOGO promotions ran consecutively, without breaks. *Id.*, Ex. D (Hanson Depo.), 21:12-14 ███████████████ ██████████████████████████████████████████████; *see also* Promotions schedule, *id.* at Ex. F. The catalogs demonstrate the uniformity of Defendants' BOGO promotions throughout the Class period, as they identify almost every individual Product that was for sale was under a BOGO price, the specific pricing details of each BOGO price each Product was sold at, and the

---

[4] ████████████████████████████████████████████████████████████████████████████████████████████. Saltzman Decl., Ex. D (Hanson Depo.) at 119:9-120:14.

length of time of each BOGO price advertisement lasted – even if consumers were viewing the BOGO offers online. *Id*., Ex. D (Hanson Depo.), at 101:24-102:8; Ex. C (Interrogatory Responses), at 24:7-9 ("During the relevant period … Defendant has scheduled its [BOGO price] promotions to last a duration that accommodates the publishing of catalogs."), Ex. E (Winter 2016 catalog).

Apart from the catalogs, Defendants maintain and have produced in discovery extremely detailed records about BOGO price advertisements, as well as sales data, pricing, and profits, which exposes all aspects of Defendants' BOGO sales practice. For example, Defendant produced 140 Excel Workbooks, the vast majority of which contain multiple spreadsheets and include hundreds of data fields. *See*, *e.g.*, Saltzman Decl., Ex. G ██████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████. In at least 2012, 2013, 2016, 2018 and 2019, ██████████████████████ ███████████████████████████████████████████████. Saltzman Decl. Ex. D (Hanson Depo.), at 94:22-102. The catalogs and other records provide everything additional necessary for an analysis of Defendants' BOGO pricing scheme.

Defendant's own branded, and self-published, advertisements on their catalogs and website demonstrate that Defendants focus almost exclusively on selling their Products through BOGO prices. Notably, Defendants did not notify consumers that they could purchase single bottles of the Products until March 2013, when they added an inconspicuous page to the website for single bottle purchases, and later in April 2013, when they began printing a generic footer on the bottom of certain pages of the catalogs. *See* Declaration of Amy Hanson, Saltzman Decl. Ex. H; *see also id*. Ex. E (Winter 2016 catalog), at 4. This hallow proffer of single item promotions, without the ability to demonstrate the "substantial sales" factor is fatal to Defendants' sole defense. These innocuous footers are the extent of Defendants' promotion of single bottles of the Products, which represents an extremely small proportion of the promoted Products. In fact, at her deposition, Defendants' designated representative could only identify <u>nine</u> items in the entire 117 page Winter 2016 catalog that were <u>not</u> offered under a BOGO promotion, and of those limited few, none were Puritan's Pride-branded items, nor even vitamins, minerals, or health supplements at all, and therefore not Products

subject to the case at bar. *See* FACC, ECF No. 88, at para. 1 (opening paragraph of operative complaint clearly defines Products as "Puritan's Pride branded vitamin, mineral and health supplement products only); *cf.* Saltzman Decl., Ex. D (Hanson Depo.) at 110:24-113:13 [referring to Ex. E (Winter 2016 catalog)].

Here, Plaintiffs can easily show that Defendants have engaged in a long-term advertising campaign, which has remained unchanged over the Class Period and consistent, both online and in print. Thus, all putative class members are similarly situated, having been uniformly exposed to the same BOGO price at the time of making their purchase of Defendants' Products. This fact is further illustrated by the nature and design of the BOGO price promotions themselves, which illustrations remove any question of whether Class members were exposed to and relied upon the same false claim of Free prices in Defendants' BOGO advertisements. It is undeniable that a BOGO price includes the myth of the BOGO in the price. Class members could not avoid being exposed to the false BOGO because the price they paid was set at Free Product(s) with Purchase of Product(s) on its face. A review of the advertised BOGO prices under each Product pictures embedded above and Defendants' Winter 2016 catalog, the price of each Product itself was displayed in the context of the BOGO promotion. (Saltzman Decl. Ex. E).

Moreover, based on the testimony of Defendants, and the fact that Defendants manufacture, advertise and distribute the Products all themselves, Plaintiffs can easily identify the Class members thorough Defendants' records, identify the money each one spent on each transaction, identify whether each transaction was made pursuant to a BOGO price, and if so, which specific BOGO price was paid when the purchase occurred. This is further confirmed given that Defendants stated that they "record, compile, and maintain the details of every Product purchase transaction, including customer's name, contact information, the exact item(s) purchased, Item Number, quantity, price, and address for shipping the Product(s)." Defs. Answer, ECF 113, ¶64; *see also*, Plaintiff Larson's sales record, Saltzman Decl., Ex. I.

Finally, Defendants' uniform BOGO pricing scheme is ongoing, as "Defendants admit that Puritan's Pride continues to offer Puritan's Pride branded products for sale under BOGO [price] promotions through its website, by mail order catalog, flyers, and targeted emails." Defs. Answer,

ECF 113, ¶66.

**B. Defendants' Sales Data Confirms That No Substantial Sales are Made at Single Item Price but that Substantial Sales of the Nearly All of Defendants' Products are Made at BOGO Price.**

As discussed above, both the FTC and California law prohibit sales prices offering "free" or "gift" products contingent on the purchase of other products where, as here, a "substantial" (FTC) or "majority" (California) of the sales of the product are not made outside of the "free" product promotion. 16 C.F.R. § 251.1(b)(1); Bus. & Prof. Code § 17537(c)(4). Quite simply – no company can afford to give away products for Free a substantial majority of the time, which is precisely what Defendants herein have claimed to do with their perpetual BOGO price. Moreover, Defendants' sales data confirms that their BOGO prices are a sham, there is no Free Product in the BOGO, the Free price is false, rendering the BOGO price advertisement deceptive, unlawful, and unfair. No company should have to compete with these wildly inaccurate prices.

Defendants maintain extremely comprehensive sales data, which tracks individual and aggregate sales and promotional offers in meticulous detail, along with comprehensive data on the price of its competitors' products. For example, Defendants have produced spreadsheets that include sales data for over one million transactions in California in 2016 alone. The spreadsheets also include detailed information regarding pricing of the Puritan's Pride products, including comparisons to competitors, and information pertaining to the company's product costs and gross margin. *See* Expert Declaration of Brian J. Bergmark ("Bergmark Decl."), Saltzman Decl. Ex. J, ¶¶14-16, Exs. D-F. All of which counsels that Defendants know, or should know, (1) that their BOGO prices are false and (2) that their claims of a "Free" price on their seemingly generic Products provides them with a powerful, and unique, unfair advantage over their competitors.

Two spreadsheets are especially important here. One identifies each transaction involving a purchase of the Products in California in 2016, and includes information such as product description, date of sale, price (*i.e.* 3 for 1), units purchased ("buy"), units received ("receive"), amount of sale ("merch_sale"), quantity sold ("qty"). *Id.* at ¶14. The other spreadsheet includes the same information, but is limited to sales of the 33 specific Products of the type that Plaintiffs purchased for the time period from October 2012 through April 2019 in California, which represents over

8

Plaintiffs' Memo. ISO Motion For Class Certification; Case No. 16-Cv-6717-JD / 17-CV-2536-JD

600,000 transactions. *Id*. at ¶15. Using that data, one of Plaintiffs' experts, Brian J. Bergmark, was able to identify the percentage of sales transactions, unit sales and dollar sales that were sold under various BOGO offers, as compared to those that were sold as single units. *Id*. at ¶18.

**The data reveals that the vast majority of Defendants' sales of the Products are made pursuant to BOGO prices – not at single item price.** *Id*. at ¶20. This does not change whether this analysis is by the number of bottles of the Products sold or dollar amount of sales. Specifically, in California in 2016, **<u>91.6%</u>** of the total number of bottles sold were sold at a BOGO price, and **<u>93.1%</u>** of the total dollar amount of sales of the Products were under a BOGO price. *Id*. at Ex. G. Even when limiting the analysis to sales of the 33 specific Products purchased by the Plaintiffs during the Class period (until April 2019), **<u>84.9%</u>** of the total number of bottles sold were sold at BOGO price, and **<u>86.7%</u>** of the total dollar amount of sales of the Products were under a BOGO price. *Id*. at Ex. I.[5]

Additionally, Defendants' sales data demonstrates that Defendants' BOGO prices are false and deceptive for an additional reason: Defendants were actually inflating the price of the Products when they included them in a BOGO price. Thus, the price of the Free Product *is built into the BOGO price*. As Mr. Bergmark explains:

> 99.1 percent of the BOGO offers were at a price higher than the lowest "one for one" sales price and 71.0 percent of the BOGO offers were sold at a price higher than the highest "one for one" sales for any product. In other words, despite offering deals reflective of a "2 for 1" or "3 for 1" price, the majority of the BOGO offers were actually transacted at a price higher than the Defendants sold their products on a "one for one" basis.

*Id*. at ¶21

Accordingly, Defendants' detailed records are sufficient to answer whether Defendants' BOGO promotions violate the CLRA and UCL on a class-wide basis.

**C.    Plaintiffs Were Victims of Defendants' Deceptive and Unlawful Practices.**

Defendants admit that each Plaintiff purchased Products under a BOGO price during the Class period. *See* Defs. Answer, ECF 113, ¶36 (Ludolph-Aliaga); ¶37 (Mueller); ¶39 (Larson); ¶40

---

[5] Note that the percentages in the calculations in this paragraph are artificially low because Defendants sell items such as food, pet care, and beauty products which they never offer under a BOGO promotion, and some of those items were included in Plaintiffs' purchases. However, these items do not affect certification because items that were not purchased under a BOGO promotion do not fall within the definition of "Products."

(Cabrera).

Plaintiffs confirmed that they purchased the Products based upon Defendants' BOGO price promotion, and each believed that they were getting a good deal because they were getting Products free with their purchase. *See* ¶6 to the Declarations of Plaintiffs Larson, Cabrera, Ludolph-Aliaga, and Mueller ("Plaintiffs' Decls."); *see also* deposition transcript of Plaintiff Larson ("Larson Depo."), Saltzman Decl. Ex. K, at 40:4-6, 69:8-22, 81:13-23; 121:1-7, 123:12-21, and 115:2-116:13 [confirming allegations in FAC]; deposition transcript of Plaintiff Ludolph-Aliaga ("Ludolph-Aliaga Depo."), Saltzman Decl. Ex. L at 64:10-66:6 [confirming allegations in FAC]; and deposition transcript of Plaintiff Mueller ("Mueller Depo."), Saltzman Decl. Ex. M, at 30:5-31:5, 33:1-4; 56:10-20; 68:1-6 and 29:14-21:11 [confirming allegations in the FAC].

Each Plaintiff believes that they were harmed as a result of Defendants' practices. *See* ¶6 to Plaintiffs' Decls.; *see also* Saltzman Decl. Ex. K (Larson Depo.) at 33:10-14; Ex. L (Ludolph-Aliaga Depo.) at 48:15-49:4; Ex. M (Mueller Depo.) at 73:16-24.

## III. THE REQUIREMENTS OF RULE 23(A) ARE SATISFIED

### A. There Is No Dispute that the Class Is Sufficiently Numerous.

Rule 23(a)'s numerosity requirement is satisfied when "the class is so numerous that joinder of all members is impracticable." Here, Defendants' records indicate that there were millions of transactions in California in 2016 alone, the vast majority of which were made pursuant to a BOGO offer. *See* Saltzman Decl. Ex. J (Bergmark Decl.), ¶¶14-15. Defendants maintain detailed records for each purchase and purchaser, as discussed above.

### B. There are Common Questions of Fact and Law.

Because the claims of all Class members involve the same alleged BOGO price misrepresentations and are susceptible to common proof under an objective standard, Rule 23(a)(2)'s commonality requirement is satisfied. However, as this Court often analyzes the commonality requirement and predominance requirement under Rule 23(b)(3) together, Plaintiffs will address both requirements below. *E.g.*, *In re Facebook Biometric Info. Privacy Litig.*, 326 F.R.D. 535, 544 (N.D. Cal. 2018); *Brickman v. Fitbit, Inc.*, 2017 WL 5569827, at *5 (N.D. Cal. Nov. 20, 2017).

### C. Plaintiffs' Claims are Typical of the Class.

Rule 23(a)(3) requires typicality, which "focuses on the class representative's claim—but not

the specific facts from which the claim arose—and ensures that the interest of the class representative aligns with the interests of the class." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017) (citation and internal quotation marks omitted). "The requirement is permissive, such that representative claims are typical if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Id.*

Here, Plaintiffs meet the typicality requirement because all Class members are alleged to have suffered the same injury as a result of the same conduct by Defendants – their BOGO price paid was false – it did not truly include any Free or zero priced Product. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Plaintiffs' uniform injuries – harm resulting from Defendants' uniform misrepresentations and omissions – are typical of the Class. Finally, there are no unique defenses or individual issues that would threaten to become the focus of the litigation, because the BOGO promotions were uniform. *Id.*; *see also Just Film*, 847 F.3d at 1116 ("Typicality focuses on the class representative's claim – but not the specific facts from which the claim arose.").

Defendants have sold hundreds of separate Products a BOGO price during the Class period and Plaintiffs obviously have only purchased a subset of those Products, so Defendants may argue that Plaintiffs' claims are atypical of all purchasers of BOGO priced Products. That is wrong, because the Court's inquiry, under California law, focuses on Defendants' uniform conduct. Plaintiffs' claims are typical of those of all purchasers of the Products at BOGO price because the essence of BOGO price – the Free Product with purchase – did not exist for any Class Member. Thus, they all suffered the same injury and have a common claim, which predominates and is wholly typical, if not identical, to the rest of the Class. Defendants' uniform conduct, to sell almost all of their branded Products at a BOGO price is the crux of the claim of false advertising: the misrepresentation that customers would receive something "Free" with a purchase when Defendants did not comply with the conduct that would render a Product "Free" (actually selling one at single item price). Therefore, because the injury was caused by Defendants' false BOGO price in every instance, with every consumer in the Class, and since those prices were advertised on nearly all of the Products and are not simply unique to any particular Product, Plaintiffs' claims are more tham "reasonably coextensive with those of absent class members." *See Pettit v. Procter & Gamble*

*Company*, 2017 WL 3310692, at *5 (N.D. Cal., Aug. 3, 2017) (discussing typicality in the context of purchases of different products) (citing *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017)).

Accordingly, the Court should certify the Class.

### D. Plaintiffs and Proposed Class Counsel Are Adequate Representatives.

The final requirement under Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." In the Ninth Circuit, courts use a two-prong test to determine if the adequacy requirement is met: 1) whether plaintiffs and their counsel "have any conflicts of interest with other class members," and 2) whether plaintiffs and their counsel will "prosecute the action vigorously on behalf of the class." *Hanlon v. Chrysler Corporation*, 150 F.3d 1011, 1020 (9th Cir. 1998). Both of these requirements are satisfied here.

Plaintiffs' interests are co-extensive with the interests of absent Class Members. Each Plaintiff is familiar with the claims in this matter, and each has actively participated in this litigation by producing documents, responding in writing to discovery requests, and testifying at deposition. *See* Plfs. Decls., ¶¶2-5.

Proposed Class Counsel Marlin & Saltzman, Hansult Law, and Vision Legal, Inc. are unquestionably qualified to represent the Class under Rule 23(g)(1). All of these firms have been retained by Plaintiffs, and are willing and able to represent the interests of the Class. They are the attorneys who have appeared at all of the depositions, have retained the expert witnesses, and have traveled to New York when necessary. They are experienced class action attorneys with expertise in class action litigation, including consumer claims like those in this litigation. They have the resources necessary to efficiently prosecute this case on behalf of the proposed class. *See* Declarations of Stanley D. Saltzman, William Hansult, and Tina Mehr filed concurrently.

## IV. THE REQUIREMENTS OF RULE 23(B)(3) ARE SATISFIED

Under Rule 23(b)(3), Plaintiffs must show that "the questions of law or fact common to class members predominate over any questions affecting only individual class members." The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

## A. Common Questions Are Well-Established and Predominate.

"Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury" and that the class claims depend on "a common contention ... of such a nature that it is capable of class-wide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (citations and internal quotation marks omitted). For purposes of Rule 23(a)(2), even a single common question will do. *Id*. at 359.

As discussed above, the claims of the proposed Class are primarily driven by one common ultimate question: were Defendants' uniform BOGO price – price advertisements that represented a purchaser would receive one of more of the same Product for "Free" with the purchase of a Product, and which all consumers necessarily saw before purchasing the Products under that price – are false, deceptive, and unlawful under the CLRA and UCL, as reflected by the fact that the particular BOGO Free Price does not abide by the manner in which the FTC instructed it should be done. Thus, the common question – was the price of BOGO false, or did it truly include Free Products – is a common question, whose resolution will also resolve the related common questions regarding whether Class Members are entitled to monetary and/or injunctive relief under the same CLRA and UCL standards.

Under these circumstances, the claims of all Class members involve uniform misconduct by Defendants and are susceptible to common proof under an objective standard. Thus, Rule 23(a)(2) is satisfied. Accordingly, the Court should certify the Class.

### 1. Whether Defendants' BOGO Promotions Are Unlawful Will Predominate.

As set forth above, California law prohibits sellers from offering Free products contingent upon the purchase of other products – *i.e.*, using a BOGO price – if there actually is no Free product in the BOGO price. *See* Cal. Bus. & Prof. Code § 17537(c)(4). There is no Free product in a BOGO price if a "majority" of the sales in a given year are not made outside of the Free product with purchase (aka BOGO) price. Again, if an item is not mainly sold outside of a BOGO price then the BOGO price is false. It is not really a BOGO price because no seller can afford to mainly give away its goods for Free. In order for it to be a true and permissible BOGO, the Seller must stop the BOGO and sell the Free item at a non-BOGO price – most of the time. Rarity is what makes the BOGO price special and meaningful. Sellers simply cannot lie and tell consumers that they are

getting a Free Product if they are secretly making consumers pay for what they claim is being given away for Free. Therefore, whether Defendants violated California law with their BOGO pricing scheme depends on whether Defendants made a "majority" of their sales of outside of a BOGO price. The answer can be proven by common evidence in the form of Defendants' voluminous sales data, *see* §III.B, *supra*, and does not depend on any individual issues. Thus, the class action mechanism is the best means to adjudicate the claims at bar given the common questions of fact.

> A UCL cause of action may be based on representations to the public which are untrue, and also those which may be accurate on some level, but will nonetheless tend to mislead or deceive. A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under the UCL. Whether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires "consideration and weighing of evidence from both sides."

*See Paduano v. American Honda Motor Co., Inc.*, 169 Cal. App. 4th 1453, 1469 (2009) (citing *Linear Technology Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 134-35 (2007).

California law also makes actionable violations of other laws, rules and regulations. *See Cel–Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) ("By proscribing 'any unlawful' business practice, section 17200 'borrows' violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable"). In addition to violations under the Business and Professions Code, § 17537, Plaintiffs' "unlawful" UCL claim also includes a claim under Section 5 of the Federal Trade Commission Act ("FTC Act"), *see* FAC, ECF 88 ¶¶6, 128, which prohibits "unfair or deceptive acts or practices in or affecting commerce," 15 U.S.C. § 45(a)(1), and specifically prohibits false advertisements. 15 U.S.C. § 52(a). The FTC Act has long served as the genesis of a UCL unlawful claim, under California law and public policy. *See, e.g.*, *Rubenstein v. Neiman Marcus Grp. LLC*, 687 F. App'x 564, 567 (9th Cir. 2017).

The FTC Guides cited above represent the FTC's interpretation of the types of practices that the FTC regards as unfair or deceptive, which, similar to Bus. & Prof. Code § 17537, prohibit BOGO pricing schemes "if no substantial sales were made, in fact, at the regular price, [because then] a Free or similar offer would not be proper." 16 C.F.R. § 251.1(b)(2); *see also* 16 C.F.R. § 233.3 (same

prohibition with respect to sales at the "list" price).  Further, FTC Guides are an important source of "borrowed" violations giving rise to a UCL claim.  *See generally People ex rel. Mosk v. National Research Co. of California*, 201 Cal. App. 2d 765 (1962); *O'Connor v. Sup. Ct*., 177 Cal. App. 3d 1013 (1986); *Cal-Tech Comm. Inc. v. LA Cellular*, 20 Cal. 4th 163 (1999); and WILLIAM STERN, THE RUTTER GROUP, BUS & PROF CODE §§17200 PRACTICE, 3:70.  Thus, whether Defendants' BOGO pricing violated California law depends on whether Defendants made "substantial" sales of the Products outside of a BOGO price, which can be proven through Defendants' common sales data and other above cited common proof, such as their catalogs and website.

Moreover, that is not the only way Defendants' BOGO pricing violates the FTC Act under Plaintiffs' allegations.  *See* FAC ¶¶7-9, 12, 77, 81.  The FTC Guide also places limits on the duration and frequency of "free" offers "[s]o that a 'Free' offer will be special and meaningful[.]" 16 CFR § 251.1(h); *see also* 16 C.F.R. § 233.5 (advertisers "should not . . . make a 'limited' offer which, in fact, is not limited.").  Additionally, the FTC Act also stated that, "Offers of  'Free' merchandise or services which may be deceptive for failure to meet the provisions of this section may not be corrected by the substitution of such similar words and terms as 'gift,' 'given without charge,' 'bonus,' or other words or terms which tend to convey the impression to the consuming public that an article of merchandise or service is 'Free.' 16 CFR § 251.1 (i).

Whether Defendants violated the FTC Act for these additional reasons, including the duration and quantity of BOGO prices used, and consequently separately violated the UCL, can also be proven just from Defendants' own records, including its uniform catalogs, website and voluminous pricing and sales data. *See* Defs. Answer, ECF 113, ¶75  ("Defendants admit that Puritan's Pride has advertised BOGO promotions as available only for a limited time or during special times of the year, and that Puritan's Pride has listed expiration dates for BOGO promotions alongside statements such as 'limited time,' 'last chance,' or 'hurry.' Defendants further admit that Puritan's Pride has extended BOGO promotions or offered subsequent BOGO promotions after a BOGO promotion has ended.").  Accordingly, Defendants have admitted to common issues which may be answered by common proof.

Finally, Plaintiffs' UCL unlawful claim also incorporates their CLRA claim, so a violation

of this law constitutes a violation of the UCL. *See* FAC, ECF 88, ¶128.

Accordingly, for all of these reasons and as further discussed herein, the Court should certify the Class.

        **2.**       **Whether Defendants' BOGO Prices Are False, Deceptive or Unfair Will Predominate.**

Here, Plaintiffs' claims under Cal. Bus. and Prof. Code § 17200, Cal. Bus. and Prof. Code § 17500, and Cal. Civ. Code § 1770 are governed by the "reasonable consumer" test. *Williams v. Gerber Products Co.*, 552 F.3d 934 (9th Cir. 2008). The California Supreme Court has recognized "that these laws prohibit 'not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'" *Id.* at 938. Thus, the common question that predominates the analysis of all of these claims is whether a reasonable consumer would be deceived by Defendants' common and uniform BOGO pricing scheme.

Importantly, in answering this common question, Plaintiffs do not have the burden to show the actual understanding of all consumers, or of any particular percentage of consumers, or that there was a uniform, class-wide understanding. Rather, to prevail at trial, Plaintiffs must simply establish "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003)).[6]

To be sure, claims under the UCL do not required individualized proof of reliance, deception, or causation. *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 986 (9th Cir. 2015), *cert. denied* (June 6, 2016). Instead, each class member needs to have an actual injury caused by the unlawful practice. *Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 155-56 (2010). However "[c]ausation, on a classwide basis, may be established by *materiality*. Thus, if the Court finds that material misrepresentations have been made to the entire class, an inference of reliance arises as to

---

[6] Additionally, UCL and CLRA claims that rely on a theory of fraudulent omission, as Plaintiffs have alleged here (*e.g.*, FAC, ECF 88, ¶¶12, 87) are also susceptible to class-wide proof because reliance can be inferred under California law when an omission is material (like price of Free), and whether an omission is material is determined using a "reasonable consumer" standard. *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015).

the class." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013 (9th Cir. 2011) *cert. denied* (2012), *abrogated on other grounds*.

Here, Plaintiffs can show through objective, common evidence that the BOGO prices were deceptive (because nothing was Free); were material (because price is *the* definition of material); were uniformly distributed to the class (static and consistent online and in print); that the Class viewed the deception (because they had to view the BOGO price to make a purchase) and that such conduct by Defendants was likely to deceive the Class. Indeed, the Ninth Circuit long ago admonished defense counsel that "price advertisements matter." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013).

*First*, the fact that the California legislature has prohibited false Free price advertising as being deceptive and likely to mislead, if Defendants' BOGO prices were false then they were likely to deceive under California law, and "courts must defer to that determination." *Id.* at 1107.

*Second*, the relevant FTC Guidelines bolster the conclusion that Defendants' BOGO prices are likely to deceive. *See Lavie*, 105 Cal. App. 4th at 496 (FTC Guides are "more than ordinarily persuasive … in its construction of the breadth of the protection afforded consumers under the UCL"). Moreover, contravening the FTC's guidance further shows that Defendants' conduct contravenes reasonable consumers' expectations, and demonstrates the materiality of the misrepresentations.

*Third*, although "California courts have held that proof of deception does not require expert testimony or consumer surveys," *Kumar v. Salov N. Am. Corp.*, No. 14-CV-2411-YGR, 2016 WL 3844334, at *8 (N.D. Cal. July 15, 2016), Plaintiffs' expert witness, Professor Larry D. Compeau, Ph. D., is prepared to testify regarding the well-documented effect of "reference price advertising," including BOGO prices, on consumer retail behavior. *See* Report of Larry D. Compeau, Saltzman Decl. Ex. N. Dr. Compeau is a Professor Emeritus of Marketing and Consumer Psychology at Clarkson University, and has studied the effects of pricing representations on consumer purchasing for nearly 30 years. *Id.* at ¶10. In the context of BOGO prices, "external reference prices," which are defined in his Report as a price for an item "provided by a seller that is typically higher than the selling price," are the "regular" or "single unit price" included in Defendants' BOGO offers. *Id.* at ¶¶ 4-5.

Based on his experience and research, Dr. Compeau will testify that reference prices have been shown in numerous studies to increase consumers perceived value of the items in question, increase the price they are willing to pay for those items, and reduce their intentions to search for a lower price. *Id.* at ¶¶28-29. Dr. Compeau opines that external reference prices can be useful to consumers when they reflect a bona fide former price, but that when they are not anchored to a true price at which the item was offered for sale, reference prices artificially inflate consumers' perceptions of value and increase their willingness to buy, and thus "consumers base their purchase decision on a false sense of value and thus, the offer is no longer informative, but deceptive." *Id.*

With respect to a BOGO price, Dr. Compeau also opines, "Consumers interpret the reference price as a price that the item would normally sell for but for the current BOGO offer – in other words, the price a consumer would have to pay for this item if the item price had not been discounted through the offer of 'free' merchandise with the purchase to suggest a deal," *Id.* at ¶32, and that "consumers are more likely to buy products marked with a discount from a reference price including BOGO offers." *Id.* at ¶43. Finally, Dr. Compeau will testify that when consumers feel time pressure on sales, exaggerated reference prices are more effective in favorably influencing consumers' perceptions of retail offers. *Id.* at ¶37.

*Fourth*, Plaintiffs can also establish materiality through ███████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████. *See* Saltzman Decl., Ex. O at PPSHARP0000165. ███████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████, Saltzman Decl., Ex. P, at PPSHARP0000050. *See Mullins v. Premier Nutrition Corp.*, 2016 WL 1535057, at *3 (N.D. Cal. Apr. 15, 2016) ("Marketing research suggests the overwhelming majority of Joint Juice users purchased the product to obtain these benefits, and thus there is a reason to believe the represented health benefits were material."); *Kumar*, 2016 WL 3844334, at *8 ("Materiality can be shown by a third party's, or defendant's own, market research showing the importance of such representations to purchasers.").

18

Plaintiffs' Memo. ISO Motion For Class Certification; Case No. 16-Cv-6717-JD / 17-CV-2536-JD

*Fifth*, Plaintiffs can establish materiality through Defendants' sales and marketing information. Specifically, Defendants themselves have concluded that their BOGO prices were material, since "this business is built on bogos." Defendants derive 86-93% of their sales of the Products through BOGO price, so materiality under these circumstances is self-evident. Thus, whether or not a jury determines that Defendants' BOGO prices are misleading, the objective question will be answered as to all members of the Class based on common evidence.

*Finally*, while Defendants may argue that consumers have a variety of reasons to purchase Products being sold at BOGO prices, that will not affect certification of the common question regarding the BOGO's unlawfulness. *See In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 129 (2009) ("That the defendant can establish a lack of causation as to a handful of class members does not necessarily render the issue of causation an individual, rather than a common, one.")); *Brown v. Hain Celestial Grp., Inc.*, No. C 11-03082 LB, 2014 WL 6483216, at *17 (N.D. Cal. Nov. 18, 2014) (rejecting premise that "there can be only one material trait that causes a person to buy a given product" and explaining that consumers "buy products all the time for more than one reason"); *Allen v. Hyland's Inc.*, 300 F.R.D. 643, 668 (C.D. Cal. 2014) (dismissing evidence that consumers had different primary motivators for purchasing product and finding predominance). Again, materiality is a common question' for purposes of Rule 23(b)(3). *Hadley v. Kellogg Sales Co.*, 324 F.Supp.3d 1084, 1116–17 (N.D. Cal. 2018).

Accordingly, the Court should certify the Class.

### 3.    Monetary Relief Can Be Calculated on a Class-Wide Basis.

The expansive scope of the California consumer statutes is well established. The California Legislature used "sweeping language" for the purpose of allowing the courts "to deal with the innumerable 'new schemes which the fertility of man's invention would contrive.'" *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co*., 20 Cal. 4th 163, 181 (1999) (citation omitted); *see also Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 320 (2011). These statutes are a type of market regulation and are "intended to preserve fair competition and protect consumers from market distortions." *Kwikset*, 51 Cal. 4th at 331 (citing *Kasky v. Nike, Inc*., 27 Cal. 4th 939, 949 (2002)). Deceptive sales practices harm not only consumers who have been duped into making purchases, but

19

Plaintiffs' Memo. ISO Motion For Class Certification; Case No. 16-cv-6717-JD / 17-cv-2536-JD

also competing businesses that do not engage in misrepresentations or "dispense with accuracy in favor of deceit." *Id.* Thus, the public policy of California has been codified through these laws.

Actions under the UCL and FAL are actions in equity. *Barquis v. Merchants Collection Ass'n*, 7 Cal. 3d 94, 112 (1972). Damages such as those in contract or tort cases are not available, and the remedies "are generally limited to injunctive relief and restitution." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003) (citation omitted); *see also Zhang v. Superior Court*, 57 Cal. 4th 364, 371 (2013). The CLRA provides for restitution as a remedy, and also for legal damages in the form of "actual damages." CAL. CIV. CODE § 1780(a)(1), (3).

The Court, in its Order Re Partial Summary Judgment dated June 12, 2020, found that restitution is not an available remedy in this case for the UCL, FAL and the CLRA claims. However, the Court, following a long line of precedent and strong California public policy, did find that actual damages under the CLRA and injunctive relief under the UCL are available remedies in this case on a class-wide basis. In addition, the Court found that the "expected discount" method of calculating damages is a proper method under the circumstances of this case, and rejected both the disgorgement method and Defendants' proposed "price/value differential" method.

Moreover, as the Court noted in its June 12th, 2020 Order regarding calculating actual damages under the CLRA, "the expected discount approach is within bounds because it is, as defendants concede, a 'benefit-of-the-bargain' measure." ECF No. 136 at 9. This measure aligns well with Plaintiffs' theories and allegations that they were deceived into buying under the BOGO prices by the expectation of getting Free Product(s), which would represent a 100% discount, that was available for a limited time only. *See* ¶6 to the Declarations of Plaintiffs Larson, Cabrera, Ludolph-Aliaga, and Mueller ("Plaintiffs' Decls."); *see also* deposition transcript of Plaintiff Larson ("Larson Depo."), Saltzman Decl. Ex. K, at 40:4-6, 69:8-22, 81:13-23; 121:1-7, 123:12-21, and 115:2-116:13 [confirming allegations in FAC]; deposition transcript of Plaintiff Ludolph-Aliaga ("Ludolph-Aliaga Depo."), Saltzman Decl. Ex. L at 64:10-66:6 [confirming allegations in FAC]; and deposition transcript of Plaintiff Mueller ("Mueller Depo."), Saltzman Decl. Ex. M, at 30:5-31:5, 33:1-4; 56:10-20; 68:1-6 and 29:14-21:11 [confirming allegations in the FAC]. The benefit-of-the-bargain measure "is concerned with satisfying the expectancy interest of the defrauded plaintiff."

*Stout*, 22 Cal. 3d at 725. It aims to put the plaintiff in the position she would have been in if the false representation had been true. *Id.* "[I]t awards the difference in value between what the plaintiff actually received and what [she] was fraudulently led to believe [she] would receive." *Id.* That measure fits this BOGO pricing scheme perfectly, and the Ninth Circuit has recognized in other circumstances that the "benefit-of-the-bargain measure of damages is both cognizable under the CLRA and a reasonable basis of computation." *Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811, 818 (9th Cir. 2019).

Accordingly, the Court should certify the Class.

### a. The "Price/Value" Calculation Argued By Defendants Is Unavailing.

Defendants have based their entire defense in this case on the misrepresentation that the "price/value" differential (as they define it) is the only acceptable method of proving monetary relief in this case. Indeed, this was the basis of their motion for partial summary judgment. *See* ECF 136. But, as the Ninth Circuit confirmed in *Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811 (9th Cir. 2019), Defendants are wrong.

Analyzing damages under the CLRA, the Court found that the plaintiffs' "proposed benefit-of-the-bargain measure of damages is both cognizable under the CLRA and a reasonable basis of computation." *Id.* at 818. That measure, like the Expected Discount model Plaintiffs propose, "is concerned with satisfying the expectancy interest of the defrauded plaintiff by putting [her] in the position [she] would have enjoyed if the false representation relied upon had been true[.]" *Id.* at 821 (quoting *Stout v. Turney*, 22 Cal. 3d 718, 725 (1978)).

Accordingly, the Court should certify the Class.

### b. Plaintiffs' Expected Discount Model.

Under the Expected Discount model, Class members will seek to recover the difference in value between what they actually received and what they were otherwise led by the Defendant to believe they would receive. As demonstrated above, Class members were unlawfully led to believe that they would receive products Free, but in fact the cost of the purportedly "Free" Products were built into the BOGO price. Thus, Plaintiffs were defrauded out of what they expected to receive – Free Products – the value of which determines the amount of damages suffered by each Class Member. This measure of damages is akin to the "benefit-of-the-bargain" measure of damages that

was recently accepted by the Ninth Circuit.  *See Nguyen*, 932 F.3d at 818.

As the Court explained in its Order re Partial Summary Judgment, the benefit-of-the-bargain measure accepted in *Nguyen* is a viable damages model because it "aligns well with plaintiffs' liability theory that they were deceived into buying under the BOGO promotionals on the expectation of getting a big discount that was available for a short time only."  Order 11:11-14.

Mr. Bergmark explains that under this model, Class members who purchased the Products under a BOGO price would obtain the discount they expected from the price, whether the BOGO is Buy 1-Get 2 or Buy 1-Get 3, or any version including a Free Product in the price they paid.  *See* Saltzman Decl. Ex. J (Bergmark Decl.), ¶25.  For example, the model would provide for a restitution of 66% of the money paid under a Buy 1-Get 3 price, representing the expectation that the Class member believed that he or she would get two Free items with a purchase of one Product.  *Id*. at ¶25.  Similarly, under a Buy 1-Get 2 price, the refund would be 50%, and under a Buy 2-Get 3 price the restitution would be 60% of the money paid. *Id*. at ¶26.  Mr. Bergmark provides the following example:

> If this approach was applied to the May 3, 2016, sale by Defendant of "Lutein 20 mg with Zeaxanthin" to named Plaintiff, Meg Larson, on a "3 for 1" offer for $19.79 (see Exhibit L, which is the excerpt of this transaction included in the sales data), the damages would be quantified as follows: Since Ms. Larson paid $19.79 for a 3 for 1 offer, the analysis would assume that the expectation was that she would be receiving 3 items with a total expected value of $59.37 (3 times $19.79) for only $19.79. This is an expected discount of 66.67% (3 for the price of 1). Applying this discount to the actual price paid of $19.79 would indicate damages of $13.19.

*Id*. at ¶25.

Again, this model focuses on the expected price of the Free Products at the time of Class members' purchases, which would necessarily have been $0, based on Defendants' price advertising. Furthermore, it also accounts for the difference between what Class members paid and what a reasonable consumer would have paid at the time of purchase without the fraudulent or omitted information, because the fact that Defendants sold so few Products as single bottles demonstrates that Class members simply would not have purchased Puritan's Pride-branded Products without thinking that they were getting anything Free. ████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

22

Plaintiffs' Memo. ISO Motion For Class Certification; Case No. 16-cv-6717-JD / 17-cv-2536-JD

████████████████████████████████████████████ Saltzman

Decl., Ex. P at PPSHARP0000056.

In *Nguyen*, the district court rejected the plaintiffs' "benefit-of-the-bargain" damages model because "the difference between value represented and value received only equals the cost to replace the defective [product] if consumers would have deemed the defective part valueless." 932 F.3d at 816. In other words, the district court found that the plaintiffs' failure to include the purchasers' subjective value or market value of the deception in their measure. The Ninth Circuit reversed, holding that the plaintiffs' theory of liability was based on deception made at the time of purchase, not something that happened *after the purchase* that caused the deception. *Id.* at 819. Put simply, the damage occurred *at the time of purchase*, so the plaintiffs' damages model did not need to account for subjective or market value of the defective product/deceptively advertised good. The Circuit Court contrasted the case based on the fact that, had the class members claimed that the product failed to perform as expected, the "price/value" calculation pushed by Defendants, which includes a market value aspect, would have been appropriate. *Id.*

Similarly, Plaintiffs' theory of liability is that their injury occurred at the time they purchased the Products, when they saw and relied on Defendants' deceptive BOGO prices; it is <u>not</u> that they received Products that did not perform as expected. Thus, the fact that Plaintiffs' Expected Discount model does not account for the *market value*[7] of what Class members received is irrelevant.

Therefore, the Court should accept Plaintiffs' Expected Discount model as proper for the purpose of computing class-wide damages under the CLRA, especially under the "particularly forgiving" standard in the Ninth Circuit because it is consistent with Plaintiffs' theory of liability. *Nguyen*, 932 F.3d at 818 ("[c]lass wide damages calculations under the CLRA are particularly forgiving. California law 'requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation.") (internal

---

[7] Alternatively, Defendants themselves established the value of the Products by selling them either exclusively or predominately under BOGO prices and by selling them under the Puritan's Pride brand name, so comparisons with other brands is imperfect. Thus, this model also comports with the "price/value" calculation of damages, in that that the "value" that consumers received is the price that they paid for the Products divided by the number of bottles (*e.g.*, buy 1 at $10, get 2 free = $3.33 value, so $6.67 in damages).

quotations omitted).

Accordingly, the Court should certify the class.

**B.      A Class Action Is Superior to Other Methods of Adjudication.**

"Rule 23(b)(3) requires that a class action be 'superior to other available methods for fairly and efficiently adjudicating the controversy,' and it specifically mandates that courts consider 'the likely difficulties in managing a class action.'" *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1127-28 (9th Cir. 2017).

A class action is clearly superior to individual proceedings here.  The relatively small amount of individual damages are not enough to incentivize individual Plaintiffs given the high costs of litigation, especially considering Defendants' willingness to litigate the case.  *Just Film*, 847 F.3d at 1123. The class will be manageable because members can be identified in a straightforward way, since Defendants have collected a wealth of data on its customers.

Accordingly, the Court should certify the class.

**V.      THE REQUIREMENTS OF RULE 23(B)(2) ARE SATISFIED**

In the Ninth Circuit, a class may be certified under both Rule 23(b)(2) and (b)(3).  *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 573 (C.D. Cal. 2014) ("Ninth Circuit precedent indicates that the court can separately certify an injunctive relief class and if appropriate, also certify a Rule 23(b)(3) damages class.").  Certification under Rule 23(b)(2) is appropriate where a defendant has acted on "grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

Here, there is no dispute that the final injunctive relief sought by plaintiffs – namely, the discontinuation of Defendants' false BOGO prices – would apply generally to the entire class. *See Stathakos v. Columbia Sportswear Co.*, 2017 WL 1957063, at *16 (N.D. Cal. May 11, 2017). Indeed, this case is particularly appropriate for certification under Rule 23(b)(2) because it seeks relief that can be satisfied with indivisible equitable relief that benefits all class member at once.  *See Brazil v. Dole Packaged Foods, LLC*, 2014 WL 2466559, at *10 (N.D. Cal. May 30, 2014).

Finally, Plaintiffs have standing to seek injunctive relief. In *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018), the Ninth Circuit held that a previously deceived consumer "may

24

Plaintiffs' Memo. ISO Motion For Class Certification; Case No. 16-Cv-6717-JD / 17-CV-2536-JD

have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm" because "[k]nowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future." *Id*. at 969. Here, each of the named Plaintiffs would consider purchasing Puritan's Pride products again in the future if Defendants were required to change their business practices and ensure that their marketing and advertising practices were not deceptive, misleading, or unlawful. *See* ¶7 of Plfs. Decls.; *see also* Saltzman Decl. Ex. K (Larson Depo.) at 72:2-4. Thus, all Plaintiffs have standing to seek injunctive relief.

As the Ninth Circuit explained in *Davidson*, denying Plaintiffs' request for injunctive relief in these circumstances undermines the objects of California's consumer protection laws. 889 F.3d at 970. This is because "the primary form of relief available under the UCL to protect consumers from unfair business practices is an injunction[,]" *In re Tobacco II Cases*, 46 Cal.4th at 319, and "[t]he CLRA, in its injunctive relief provisions, allows plaintiffs to enjoin a corporation's deceptive or unlawful business practices throughout the state on behalf of the general public." *Meyer v. Sprint Spectrum L.P.*, 45 Cal.4th 634, 645 (2009).

Accordingly, the Court should certify the class.

## VI. CONCLUSION

For the foregoing reasons, the Court should certify the class under Rule 23(b)(2) and (b)(3), appoint Plaintiffs as Class Representatives, and appoint Marlin & Saltzman, LLP, Law Offices of W. Hansult, and Vision Legal, Inc. as Lead Class Counsel.

Respectfully submitted,

DATED: January 26, 2021        **MARLIN & SALTZMAN, LLP**
**LAW OFFICES OF W. HANSULT**
**VISION LEGAL, INC.**

By: __s/ Stanley D. Saltzman__
        Stanley D. Saltzman, Esq.
        Counsel for Plaintiffs and the Proposed Class

25

Plaintiffs' Memo. ISO Motion For Class Certification; Case No. 16-Cv-6717-JD / 17-CV-2536-JD