1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PENELOPE MUELLER, et al.,

Plaintiffs,

v.

PURITAN'S PRIDE, INC., et al.,

Defendants.

Case No.  3:16-cv-06717-JD

**ORDER RE CLASS CERTIFICATION
AND *DAUBERT* MOTION**

Re: Dkt. No. 186, 196

This order resolves plaintiffs' renewed motion to certify a class of California consumers who bought vitamins and supplements from defendant Puritan's Pride under a "buy-one-get-one-free" (BOGO) sales offer.  Dkt. No. 218.[1]  In plaintiffs' view, the offers were deceptive in that they promised a discount on regular prices that was illusory.  Plaintiffs revised their original certification request to account for the Court's conclusions on summary judgment about restitution and statutory damages.  *See* Dkt. No. 178 (summary judgment order); Dkt. No. 185 (update order). The Court previously dismissed claims alleged under the New York General Business Law.  Dkt. No. 112.

The claims for certification are under the California Unfair Competition Law (UCL) and Consumers Legal Remedies Act (CLRA).  Dkt. No. 218 at 4.  Named plaintiffs Penelope Mueller, Meg Larson, Diane Cabrera, and Mary Ludolph-Aliaga are California residents who ask for certification of a class of California residents.  Named plaintiffs Werner, Opas, Parker, and

---

[1] Plaintiffs refiled their motion for class certification, originally Dkt. No. 186, as Dkt. No. 218 without redactions following the Court's denial of plaintiffs' administrative motion to seal, Dkt. No. 216.

1    Krueger are New York residents, are not part of the proposed class, and are effectively out of the

2    case in light of the dismissal of the New York claim.

3         The parties have debated at considerable length whether plaintiffs may pursue any type of

4    monetary relief at all as a remedy.  This dispute was the main focus of the summary judgment

5    proceedings, and the Court determined that plaintiffs were limited to actual damages under the

6    CLRA only.  The Court ruled out plaintiffs' claim of damages under Business and Professions

7    Code Section 17537, which is a provision of the California False Advertising Law (FAL) that

8    makes it "unlawful for any person to use the term 'prize' or 'gift' or other similar term in any

9    manner that would be untrue or misleading."  Dkt. No. 178 at 4.  This was because the plain

10   language of the statute did not fit any of the allegations or facts in this case.  *Id*. at 5.  Even so,

11   plaintiffs brought up Section 17537 again in the renewed certification motion.  *See, e.g.,* Dkt. No.

12   218 at 2, 14.  Plaintiffs are advised that nothing has changed on this score, and they may not

13   obtain damages under Section 17537.

14        With respect to restitution under the UCL and FAL, the Court concluded that plaintiffs

15   were not necessarily restricted to the measure of a price/value differential, but that an "expected

16   discount" method which plaintiffs proposed to calculate restitution was foreclosed by California

17   law.  Dkt. No. 178 at 8-9.  Consequently, restitution was excluded as a remedy for plaintiffs.

18        As plaintiffs acknowledge, the net effect of the summary judgment order was to limit

19   plaintiffs' possible recovery to actual damages under the CLRA, and injunctive relief under the

20   UCL.  *See* Dkt. No. 218 at 20.  The Court recently held a supplemental hearing on plaintiffs'

21   model of actual damages under the CLRA in connection with their motion for class certification.

22   *See* Dkt. Nos. 217, 223.  The purpose of the hearing was to clarify how plaintiffs proposed to

23   reasonably quantify actual damages for BOGO purchases that delivered exactly what the

24   consumer paid for -- for example, two bottles of vitamin C at the advertised price -- but are said to

25   have disappointed an expectation that they were getting a discount on regular prices in the form of

26   free products.

27        Overall, after several opportunities provided by the Court, plaintiffs have not adduced a

28   reasonable method to determine the value of the discount expectation and Puritan's Pride's alleged

United States District Court
Northern District of California

2

misrepresentations.  Plaintiffs have plausibly shown that they can demonstrate material misrepresentations and reliance through common evidence.  But plaintiffs' proposed method of determining injury and damages is not supported by the evidence, and does not establish that damages can be accurately calculated across the class.  Consequently, the request to certify a class under Rule 23(b)(3) is denied.

The request to certify the proposed class under Rule 23(b)(2) for injunctive relief is granted.  Puritan's Pride does not meaningfully contest this request, and its objection about the potential overbreadth of an injunction, Dkt. No. 194 at 24, raises an issue for resolution as warranted after trial.

## BACKGROUND

The salient facts have been discussed in detail in prior orders. *See, e.g.*, Dkt. No. 112; Dkt. No. 178.  In pertinent summary, Puritan's Pride markets and sells vitamins and supplements to consumers through catalogs, email, mail, and a website.  Dkt. No. 218 at 5.  Plaintiffs are California residents who purchased products that Puritan's Pride marketed in BOGO sales offers. Puritan's Pride advertised and sold most of its products under BOGO promotions that ran continuously and without breaks over time.  *Id*. at 5-6.  The vast majority of its sales were based on BOGO prices.  *Id*. at 9.

Plaintiffs allege that the BOGO pricing was deceptive because the cost of the advertised "free" products was built into the price of the purchased non-free product(s).  Dkt. No. 218 at 1. Put more plainly, the BOGO offer was misleading because a consumer never got a true discount on their purchases in the form of free products.  They purchased Puritan's Pride's products in reliance on the BOGO promotions and the expectation that they were getting a substantial discount over regular prices.  *See* Dkt. No. 88 ¶ 16; Dkt. No. 218 at 10.

Plaintiffs seek certification of a class under Federal Rule of Civil Procedure 23(b)(2) and (b)(3) based on the same proposed class definition:  all "individual consumer residents of California who purchased Defendants' Products pursuant to a BOGO price, directly from Defendants, within the applicable statutory limitations period, including the period following the filing of the date of this action."  Dkt. No. 218 at ii.  At the Court's direction, Puritan's Pride

United States District Court
Northern District of California

3

1    produced sales and marketing information from 2016, which plaintiffs used to determine whether

2    class certification was appropriate.  Dkt. No. 121.

3                                          **DISCUSSION**

4    **I.      CLASS CERTIFICATION**

5            The Court has written extensively on the standards governing class certification, which

6    informs the discussion here.  *See Meek v. SkyWest, Inc.*, No. 17-cv-1012-JD, 2021 WL 4461180

7    (N.D. Cal. Sep. 29, 2021).  Under Rule 23, the overall goal is "to select the metho[d] best suited to

8    adjudication of the controversy fairly and efficiently."  *Amgen Inc. v. Connecticut Ret. Plans &*

9    *Trust Funds*, 568 U.S. 455, 460 (2013) (internal quotations omitted) (modification in original).

10   Plaintiffs must show that their proposed classes satisfy all four requirements of Rule 23(a), and at

11   least one of the subsections of Rule 23(b).  *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013);

12   *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001), *amended by* 273 F.3d

13   1266 (9th Cir. 2001).  Plaintiffs have elected to proceed under Rule 23(b)(3), or alternatively

14   under Rule 23(b)(2) if the class is not certified under (b)(3).  In each circumstance, plaintiffs bear

15   the burden of demonstrating that all of the requirements of Rule 23 are met for the proposed class.

16   *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012).

17           The Court's class certification analysis "must be rigorous and may entail some overlap

18   with the merits of the plaintiff's underlying claim," but the merits questions may be considered

19   only to the extent that they are "relevant to determining whether the Rule 23 prerequisites for class

20   certification are satisfied."  *Amgen*, 568 U.S. at 465-66 (internal quotations and citations omitted).

21   The class certification procedure is decidedly not an alternative form of summary judgment or an

22   occasion to hold a mini-trial on the merits.  *Alcantar v. Hobart Service*, 800 F.3d 1047, 1053 (9th

23   Cir. 2015).  The decision of whether to certify a class is entrusted to the Court's sound discretion.

24   *Zinser*, 253 F.3d at 1186.

25   **II.     RULE 23(B)(3) CLASS**

26           The Rule 23(a) factors are the same for certification of the proposed class under either

27   Rule 23(b)(2) or (b)(3), and the conclusions reached here for the Rule 23(a) elements apply to both

28

United States District Court
Northern District of California

1    types of classes.  The main difference is the predominance element of Rule 23(b)(3), which Rule

2    23(b)(2) does not require.  The Court takes up the proposed Rule 23(b)(3) class first.

3        **A.    Numerosity (23(a)(1))**

4            Rule 23(a)(1) requires that a proposed class be "so numerous that joinder of all members is

5    impracticable."  Fed. R. Civ. P. 23(a)(1).  Plaintiffs state, with evidentiary support, that

6    "[d]efendants' records indicate that there were millions of transactions in California in 2016 alone,

7    the vast majority of which were made pursuant to a BOGO offer."  Dkt. No. 218 at 10.  Puritan's

8    Pride does not contest numerosity, and the Court finds this element is satisfied.

9        **B.    Typicality and Adequacy (23(a)(3)-(4))**

10           Plaintiffs have also established that their claims are typical of the putative class, and that

11   they are capable of fairly and adequately protecting the class's interests.  Fed. R. Civ. P. 23(a)(3)-

12   (4); *see* Dkt. No. 218 at 11-12.  Named plaintiffs are California residents who purchased products

13   from Puritan's Pride in connection with a BOGO offer.  Plaintiffs have adduced evidence showing

14   that the putative class members are similarly situated consumers who saw the same BOGO offers

15   and bought the same types of products.  All putative class members, including named plaintiffs,

16   are said to have suffered the same injury.  In these circumstances, the fact that Puritan's Pride sold

17   different vitamins and supplements to consumers is not a barrier to certification.  *See Leyva v.*

18   *Medline Indus., Inc.*, 716 F.3d 510, 515 (9th Cir. 2013).  Puritan's Pride did not contest typicality,

19   and the Court finds that plaintiffs have done enough to "assure that the interest of the named

20   representative aligns with the interests of the class."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497,

21   508 (9th Cir. 1992).

22           So too for adequacy.  Named plaintiffs have established that their claims and interests are

23   co-extensive with the absent class members, and they have actively prosecuted this case by

24   responding to discovery requests and the like.  *See* Dkt. No. 218 at 12.  Puritan's Pride took a half-

25   hearted swing at plaintiffs for not proving that they and their counsel do not have conflicts with

26   other class members, Dkt. No. 194 at 22-23, but Puritan's Pride did not offer any evidence to that

27   effect, and the Court sees none in the record.  Overall, named plaintiffs and their attorneys have

28

United States District Court
Northern District of California

5

1  vigorously pursued their claims and adequately represented putative class members over the rather

2  long course of this litigation.

3        **C.**      **Commonality (23(a)(2)) and Predominance (23(b)(3))**

4        The commonality requirement under Rule 23(a)(2) is satisfied when "there are questions of

5  law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  "Because any competently crafted

6  class complaint literally raises common questions," the Court's task is to look for a common

7  contention "capable of classwide resolution -- which means that determination of its truth or

8  falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."

9  *Alcantar*, 800 F.3d at 1052 (internal quotations and citations omitted).  What matters is the

10  "capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of

11  the litigation."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (internal quotations

12  omitted) (emphasis in original).  This does not require total uniformity across a class.  "The

13  existence of shared legal issues with divergent factual predicates is sufficient, as is a common core

14  of salient facts coupled with disparate legal remedies within the class."  *Hanlon v. Chrysler Corp.*,

15  150 F.3d 1011, 1019 (9th Cir. 1998), *overruled on other grounds by Wal-Mart*, 564 U.S. at 338.

16  The commonality standard imposed by Rule 23(a)(2) is "rigorous."  *Leyva v. Medline Indus. Inc.*,

17  716 F.3d 510, 512 (9th Cir. 2013).

18        Rule 23(b)(3) sets out the related but nonetheless distinct requirement that the common

19  questions of law or fact predominate over the individual ones.  This inquiry focuses on whether

20  the "common questions present a significant aspect of the case and [if] they can be resolved for all

21  members of the class in a single adjudication."  *Hanlon*, 150 F.3d at 1022 (internal quotations

22  omitted); *see also Tyson Foods v. Bouaphakeo*, 577 U.S. 442, 453 (2016).  Each element of a

23  claim need not be susceptible to classwide proof, *Amgen*, 568 U.S. at 468-69, and the "important

24  questions apt to drive the resolution of the litigation are given more weight in the predominance

25  analysis over individualized questions which are of considerably less significant to the claims of

26  the class."  *Ruiz Torres v. Mercer Canyons, Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016).  Rule

27  23(b)(3) permits certification when "one or more of the central issues in the action are common to

28  the class and can be said to predominate, . . . even though other important matters will have to be

United States District Court
Northern District of California

6

1    tried separately, such as damages or some affirmative defenses peculiar to some individual class

2    members." *Tyson*, 577 U.S. at 453-54 (internal quotations omitted).

3           "Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a),"

4    *Comcast*, 569 U.S. at 34, and the main concern under subsection (b)(3) is "the balance between

5    individual and common issues." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 560 (9th

6    Cir. 2019) (en banc) (internal quotations omitted).  The Court finds it appropriate to assess

7    commonality and predominance in tandem, with a careful eye toward ensuring that the specific

8    requirements of each are fully satisfied.  *See, e.g.*, *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1120-

9    21 (9th Cir. 2017).

10          Plaintiffs have demonstrated that common questions and answers predominate with respect

11   to determining whether Puritan's Pride may be liable under the California consumer statutes.  The

12   same cannot be said for the determination of damages on a classwide basis, which is an essential

13   element of the commonality and predominance inquiry.  *Comcast*, 569 U.S. at 35.  The damages

14   shortfall defeats certification of a Rule 23(b)(3) class.

15                          **1.      Liability**

16          The liability question is the same for all class members:  were Puritan's Pride's BOGO

17   offers likely to mislead an objectively reasonable consumer?  This is true for both the UCL and

18   CLRA claims, which are the remaining ones in play.  *See Williams v. Gerber Products Co.*, 552

19   F.3d 934, 938 (9th Cir. 2008) (claims under the UCL and CLRA are "governed by the 'reasonable

20   consumer' test"; plaintiffs "must 'show that members of the public are likely to be deceived'")

21   (internal quotations omitted); *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009) ("To state a

22   claim under either the UCL or the false advertising law, based on false advertising or promotional

23   practices, it is necessary only to show that members of the public are likely to be deceived.")

24   (cleaned up) (citation omitted).

25          The answer to the liability question will also be the same for all class members.  Puritan's

26   Pride made the same BOGO promotions and offers to putative class members via its website and

27   online communications, and its print catalogs.  *See, e.g.*, Dkt. No. 186-6.  The BOGO promotions

28   were a "long-term advertising campaign," and deposition testimony and other evidence indicates

United States District Court
Northern District of California

7

1    that they ran fifty-two weeks of the year throughout the class period.  Dkt. No. 218-2 at 21:7-14,

2    101:22-102-20.  Plaintiffs have shown that common evidence, such as product catalogs, deposition

3    testimony, and Puritan's Pride's own customer research, will be used to establish materiality and

4    reliance.  *Id*. at 17-18; Dkt. No. 218-6 at ECF 27; Dkt. No. 218-7 at ECF 5.  Additionally

5    plaintiffs' expert witness, Dr. Larry Compeau, will offer opinions about the impact of BOGO

6    offers on consumer behavior and perception of value, which will apply across the class.  Dkt. No.

7    218-5 ¶¶ 28-29.[2]

8         This is enough to demonstrate that a common question of liability predominates across the

9    class.  As the Supreme Court has concluded, "[p]redominance is a test readily met in certain cases

10   alleging consumer . . . fraud."  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997).  This

11   is one of those cases, and our circuit has said as much in an unpublished memorandum disposition

12   that the Court finds instructive.  *See Bradach v. Pharmavite, LLC*, 735 F. App'x 251, 254-55 (9th

13   Cir. 2018) ("CLRA and UCL claims are ideal for class certification because they will not require

14   the court to investigate class members' individual interaction with the product.") (internal

15   quotations omitted).

16        Puritan's Pride's objections to commonality and predominance, *see* Dkt. No. 194 at 11-22,

17   are not well taken.  To start, it says that plaintiffs must demonstrate that each individual BOGO

18   offer during the class period was deceptive and that plaintiffs must demonstrate each individual

19   class member relied on those deceptive offers.  Dkt. No. 194 at 12-13, 17.  That goes much too far,

20   and is not supported by the case law.  Questions of materiality and reliance do not defeat

21   predominance.  *Milan v. Clif Bar & Co.*, No. 18-cv-2354-JD, 2021 WL 4427427, at *5 (N.D. Cal.

22   Sep. 29, 2021); *see also Bradach*, 735 F. App'x at 254-55.  The UCL and CLRA do not demand

23   that plaintiffs prove individual reliance on the BOGO promotions; they require only an objective

24   showing that members of the public were likely to have been deceived by Puritan's Pride's

25   promotions.  To recover actual damages under the CLRA, plaintiffs may rely on common

26

27   _____
     [2] Puritan's Pride's motion to limit the expert opinions of Dr. Compeau, Dkt. No. 196, is addressed
28   in Section IV.  The portions of Dr. Compeau's report that the Court discusses in this order were
     not challenged in the motion.  The Court does not rely on any of the opinions that were
     challenged.

*United States District Court*
*Northern District of California*

1   evidence (such as the product catalogs, deposition testimony, and defendants' customer research)

2   to prove that material misrepresentations were made to the entire class, thereby giving rise to an

3   inference of classwide reliance.  *See In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 129 (2009);

4   *see also Amgen*, 568 U.S. at 467 ("[M]ateriality can be proved through evidence common to the

5   class.").

6          Puritan's Pride suggests that deposition testimony by the named plaintiffs indicates they

7   did not rely on the BOGO offers, but the testimony it cites goes to whether plaintiffs would have

8   purchased the products if the misrepresentations had not been made.  *See* Dkt. No. 194 at 19-20;

9   Dkt. No. 197-4 at 78:22-79:9.  This does not establish that plaintiffs did not rely on the

10  misrepresentations, and plaintiffs also provided evidence that they purchased the products because

11  they thought they were getting a good deal.  *See, e.g.*, 186-20 ¶ 6.  In any event, as discussed,

12  reliance need not be established by individual proof; reliance and materiality are determined based

13  on whether a reasonable person would have relied on the misrepresentations.  *Williams*, 552 F.3d

14  at 938; *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 332-33 (Cal. 2011).

15         Puritan's Pride says that plaintiffs' expert, Dr. Compeau, admits that prices are not

16  deceptive if they reflect the market prices. Dkt. No. 194 at 12.  In Puritan's Pride view, this means

17  that an individual analysis of each BOGO offer on each product will be required to determine

18  whether it reflects market pricing for that product.  *Id*. at 13.

19         Not so.  Puritan's Pride selectively ignores Dr. Compeau's opinion that valid reference

20  prices could also be "a price at which the seller has actually sold a majority of units, or a price at

21  which the seller has offered the item for sale for a majority of the time," not just the market price

22  of a product.  Dkt. No. 187-11 ¶ 34.  Dr. Compeau also opined that Puritan's Pride "does not make

23  a substantial number of sales of these products at the reference prices, and have advertised BOGO

24  offers a majority of the time."  *Id*.  This is the crux of plaintiffs' allegations in this case:  Puritan's

25  Pride's representations of discounts and free products were deceptive because the products were

26  always sold on the basis of a BOGO offer.

27         Puritan's Pride also highlights its own expert report, which says that shoppers respond to

28  BOGO offers in varied ways.  *Id*. at 22; Dkt. No. 197-2 ¶¶ 15, 30.  What that means is not at all

United States District Court
Northern District of California

9

clear, and Puritan's Pride did not cogently explain why it might weigh against predominance.
Overall, plaintiffs' evidentiary showings, coupled with the liability test of an objectively
reasonable consumer, are enough to satisfy commonality and predominance for liability purposes.

### 2. Damages

A different outcome holds for damages. While a damages methodology need not deliver
mathematical precision, and may accommodate some individual variability among class members,
*see In re Capacitors Antitrust Litigation*, No. 17-md-2801-JD, 2018 WL 5980139, at *9 (N.D.
Cal. Nov. 14, 2018), it must be capable of determining damages across the class in a reasonably
accurate fashion. *Comcast*, 569 U.S. at 35 (plaintiffs bear burden of showing that "damages are
susceptible of measurement across the entire class for purposes of Rule 23(b)(3)"). This is part of
the predominance inquiry. *Id.* at 34 ("[I]t is clear that, under the proper standard for evaluating
certification, respondents' model falls far short of establishing that damages are capable of
measurement on a classwide basis. Without presenting another methodology, respondents cannot
show Rule 23(b)(3) predominance."); *Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811, 816 (9th Cir.
2019) ("The central issue before us is whether Plaintiff's proposed damages model -- specifically,
a benefit-of-the-bargain model as measured by the average cost of replacing the allegedly
defective clutch system -- satisfies Rule 23(b)(3)'s predominance requirement."). The damages
model "must measure only those damages attributable to" the plaintiff's theory of liability.
*Comcast*, 569 U.S. at 35. Failure to identify a feasible method for calculating damages is fatal to
class certification. *Id.* at 38.

That is the situation here. For actual damages under the CLRA, which are the only
damages available in the case, *see* Dkt. No. 178 at 12, plaintiffs proposed an "expected discount"
model as a measure of their actual damages in their motion for class certification. Dkt. No. 218 at
21. This is the model that the Court held a supplemental hearing on to better understand plaintiffs'
approach. *See* Dkt. Nos. 217, 223.

The method they propose is unsound. Plaintiffs do not dispute that they received from
Puritan's Pride exactly the products they expected to get for the price they paid. For example, a
consumer who bought three bottles of lutein (a supplement said to benefit the eyes) for a BOGO

United States District Court
Northern District of California

1   price of $19.79 got exactly that delivered to her by Puritan's Pride, namely three bottles of lutein

2   for $19.79.  This is not a case where the consumers bought products with a hidden defect that

3   reduced their value, were adulterated or watered down, or otherwise of less value than what the

4   seller promised to provide.  *E.g.*, *Nguyen*, 932 F.3d at 814; *Wilson v. Hewlett-Packard, Inc.*, 668

5   F.3d 1136, 1138 (9th Cir. 2012).  Plaintiffs do not contend, and the record does not show, that

6   Puritan's Pride deprived consumers in any way of the substantive products they paid for.

7        Even so, plaintiffs say they were actually damaged by the BOGO offers.  In plaintiffs'

8   view, the consumer who bought the lutein believed that she was paying $19.79 for one bottle, and

9   getting two more bottles free.  *See* Dkt. No. 218 at 22, 23 ("Plaintiffs' theory of liability is that

10  their injury occurred at the time they purchased the Products when they saw and relied on

11  Defendants' deceptive BOGO prices.").  Consequently, the injury is said to be the consumer's

12  disappointed expectation of not getting two free products as promised.  *Id*. at 22.

13       To measure the value of this alleged misrepresentation, plaintiffs propose an "expected

14  discount" model.  The model operates by assigning a percentage figure to the discount a consumer

15  expected to reap.  *See id*.  In the lutein example, plaintiffs' model would indicate that the

16  consumer expected to realize a 67% discount because the BOGO offer communicated that she was

17  buying one bottle at the full price of $19.79 and getting two more free -- a 2/3rds discount on what

18  she would have paid if she bought each bottle at the undiscounted $19.79 price.  *Id*.  The model

19  then applies this percentage to what the consumer actually paid.  For the lutein purchase, it would

20  apply the expectation of a 67% discount to the $19.79 the consumer paid, to conclude that the

21  BOGO offers inflicted $13.19 in actual damages.  *Id*.

22       This is perilously close to voodoo economics.  It is a poor fit with the case because nothing

23  in the record indicates that a plaintiff thought about her purchases in the way the model assumes.

24  Plaintiff's damages expert, Dr. Brian Bergmark, developed the expected discount model based

25  entirely on Puritan's Pride's sales and pricing data, product orders, and the First Amended

26  Complaint.  Dkt. No. 186-11 ¶ 9.  He did not account for plaintiffs' deposition testimony, which

27  indicated that they did not have an expectation of a percentage discount.  That testimony shows

28  that plaintiffs believed they were getting a good deal from Puritan's Pride, but not that they were

getting a 67% discount, or some similar understanding.  *See, e.g.,* Dkt. No. Dkt. No. 186-12 at 69:1-25; Dkt. No. 186-13 at 65:11-66:25.  To the contrary, plaintiff Mueller testified to her understanding that, when she bought one bottle for $7.99 and received two other bottles free, each bottle was worth $7.99, not that each bottle was worth $2.30, as the expected discount model would have it.  Dkt. No. 186-14 at 68:1-6.  Mueller did not say that she had any expectations about the discount she would receive.  Plaintiff Larson also understood that she was getting free bottles, and not a specific percentage discount.  Dkt. No. 186-12 at 69:8-14.

Plaintiffs' damages method does not account for this evidence, and likely for good reason.  A model that calculated actual damages based on the ostensible value of the free products would give class members much more than they actually paid.  The consumer who bought the lutein, for example, would be said to have sustained actual damages to the tune of $39.58 for the two bottles she expected to get free, which is twice the amount she actually spent on her purchase.  Needless to say, a model that returns 200% or more of a purchase price is more alchemy than a valid and reliable methodology.

To avoid this dubious result, plaintiffs came up with an expected discount method as a means of putting a dollar figure on an intangible, namely the expectation of getting free products.  The method is not tethered to the consumer evidence in this case, and has no apparent support in the case law.  Plaintiffs have not identified a case in which this approach was accepted for use in determining classwide damages, or to certify a class.  When pressed by the Court on this point at the supplemental hearing, plaintiffs identified *Hinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th Cir. 2013), but it is inapposite.  *Hinojos* addressed the standing requirement of "any damages" under the CLRA; it did not discuss any particular method of determining actual damages at the class certification stage, and certainly not the model plaintiffs propose here.  *See id.* at 1107-08.  While the lack of supporting case law is not necessarily fatal to the model, it underscores the need for a persuasive demonstration of its utility and fit in this action, which plaintiffs did not achieve.

The "expected discount" model is not viable a measure of actual damages on a classwide basis here.  It fails to reliably determine the value of the alleged misrepresentations posed by the BOGO offers.  Consequently, certification of a Rule 23(b)(3) class is denied.

### III.     RULE 23(B)(2) CLASS

Plaintiffs ask in the alternative to certify the putative class under Rule 23(b)(2) for injunctive relief in connection with their UCL and CLRA claims.  Such a class may be certified when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  "Class certification under Rule 23(b)(2) is appropriate only where the primary relief sought is declaratory or injunctive."  *Zinser*, 253 F.3d at 1195.  The primary use of Rule 23(b)(2) classes has been the certification of civil rights class actions, but courts have certified many different kinds classes under Rule 23(b)(2).  *See Parsons v. Ryan*, 754 F.3d 657, 686 (9th Cir. 2014).  The Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy must also be shown for a Rule 23(b)(2) class.  *Zinser*, 253 F.3d at 186.  As discussed, plaintiffs have met their burden for proving the Rule 23(a) requirements.

For Rule 23(b)(2), the Court is not required "to examine the viability or bases of class members' claims for declaratory and injunctive relief, but only to look at whether class members seek uniform relief from a practice applicable to all of them."  *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010).  "It is sufficient to meet the requirements of Rule 23(b)(2) that class members complain of a pattern or practice that is generally applicable to the class as a whole."  *Id.* (quoting *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998)) (internal quotations omitted).

In a prior order, the Court concluded that the California Supreme Court has held that "[i]njunctions are the 'primary form of relief available under the UCL to protect consumers from unfair business practices."  Dkt. No. 178 at 3 (quoting *Kwikset*, 51 Cal.4th at 337); *see also Tobacco Cases II*, 46 Cal. 4th at 319.  For the proposed Rule 23(b)(2) class, plaintiffs seek injunctive relief in the form of "the discontinuation of Defendants' false BOGO prices."  Dkt. No. 218 at 24.

Plaintiffs are on firmer ground here than under Rule 23(b)(3).  They have standing to seek an injunction.  As our circuit has determined, "a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows

1   or suspects that the advertising was false at the time of the original purchase," because

2   "[k]nowledge that the advertisement or label was false in the past does not equate to knowledge

3   that it will remain false in the future." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th

4   Cir. 2018).  Plaintiffs have proffered declarations and deposition testimony to the effect that they

5   would consider purchasing defendants' products in the future if they could be sure that the pricing

6   and sale offers were not deceptive.  Dkt. No. 186-12 at 72:2-4; Dkt. No. 186-18 ¶ 7; Dkt. No. 186-

7   19 ¶ 7; Dkt. No. 186-20 ¶ 7; Dkt. No. 186-21 ¶ 7.  This establishes plaintiffs' standing to pursue

8   injunctive relief in this case.

9         Puritan's Pride offered only light opposition to a (b)(2) class.  Its main objection is that

10  plaintiffs did not adequately establish that Puritan's Pride acted in a manner generally applicable

11  to the class.  This is a reprise of the objection in the (b)(3) context that each BOGO promotion

12  needs to be evaluated separately to determine whether it is deceptive, Dkt. No. 194 at 23-24, and it

13  is unavailing for the same reasons.  The record amply establishes that plaintiffs' claims will be

14  determined on the basis of common evidence of the BOGO practices.

15        Puritan's Pride also says that the injunction plaintiffs may seek is "wildly overbroad."

16  Dkt. No. 194 at 24.  This conclusory remark is not developed by Puritan's Pride in a meaningful

17  way, and concerns about the scope of an injunction are premature.  There is considerably more to

18  be done in this case, namely trial, before the specific terms of an injunction might warrant debate.

19        Consequently, a Rule 23 (b)(2) class is appropriate, all the more so in light of the

20  unavailability of actual damages.  A monetary award of a purely incidental sort is not entirely out

21  of the question.  "A class seeking monetary damages may be certified pursuant to Rule 23(b)(2)

22  where such relief is merely incidental to the primary claim for injunctive relief." *Zinser*, 253 F.3d

23  at 1195 (cleaned up); *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 987 (9th Cir. 2011)

24  (where a district court finds that a (b)(2) class may be properly be certified, it may consider

25  whether a plaintiffs' claim for damages incidental to the injunctive relief may also be sought by

26  the (b)(2) class.  But Rule 23(b)(2) "does not authorize class certification when each class

27  member would be entitled to an individualized award of monetary damages." *Wal-Mart*, 564 U.S.

28

at 360-61.  An incidental monetary award may be considered as warranted by further

developments.

## IV.     MOTION TO STRIKE

Puritan's Pride's request to strike portions of Dr. Compeau's expert report, Dkt. No. 196, is

denied without prejudice.  The request is directed to Dr. Compeau's opinions about corporate

intent, causation, deception, and the like.  *Id*.  The Court did not rely on any of the opinions that

Puritan's Pride asks to strike, and declines to take up the motion at this time.  The Court will

revisit the objections as warranted going forward.

### CONCLUSION

The Court certifies a Rule 23(b)(2) injunctive relief class of California residents who

purchased defendants' products pursuant to a BOGO promotion after October 14, 2021.  Plaintiffs

Penelope Mueller, Meg Larson, Diane Cabrera, and Mary Ludolph-Aliaga are appointed class

representatives, and their counsel, Marlin & Saltzman, LLP, the Law Offices of W. Hansult, and

Vision Legal, Inc., are appointed class counsel.

A status conference is set for January 27, 2022, at 10:00 a.m.  The parties should file a

joint statement by January 20, 2022, with proposed dates for the final pretrial conference and trial.

The case is referred to Magistrate Judge Hixon for a settlement conference to be held as his

schedule permits.

**IT IS SO ORDERED.**

Dated:  November 23, 2021

_____
JAMES DONATO
United States District Judge

United States District Court
Northern District of California

15