UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY LUDOLPH-ALIAGA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>PURITAN'S PRIDE, INC., et al.,<br><br>Defendants. | Case No. 16-cv-06717-JD<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

In August 2024, the Court held a one-day bench trial on the false advertising claims of named plaintiffs and a class of California purchasers who purchased vitamins and supplements from defendants Puritan's Pride, Inc., and its parent entity, The Nature's Bounty Co. (together, Puritan's Pride). Plaintiffs' claims were for equitable relief, which is why the case was tried to the Court and not a jury. Counsel for each side filed trial briefs, presented and examined witnesses, moved documents into evidence, and filed additional materials after trial.

The Court makes the ensuing findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a)(1). In light of the evidence admitted at trial and in post-trial filings, the Court's observation of the demeanor, credibility, and candor of the witnesses, the arguments of the parties, and the record in this case, the Court concludes that plaintiffs did not prove their deceptive practices claims, and so judgment will be entered separately in favor of Puritan's Pride.

**BACKGROUND**

The case started in Mendocino Superior Court and was removed to this Court by Puritan's Pride under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). Dkt. No. 1. The Court denied plaintiffs' request to remand the case to state court. Dkt. No. 34. A subsequently filed case was consolidated into this one. Dkt. No. 66.

1        The named plaintiffs filed a consolidated class action complaint on behalf of themselves
2   and putative nationwide, California, and New York classes of consumers who bought products
3   from Puritan's Pride. Dkt. No. 72. The gravamen of the consolidated complaint was that
4   Puritan's Pride misled consumers into making purchases by offering "buy 1-get 1" promotions,
5   which plaintiffs called "BOGO" offers, that were said to be available for a limited time. *See id*. ¶¶
6   3-4. Plaintiffs alleged that the BOGO offers were deceptive because consumers did not get any
7   free products, and that Puritan's Pride prices stayed more or less constant over time. *Id*. ¶ 5.
8   Plaintiffs alleged claims under (1) the California Unfair Competition Law (UCL), Cal. Bus. &
9   Prof. Code §§ 17200, *et seq.*, (2) the California Consumer Legal Remedies Act (CLRA), Cal. Civ.
10  Code §§ 1750, *et seq.*, (3) the California False Advertising Law (FAL), Cal. Bus. & Prof. Code §§
11  17500, *et seq.*, and (4) the New York General Business Law (GBL), N.Y. Gen. Bus. Law §§ 349,
12  350, and for unjust enrichment. Plaintiffs requested a permanent injunction, restitution, damages,
13  and other relief.

14       Subsequent proceedings substantially narrowed the claims for trial. To start, the Court
15  dismissed the consolidated complaint with leave to amend. Dkt. No. 85. Plaintiffs filed an
16  amended complaint that retained the legal claims and putative classes previously alleged, and
17  added more facts about the BOGO promotions as plaintiffs understood them. Dkt. No. 88. The
18  gravamen of the case continued to be the allegations that the "BOGO promotions are false and
19  misleading because the consumer is not actually receiving anything free," and that Puritan's
20  Pride's prices were not discounts offered on a limited-time only basis. *Id*. ¶¶ 4-5. In connection
21  with a motion brought by Puritan's Pride, the Court dismissed the GBL and unjust enrichment
22  claims, and allowed the California statutory claims to go forward. Dkt. No. 112.

23       The dismissal order touched upon an issue with respect to monetary recovery that became
24  a major impediment to plaintiffs' case. The Court accepted for purposes of Federal Rule of Civil
25  Procedure 12(b)(6) that plaintiffs had plausibly alleged "injury in the form of losing money," but
26  noted that "[a] time may come when plaintiffs might need to put a finer point on the quantification
27  of their loss." *Id*. at 3.
28

1    That time came in response to Puritan's Pride's request for partial summary judgment on
2    plaintiffs' claims for restitution and damages under the California consumer statutes.  The
3    summary judgment order, Dkt. No. 178, details the issues and the Court's analysis.  In pertinent
4    summary, plaintiffs proposed a model based on an "expected discount" theory, which was said to
5    put a dollar value on the consumer's expectation of getting a free product with a BOGO purchase.
6    *See id*. at 5.  The Court concluded that this theory was not a viable method of measuring
7    restitution under California law, among other determinations, and granted summary judgment to
8    foreclose restitution.  *Id*. at 8-9.  The Court denied summary judgment with respect to actual
9    damages under the CLRA.  *Id*. at 11-12.

10   The question of actual damages came into further focus during the class certification
11   proceedings.  Plaintiffs asked to certify under Rule 23(b)(3) a single class of California residents
12   who had made BOGO purchases from Puritan's Pride.  *See* Dkt. Nos. 186, 218 (unredacted
13   version).  In the alternative, plaintiffs requested certification of the same class under Rule 23(b)(2)
14   for injunctive relief only.  The Court directed the parties to present oral argument specifically on
15   the availability of damages on a classwide basis under Rule 23(b)(3), and related cases.  *See* Dkt.
16   No. 217.

17   As discussed in detail in the certification order, Dkt. No. 228, the Court concluded that
18   plaintiffs had not identified a feasible method of determining actual damages under the CLRA.
19   Plaintiffs did "not dispute that they received from Puritan's Pride exactly the products they
20   expected to get for the price they paid."  *Id*. at 10.  A consumer who bought three bottles of a
21   supplement for a BOGO price of $19.79 got three bottles for that price.  *Id*. at 10-11.  Even so,
22   plaintiffs sought to recycle the "expected discount" theory in a different form to try to put a dollar
23   value on a consumer's expectation that they were getting free products.  *Id*. at 11.  The Court
24   concluded that this was "voodoo economics" because it did not fit the evidence in the record or
25   make economic sense overall.  *Id*. at 11-12.  Consequently, the Court denied certification of a Rule
26   23(b)(3) class because the "expected discount" model could not reliably determine actual damages
27   on a classwide basis.  This put an end to all of plaintiffs' monetary claims of relief.  The Court
28   certified a class of California purchasers under Rule 23(b)(2) for injunctive relief.  *Id*. at 13-14.

3

Other developments transpired during the course of these proceedings. The named plaintiffs changed periodically as individuals dropped out or joined the case. *See, e.g.,* Dkt. No. 181. One of the counsel for plaintiffs was suspended from the practice of law, and another died. Dkt. No. 268 at 2:14-3:14. Other attorneys from a firm appointed as class counsel continued to handle the litigation. *See* Dkt. No. 295 at 10-11.

The Court set a bench trial for August 20, 2024. Dkt. No. 266. The claims tried were for deceptive conduct under the CLRA and the fraudulent and unlawful prongs of the UCL, for injunctive relief.

## FINDINGS OF FACT

1. Puritan's Pride sells vitamins and health supplements to consumers. Dkt. No. 295 at 16:12-13 (Trial Tr.). These products are offered primarily through catalogs distributed by mail and online at www.puritan.com. Dkt. No. 289-2 at 73:14-17; 74:19-21; 114:17-12 (Amy Hanson Dep. Tr.)[1]; *see also* Trial Tr. at 24:2-16, 71:11-72:4.

2. Puritan's Pride "offers Buy One Get One ("BOGO")-type sales for certain products." Dkt. No. 288 at ¶ 1 (joint stipulations of fact). "Sales based on BOGO-type pricing have been roughly the same percentage, as contrasted with overall sales, in each year between 2016 and the present." *Id.* ¶ 2. As of August 2024, Puritan's Pride "earns 80% or more of its sales through BOGO-type offers." *Id.* ¶ 3. "When limited to California sales of the specific products purchased by the Plaintiffs up until April 2019 through Puritan's Pride's website or catalogs, 61.9% of the recorded transactions were BOGO-type offers, 84.9% of the total number of bottles sold were sold pursuant to a BOGO-type offer, and 86.7% of the total dollar amount of sales of the products were generated pursuant to BOGO-type offers." *Id.* ¶ 7. "When limited to California sales of the specific products purchased by the Plaintiffs up until April 2019 through Puritan's Pride's website or catalogs, 38.1% of the transactions recorded were single-item sales, 15.1% of

---

[1] The Court permitted two witnesses, Amy Hanson (for Puritan's Pride) and Dr. Larry Campeau (for plaintiffs) to testify by deposition designations. *See* Trial Tr. at 169:5-172:22. The parties' designations are identified in Dkt. No. 298. As the Court stated during trial, only these designations are deemed to be in the trial record. All undesignated testimony is not part of the record, and may not be used for any purpose. Trial Tr. at 172:12-13.

the total number of bottles were sold pursuant to a single-item sale, and 13.3% of the total dollar amount of sales of the products were generated pursuant to single-item sales." *Id.* ¶ 8.

3. Puritan's Pride catalogs showed BOGO promotions and featured text directing consumers to the "singles" page of puritan.com if they "want just one bottle." *See, e.g.*, Trial Exhs. 19, 36, 37. Puritan's Pride's website showed similar offerings and singles text. *See, e.g.*, Trial Exhs. 126, 127, 315, 316.

4. Plaintiff Diane Cabrera has been a resident of California since 2014. Trial Tr. at 16:6-8. Cabrera understood BOGO to mean "buy one, get one free." *Id.* at 22:18-19. She made two purchases from Puritan's Pride, one of which was for three 7-oz. bottles of coconut oil for which she paid $10.99. *Id.* at 37:8-16. This was the best deal on coconut oil she could find after searching on Google for other offers. *Id.* at 38:20-25. Cabrera does not claim she could have bought the same quantity of a comparable product for a cheaper price. *Id.* at 40:2-5. The promise of free products was attractive to her, *id.* at 31:12-18, and she "probably" would not have made the purchase if she did not think she was getting free products, *id.* at 32:4-7; 33:5-8. Cabrera agreed that the word "free" did not appear in every Puritan's Pride catalog ad. *Id.* at 44:24-45:3. She did not think she could make single bottle purchases, *id.* at 33:17-19, but acknowledged that a catalog said "want just one bottle? shop puritans.com/singles," *id.* at 45:15-20.

5. Plaintiff Meg Larson has been a resident of California since 2014. *Id.* at 67:13-20. Larson is a 40-year customer of Puritan's Pride. *Id.* at 68:15-21. She believed the BOGO offers gave her free products "most of the time," and that she sometimes ended up with more products than she could use. *Id.* at 80:6-14. Larson did not feel "really tricked" into buying more than she needed, but rather "compelled" to "because the price was so good" and the ads were "saying 'Buy me.'" *Id.* at 84:9-22. She purchased vitamin D that did not have a BOGO offer or use the word "free." *Id.* at 88:24-90:5; *see also id*. at 92:8-10. Larson bought Puritan's Pride products because she needed them and had concluded that the company sold quality products, its prices were fair, and she was in the habit of shopping there. *Id.* at 92:22-93:3.

6. Plaintiff Mary Ludolph-Aliaga has been a resident of California since 1982. *Id.* at 96:11-14. Ludolph-Aliaga understood BOGO to mean "you can buy one and get one or more

1  free." *Id.* at 100:9-10. This was "an important selling point" for her. *Id.* at 101:8-9. She bought
2  from Puritan's Pride rather than other companies for "the BOGO deals primarily." *Id.* at 102:11-
3  14. She has no complaints about the prices she paid for Puritan's Pride's products. *Id.* at 145:14-
4  17. She shopped exclusively through the website and acknowledged that the website offered
5  single units of products for purchase. *Id.* at 161:18-164:5.

6        7.      With the Court's consent (*see* n.1 *supra*), the parties presented by deposition designations the testimony of Dr. Larry Compeau, plaintiffs' consumer and marketing behavior expert witness. *Id.* at 169:6-20; *see also* Dkt. Nos. 289-4 (Compeau Dep. Tr.), 298 (transcript designations). To be clear, the parties agreed to treat Dr. Compeau as an expert. The Court was not asked to qualify him as such, and makes no findings with respect to whether he is an expert under Federal Rule of Evidence 702 and related cases. The Court accepts the parties' expert witness agreement purely for present purposes.

      8.      Overall, Dr. Compeau's testimony was of no value. He never spoke to the named plaintiffs, or any other Puritan's Pride customers. Dkt. No. 289-4 at 8:7-9, 21:4-6. He has not done any academic research with respect to BOGO offers. *Id.* at 11:10-12, 55:20-23. He did not do a study of Puritan's Pride's BOGO offers. *Id.* at 49:3-6. He simply looked at some Puritan's Pride catalogs and "just perused" the website. *Id.* at 11:17-22. His opinion that the BOGO prices were "false" when compared to a "reference" price is based entirely on something counsel for plaintiffs told him. *Id.* at 15:3-16:4. In light of this and other unfavorable testimony, the Court declines to credit Dr. Compeau's opinions.

## CONCLUSIONS OF LAW

As the Court has stated in several prior orders, there is room under the CLRA and UCL for a claim of deceptive conduct when retailers misrepresent discounts to induce consumers to make purchases they otherwise would not have made. The problem for plaintiffs is that the trial record came up short of proving that Puritan's Pride engaged in such conduct here. To be sure, each plaintiff witness said that the BOGO offers were attractive because they suggested they were getting free products. But plaintiffs also testified that they made purchases independent of the BOGO offers, were happy with the quality of the products they bought, and found Puritan's

6

Pride's price to be fair. It may be that plaintiffs occasionally ended up with more products than they might have been able to use, but that was attributed to compelling prices, not to being "tricked." To the extent a plaintiff would have preferred to buy a single unit of a product rather than two or more in a BOGO offer, that option was available via the catalogs and website. There was no evidence that Puritan's Pride made it unduly hard for a consumer to choose exactly the quantity of units he or she desired. Overall, the consumer experience with Puritan's Pride was good enough to keep one plaintiff a customer for 40 years.

This is not a case where the evidence established deceitful pricing practices. The trial testimony demonstrated that consumers paid exactly the price stated in Puritan's Pride's catalog or website, and received exactly the quantity and type of goods they expected. There was no evidence of surprises in the form of hidden mark-ups or charges, or substitutions of lesser products or quantities. To the extent a consumer wished to do comparative shopping for better prices, Puritan's Pride provided accurate information for her use. For example, witness Cabrera knew she was getting three 7-oz. bottles of coconut oil for $10.99, which would have permitted an easy comparison to the prices of other suppliers of a comparable product. There was also no evidence that consumers were falsely told that they were getting a discount off a "regular" or "list" price. Dr. Compeau's comment to that effect holds no water because he did not do any work to determine whether that might be the case, and relied simply on what an attorney for plaintiffs told him.[2]

On this record, the Court cannot conclude that a reasonable consumer would have been "likely to be deceived" by the challenged conduct within the meaning of the CLRA or the UCL. *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (quoting *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995)); *see also In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009) (citation omitted).

---

[2] Brian Bergmark, another ostensible expert witness proposed by plaintiffs, cannot fill in this shortfall. The parties agreed that Bergmark would testify only to the joint stipulations of fact, Dkt. No. 288, which did not include any "reference" price facts. The Court held them to that agreement. Trial Tr. at 51:15-53:8.

With respect to the "unlawful" prong of the UCL, plaintiffs did not establish a predicate violation. *See Beaver v. Tarsadia Hotels*, 816 F.3d 1170, 1177 (9th Cir. 2016) (UCL's unlawful prong "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable.") (quoting *Cel-Tech Commc'n, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999)). The CLRA and FAL cannot serve as predicates because plaintiffs did not prove deceptive conduct. *See Salazar v. Target Corp.*, 83 Cal. App. 5th 571, 578 (2022) (FAL, CLRA and UCL governed by reasonable consumer test). Plaintiffs' reference to Section 5 of the FTC Act, 15 U.S.C. § 45, is unavailing for the same reason. *See Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012) (a practice is deceptive under Section 5 if it is "likely to mislead consumers acting reasonably under the circumstances").

**CONCLUSION**

The evidence at trial did not establish that Puritan's Pride's BOGO offers were deceptive to reasonable consumers. This determination is based purely on the fact that plaintiffs came up short in their proof. It should not be construed as a broad validation of Puritan's Pride's practices. Judgment will be entered separately in favor of Puritan's Pride.

**IT IS SO ORDERED.**

Dated: December 19, 2024

JAMES DONATO
United States District Judge